## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SUPERIOR AIR PARTS, INC., WEIFANG FREESKY AVIATION, TECHNOLOGY CO., LTD AND SUPERIOR AVIATION BEIJING CO., LTD. | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. _____ |
| v. | § § | |
| BRUNO KÜBLER, IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR OF THIELERT AIRCRAFT ENGINES GMBH, AND THIELERT AIRCRAFT ENGINES GMBH, | § § § § § § | |
| Defendants, | § § | |
| VS. | § § | |
| TECHNIFY MOTORS GMBH, | § § | |
| Intervenor. | § | |

## NOTICE OF REMOVAL

Defendants Bruno Kübler, in his capacity as Insolvency Administrator of Thielert Aircraft Engines GMBH (the "Insolvency Administrator" or "Kübler") and Thielert Aircraft Engines GMBH ("TAE")[1] file this Notice of Removal to remove this action from the 191st District Court of Dallas, County, Texas, in which the above-captioned action is now pending, to

---

[1]   As set forth in Defendants' answer in the state-court proceeding, TAE lacks the capacity to be sued as it is the subject of an insolvency proceeding in Germany.  Under German insolvency law, because TAE is currently in insolvency proceedings in Germany, the right to manage and transfer the insolvency estate is vested in the Insolvency Administrator.

the United States District Court for the Northern District of Texas, Dallas Division. *See* U.S.C. §§ 1332, 1441, and 1446. Removal of the sole claim of Plaintiffs Wiefang Freesky Aviation, Technology Co., Ltd. ("FreeSky") and Superior Aviation Beijing Co., Ltd. ("SAB") (collectively the "Chinese Plaintiffs") is also appropriate under 28 U.S.C. §§ 1334 and 1452. Defendants respectfully assert the following facts to support removal, and in so doing, expressly reserve all other questions other than that of removal for the purpose of other pleadings.

## I.     **Background**

1.      On or about August 21, 2014, Plaintiffs filed a civil action against Defendants that is pending before the 191st Judicial District Court of Dallas County, Texas, in the case styled, *Superior Air Parts, Inc., Weifang Freesky Aviation, Technology Co., LTD and Superior Aviation Beijing Co., Ltd. v. Bruno Kübler, in his Capacity as Insolvency Administrator of Thielert Aircraft Engines GMBH, and Thielert Aircraft Engines GMBH*, Cause No. DC-14-09151.

2.      On August 27, the Citation and a copy of Plaintiffs' Original Petition (the "Plaintiffs' Original *Petition*" or the "Petition") were served on the Texas Secretary of State, which thereafter forwarded the Citation and Petition to Defendants.

3.      On September 19, 2014, Technify Motors GMBH ("Intervenor") filed its Petition in Intervention and Request for Declaratory Judgment ("Technify's Petition in Intervention").

4.      On September 22, 2014, Defendants filed Defendants' Original Answer to Plaintiffs' Original Petition.

5.      On September 25, 2014, Defendants filed Defendants' First Amended Answer to Plaintiff's Original Petition.

## II. Compliance with the Removal Statute

6. This Notice of Removal is properly filed in the United States District Court for the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1446(a), because the 191st Judicial District Court of Dallas County, Texas is located in this federal district and division. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

7. This Notice is being filed with this Court within thirty (30) days of the date on which the Defendants were served with the Citation and Petition. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

8. All Defendants have been served and join in and consent to this removal.

9. Written notice of the filing of this Notice of Removal will be provided to Plaintiffs and Intervenor, and a copy of this Notice of Removal will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d).

10. Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, attached hereto are an index and copies of all documents filed in the state court action, including the certified docket sheet, Civil Cover sheet, Petition, and Citation, Technify's Petition in Intervention, Defendants' Original Answer, Defendants' First Amended Answer, and a copy of the Notice of Filing Notice of Removal to be filed in the state court. In addition, a separately signed Certificate of Interested Persons and Corporate Disclosure Statement is being filed pursuant to Local Rules 3.2(e) and 81.1, and Fed.R.Civ.P. 7.1.

11. Plaintiffs have requested a jury trial in the state court lawsuit.

## III. Grounds for Removal

12. This Court possesses original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity), and thus removal is proper under 28 U.S. §§ 1441(b) and 1446. Under section

1332, federal courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Here, the only properly joined Plaintiff, Superior Air Parts, Inc. ("Superior"), is a citizen of Texas, the Defendants are both citizens of Germany, and the amount in controversy exceeds $75,000.

13.     Superior is a corporation incorporated in Texas and has its principal place of business in Coppell, Texas. (Pet. at 1.) A "corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28. U.S.C. § 1332(c)(1). Thus, Plaintiff Superior is a Texas citizen for purposes of diversity.

14.     Defendants the Insolvency Administrator and TAE are citizens of a foreign state, Germany. Specifically, Kübler is an individual and is a German citizen and is domiciled in, and thus is a citizen of, Germany; Kübler's principal place of business is also in Germany. TAE is a corporation organized under the laws of the Republic of Germany with its principal place of business in Germany. A "corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28. U.S.C. § 1332(c)(1); *see also Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985).

15.     Thus, for purposes of removal jurisdiction, the properly joined Plaintiff (Superior) and Defendants (Kübler and TAE) are completely diverse. Accordingly, there is complete diversity between the properly joined Plaintiff and the Defendants.

16.      The Chinese Plaintiffs were improperly joined[2] to this lawsuit and, as a result, their citizenship is not considered for purposes of determining diversity. *Johnson v. Heublein, Inc.*, 227 F.3d 236, 240 (5th Cir. 2000) (holding that, for purposes of determining whether parties are diverse under 28 U.S.C. § 1332(a), citizenship of fraudulently joined plaintiff should be disregarded).[3]

17.      Moreover, the Chinese Plaintiffs' statutory fraud claim is removable under 28 U.S.C. § 1452, which authorizes removal of claims arising in or related to a bankruptcy case. *See* 28 U.S.C. § 1334. Thus, even if the Chinese Plaintiffs' claim is not improperly joined, the claim is removable independently. If the Chinese Plaintiffs' claim is severed, diversity exists (regardless of improper joinder of the Chinese Plaintiffs) with respect to the remaining parties.

18.      Finally, as discussed below, the citizenship of the Intervenor is not considered for purposes of assessing diversity.

## Background

19.      The dispute between Superior and TAE (and Kübler as the Insolvency Administrator for TAE) is not new. Nor are the issues raised by Superior's eight counts against Defendants. The issues have already been litigated by Superior and Defendants before Chief Judge Houser in the U.S. Bankruptcy Court for the Northern District of Texas (the "Bankruptcy

---

[2]      As explained in *Yeldell v. Geovera Specialty Ins. Co.*, No. 3:12-CV-1908-M, 2012 WL 5451822 at *1, n.1 (N.D. Tex. Nov. 8, 2012), there is no substantive difference between the terms "improper joinder" and "fraudulent joinder" but the use of the term "improper joinder" is preferred by the Fifth Circuit.

[3]      Both Chinese Defendants are entities organized under the laws of the People's Republic of China with principal places of business in China. As discussed, their citizenship is irrelevant in any event because they were fraudulently joined and misjoined.

Court"). *See In re Superior Air Parts, Inc.*, Case No. 08-36705-BJH-11.[4]  In the Bankruptcy Court, Superior filed a Motion to Enforce an order of the Bankruptcy Court that Superior alleged required the Insolvency Administrator to return to Superior the same information that Superior has made the subject of this litigation.  As the proceedings on the Motion to Enforce evolved, Superior essentially sought the same injunctive relief from the Bankruptcy Court that it now seeks in this litigation.  Superior and the Insolvency Administrator litigated the Motion to Enforce for over a year, including an evidentiary hearing, following which Judge Houser recently dismissed Superior's Motion to Enforce for lack of subject matter jurisdiction.

20.     The dispute between Superior and the Insolvency Administrator centers on business dealings between Superior and TAE over a number of years beginning in 2001 when TAE and Superior entered into a Supplier Agreement.  As discussed above, Superior initially asked the Bankruptcy Court to order the Insolvency Administrator to return to Superior the documents and information Superior had supplied to TAE. The Insolvency Administrator agreed to return to Superior any documents or other information Superior provided to TAE (and, indeed, the Insolvency Administrator has previously returned much, if not all, of such information to Superior).  Not satisfied with the relief it originally sought in the Bankruptcy Court (i.e., the return of information Superior supplied to TAE), Superior now seeks to enjoin the Insolvency Administrator from making use of information, including proprietary information, developed by TAE.

21.     Because of the issues raised by Superior (beginning with correspondence in April 2013), the Insolvency Administrator has segregated all documents, information, and property

---

[4]     The pleadings and filings in the Superior bankruptcy (*In re Superior Air Parts, Inc.*, Case No. 08-36705,United States Bankruptcy Ct, N.D. Tex.) are a matter of public record and accessible via Pacer.

that related in any way to TAE's business with Superior (the "Segregated Property"). Thus, the documents, information and property at issue with respect to Superior's claims in this case have been segregated. The Insolvency Administrator will not use or transfer the Segregated Property to any other party, including the Intervenor, until such time as the dispute between Superior and the Insolvency Administrator is resolved.

22.     After Judge Houser dismissed Superior's Motion to Enforce for lack of subject matter jurisdiction, Plaintiffs brought the instant suit. In an obvious attempt to defeat diversity, however, the Chinese Plaintiffs – who were not parties to the Motion to Enforce – joined the case and asserted a single statutory fraud claim against Defendants. As discussed below, the Chinese Plaintiffs are misjoined and their claim is fraudulently joined. As a result, removal is appropriate because diversity exists between the properly joined Plaintiff and the Defendants.

## The Chinese Plaintiffs Are Fraudulently Misjoined

23.     Jurisdiction is proper in this Court because the claims of the Chinese Plaintiffs, FreeSky and SAB, have been fraudulently misjoined with Superior's claims. Specifically, even if the Chinese Plaintiffs could survive a traditional fraudulent joinder analysis – *i.e.*, show that they actually have a cognizable claim against Defendants – which they cannot (as discussed below), their single statutory stock fraud claim has no place in this case and thus has been fraudulently misjoined. Indeed, even a cursory review of the Petition makes it clear that the Chinese Plaintiffs' claim does not belong this case: the claims of two Chinese companies against a German company and its Insolvency Administrator regarding a 2009 stock purchase[5] has

---

5       There is no reason a case between Chinese and German parties should be heard in a Texas court and, accordingly, Defendants will likely move to dismiss the claim on the basis of *forum nonconveniens*. Both Chinese Plaintiffs represented to the State of Texas recently that they have not conducted any business in Texas prior to August 21, 2014; thus, there is obviously no logical basis for them to sue here.

nothing to do with the claims of a Dallas company (Superior) regarding the Insolvency Administrator's ability to retain, use or transfer technical information developed and owned by TAE.

24.     The Fifth Circuit recognizes fraudulent misjoinder as a separate doctrine from fraudulent joinder, noting that a party "can be improperly joined without being fraudulently joined." *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006).     In the removal context, courts within the Fifth Circuit have followed the ruling set out in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072 (11th Cir. 2000), which allows a court to "determine whether it has diversity jurisdiction without taking into account the citizenship of any parties who have been fraudulently misjoined." *Texas Instruments, Inc. v. Citigroup Global Mkts., Inc.,* 266 F.R.D. 143, 147 (N.D.Tex. 2010).[6]  Such courts recognize that "failure to comply with the joinder requirements of Federal Rule of Civil Procedure 20 can, in certain limited circumstances, 'be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possible cause of action.'" *Id.* (internal citations omitted).

25.     Importantly, fraudulent misjoinder applies not only to misjoinder of defendants but also to misjoinder of plaintiffs. *See, e.g., Texas Instruments,* 266 F.R.D at 148-50 (discussing fraudulent misjoinder as applying where multiple plaintiffs have sued a common

---

[6]     While *Tapscott* has not been officially adopted by the Fifth Circuit Court of Appeals, there are numerous cases in this circuit that effectively adopt it and clearly apply its analysis. *See, e.g., Centaurus S. Oaks, LP v. Lexington Ins. Co.,* Civ. A. H-10-4123, 2011 WL 96598 at *2 (S.D. Tex. Jan. 10, 2011) ("The Fifth Circuit Court of Appeals has not expressly adopted the *Tapscott* analysis, but it has indicated its agreement with that analysis, albeit in *dicta.* Further, numerous district courts in the circuit have applied *Tapscott,* with some assuming, without deciding, that fraudulent misjoinder is a 'third possible ground to support a finding of improper joinder.'") (internal citations omitted).

defendant but are asserting claims that do not share factual elements). Indeed, "[t]he district courts of this circuit appear to have adopted the view, first suggested by an MDL court, that the threshold for finding that plaintiffs have been fraudulently misjoined should be lower than the threshold for finding that defendants have been fraudulently misjoined." *Id.* at 150. Allowing courts to disregard fraudulently misjoined plaintiffs is necessary to prevent plaintiffs from improperly joining unrelated claims solely to defeat diversity jurisdiction. *See, e.g., Smith v. Nationwide Mut. Ins. Co.,* 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003) (severing and remanding fraudulently misjoined claims and retaining jurisdiction of other claims where "plaintiff's have combined unrelated lawsuits resulting in a fraudulent misjoinder of claims to defeat this court's jurisdiction"). This is precisely what has happened here.

26. Rule 20 governs when plaintiffs may join claims in one suit: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." Fed. R. Civ. P. 20(a); *see also* Tex. R. Civ. P. 40(a).[7] Both elements must be met for joinder to be proper.

27. Here, the face of the Petition makes clear that the Chinese Plaintiffs' claim does not arise out of the same transaction as Superior's claims. Superior's claims—which constitute 8 of the 9 causes of action in the Petition—all relate to alleged breaches of contractual, fiduciary or

---

[7]     While there is confusion in some courts as to whether federal or state joinder rules apply, the distinction is immaterial in this case because Texas Rule 40 is identical to Federal Rule 20. *See, Texas Instruments,* 266 F.R.D. at 148, n. 3 (noting division regarding application of state or federal rule but stating that "for district courts in Texas, this question is largely academic. Texas's joinder rule is identical to its federal counterpart and Texas courts rely on federal case law interpreting Federal Rule 20 to guide their interpretation of Texas Rule 40") (internal citations omitted).

other duties based on a Supplier Agreement entered into between Superior and TAE in 2001. *See, e.g.,* Petition at p. 6-8 (describing Supplier Agreement and purchase orders between Superior and TAE). Superior's allegations make clear that its claims all rest on alleged obligations of TAE (and subsequently, the Insolvency Administrator) to return information and documents and/or to refrain from using such information or documents. *Id.* at 6-18. Those alleged obligations are based solely on the Supplier Agreement and on purchase orders between Superior and TAE. *See* Petition at p. 8, 19. Because the Chinese Plaintiffs only came into the picture in 2009 (when they became the Stalking Horse Bidder for Superior's stock in Superior's bankruptcy case), they were not a party to and have no claims based on the Supplier Agreement or any purchase orders between Superior and TAE. The Petition verifies that: there is no mention of either FreeSky or SAB anywhere in the Factual Background section of the Petition and they do not (and cannot) join in Superior's claims, which are set forth in Counts 1 through 8. Nor is Superior a party to the Chinese Plaintiffs' claim in Count 9.

28. Rather, the Chinese Plaintiffs' sole claim arises out of "the transaction in September 2009 whereby FreeSky purchased Superior's stock." Pet. at 20. Thus, the only conceivable basis for the Chinese Plaintiffs' fraud claims would be based any alleged misrepresentations made by Defendants to the Chinese Plaintiffs in 2009 relating to Freesky's purchase of Superior's stock. In the Petition, the Chinese Plaintiffs attempt to confuse this issue by repeatedly referencing the 2001 Supplier Agreement. But at that time, the Chinese Plaintiffs were not even in the picture. Rather, the Chinese Plaintiffs became involved in 2009 after Superior filed for bankruptcy and FreeSky became the stalking horse bidder for Superior's stock. Representations made to Superior well before the time of the stock sale in the bankruptcy

proceedings in 2009 – such as those related to the 2001 Supplier Agreement – are not related to the Chinese Plaintiffs' claim here.[8]

29.    Because the claim of the Chinese Plaintiffs (a statutory fraud claim arising from a 2009 stock purchase) does not arise out of the same transaction as the claims of Superior (a 2001 Supplier Agreement and subsequent purchase orders), the Chinese Plaintiffs have failed to meet the first prong of Rule 20.  While that alone demonstrates the improper joinder, the Chinese Plaintiffs have also failed on the second prong of the test because there are no common questions of disputed law or fact.

30.    The law applicable to Superior's claims will include the Texas Uniform Trade Secrets Act or other applicable trade secrets law (Count 1), common law regarding breach of contract (Count 2), common law regarding breach of fiduciary duty (Count 3), common law regarding conversion (Count 4), common law regarding unfair competition (Count 5), Texas Penal Code §§ 31.03, 31.05 (Count 6), common law regarding unjust enrichment (Count 7), and common law regarding promissory estoppel (Count 8). *See* Petition at 9-18.  Those claims will implicate contract law and intellectual property law, all as applied to the relationship between Superior and TAE that began in 2001.

31.    The Chinese Plaintiffs' claim, on the other hand, is based solely on § 27.01 Texas Business & Commerce Code (statutory fraud in stock transactions). *Id.* at 21.  The only

---

[8]    Moreover, as discussed in more detail below, the Chinese Plaintiffs' claim is brought under Section 27.01 of the Texas Business and Commerce Code, which relates only to fraud in connection with real estate or stock transactions.  Representations made outside the context of the 2009 stock purchase are necessarily irrelevant to the Chinese Plaintiffs' claim. *See* Tex. Bus. & Com. Code § 27.01; *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied) ("Section 27.01 only applies to misrepresentations of material fact made to induce another to enter a contract for the sale of land or stock").

questions of law will relate to whether the Chinese Plaintiffs can establish the elements of a stock-related fraud claim under that statute. Thus, there is no common question of law.

32.    Likewise, there will be no common questions of fact. The facts underlying Superior's claim relate to the terms of the Supplier Agreement, purchase orders and the information in the possession of the Insolvency Administrator that Superior seeks to enjoin Defendants from using. The facts underlying the Chinese Plaintiffs' claims will relate solely to what representations, if any, were made by Defendants in connection with the 2009 stock purchase and whether or not the Chinese Plaintiffs reasonably relied on any such alleged representations to their detriment.

33.    As shown, the claim of the Chinese Plaintiffs has been improperly joined with Superior's claim. Moreover, the Petition also shows that such joinder is egregious and was done solely to defeat diversity jurisdiction. In the Factual Background section—which is nearly six full pages long—there is no mention of the Stock Purchase Agreement that forms the basis of the Chinese Plaintiffs' claim. Instead, the entire Factual Background—like the bulk of the Petition as a whole—relates solely to the relationship between Superior and TAE beginning with the 2001 Supplier Agreement. Rather than being an essential part of the background and story of this dispute, the claim arising out of the 2009 stock purchase is an entirely distinct claim that was tacked on to Plaintiffs' Petition solely to defeat diversity.

34.    The procedural history of this dispute further demonstrates that the Chinese Plaintiffs' claim was joined solely to defeat diversity jurisdiction. As discussed above, Superior and TAE are not new adversaries—this dispute was recently before Chief Judge Houser in the U.S. Bankruptcy Court for the Northern District of Texas. While the Motion to Enforce—the resolution of which took over a year—was filed well after the stock purchase that forms the basis

of the Chinese Plaintiffs' claim here, the Chinese Plaintiffs made no effort to join that dispute or to otherwise institute litigation (or even make a demand) against Defendants. Their claim now is a transparent and ill-fated attempt to prevent Defendants from having this dispute heard by a federal court.

35.     Moreover, as discussed in detail in the fraudulent joinder section below, the Chinese Plaintiffs' claim is woefully improper and deficient on a number of fronts. The statutory fraud claim is untimely, directly defeated by an Order from the Bankruptcy Court, and fails on a variety of other grounds as a matter of law. These fatal problems with the claim illustrate the egregious nature of Plaintiffs' attempt to defeat diversity jurisdiction. Plaintiffs' gamesmanship of adding two Chinese plaintiffs who assert a single, spurious stock fraud claim against two German Defendants to defeat diversity should not be rewarded.

36.     Accordingly, the claim of FreeSky and SAB can and should be disregarded when assessing the diversity of the parties. *See, e.g., Centaurus,* 2011 WL 96598 at *3 (discussing fraudulent misjoinder and noting that a federal court may ignore an improperly joined party for purposes of determining a federal court's diversity jurisdiction if "the misjoinder is egregious, *i.e.*, if the claim against the non-diverse defendant is so unrelated that there is simply no purpose for joinder other than to defeat diversity."); *see also Willingham v. State Farm Ins. Co.,* No. 2:09-CV-59-SA-SAA, 2009 WL 2767679 at *4-5 (N.D. Miss. Aug. 27, 2009) (finding the "misjoinder is sufficiently egregious to constitute fraudulent misjoinder" where "the claims do not share common questions of law or fact" and where "the claims stem from two separate contracts, and there is no distinct litigable event linking the parties").

## The Chinese Plaintiffs Are Fraudulently Joined

37.     The citizenship of the Chinese Plaintiffs should also not be considered under a traditional fraudulent joinder analysis. *See*, *e.g.*, *Guillot v. Credit Suisse Boston, LLC*, No. Civ. A. 03-0797, 2005 WL 2037372 at *5 (E.D. La. July 21, 2005) (denying motion to remand and noting that "[t]he doctrine of fraudulent joinder is applicable both to plaintiffs and defendants"). Indeed, the Chinese Plaintiffs' claim is baseless and cannot survive even minimal scrutiny.

38.     A joinder is improper where "there is absolutely no possibility that the plaintiff will be able to establish a cause of action…" *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). "When a court addresses fraudulent joinder and determines whether there is any possibility that a plaintiff will be able to establish a cause of action against the in-state defendant, it looks for a reasonable possibility – not merely a theoretical one – that the plaintiff can establish a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002); *see also Oxford v. Williams Cos., Inc.*, 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001) (a plaintiff cannot avoid finding of improper joinder by asserting a mere hypothetical possibility of a cause of action against non-diverse defendant). The same standard applies where the Plaintiff – rather than the defendant – is fraudulently joined. *Guillot*, 2005 WL 2037372 at *5 (finding plaintiff fraudulently joined because there was no possibility that the non-diverse plaintiff could recover); *Eberspaecher North Am., Inc. v. Van-Rob, Inc.*, No. 06-15752, 2007 WL 2332470 at *4 (E.D. Mich. Aug. 15 2007) (noting that "a defendant may relay upon the fraudulent joinder doctrine to challenge joinder of nondiverse plaintiffs" and concluding that plaintiff was fraudulently joined); *see also Elk Corp. of Texas v. Valmet Sandy-Hill, Inc.*, No. Civ. A. 3:99-CV-2298G, 2000 WL 303637 at *2 ("From the Fifth Circuit precedent above, the Court concludes that the fraudulent joinder doctrine may be applied where a defendant claims

that a plaintiff has been fraudulently joined"). In this case, there is no reasonable possibility that the Chinese Plaintiffs will be able to establish a cause of action against Defendants.

39.     In examining improper joinder, the Court first conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law …." *Smallwood v. Illinois Central Railroad Co.*, 285 F.3d 568, 573 (5th Cir. 2004 (en banc), cert. denied, 544 U.S. 992 (2005). In conducting this analysis, there is some division in the courts regarding whether to apply the federal or state pleading standard to determine whether a plaintiff can state a claim for relief. *See Yeldell*, 2012 WL 5451822 at *2-3 (citing cases applying federal standard and cases applying state standard). Here, determining the appropriate standard is not necessary because Plaintiffs FreeSky and SAB are clearly improperly joined under either standard. Indeed, with the recently enacted Texas Rule of Civil Procedure 91a (requiring "dismissal of causes of action that have no basis in law or fact"), applying either state or federal pleading standards leads to the same result.

40.     First, the Chinese Plaintiffs acquired the stock at issue pursuant to a bid procedure order from and under the supervision of the Bankruptcy Court. The purchase was an "As-is, Where-As Sale." Thus, pursuant to the order, FreeSky represented that

> it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Superior Stock, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedure or, as to any Successful Bidder, the terms of the Sale shall be set forth in the Confirmation Order.

It is settled under Texas law that such a provision negates a fraud claim as a matter of law. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60-61 (Tex. 2008); *Playboy Enters. Inc. v. Editorial Caballero, S.A. de*

*C.V.*, 202 S.W.3d 250, 258-59 (Tex. App.—Corpus Christi 2006, pet. denied); *Coastal Bank SSB v. Chase Bank of Texas, N.A.*, 135 S.W.3d 840, 843-45 (Tex. App.—Houston [1ˢᵗ Dist.] 2004, no pet.).  Thus, the Chinese Plaintiffs cannot establish an element of their statutory fraud claim (reliance) or their fraud claim generally as a matter of law.

41.     Second, the Chinese Plaintiffs' claim is untimely as a matter of law.  The statute of limitations for fraud claims brought under Section 27.01 of the Texas Business and Commerce Code is four years.  *R & L Inv. Prop., LLC v. Hamm*, 3:10-CV-00864-M, 2011 WL 2462102 (N.D. Tex. June 21, 2011).  The Chinese Plaintiffs allege that they purchased Superior's stock in September 2009.  Thus, their fraud claim is necessarily based on alleged misrepresentations prior to that date.  Because they did not file the instant action until August of 2014 – well over four years after the purchase – their claims are barred.  As a result, the Chinese Plaintiffs' claims are fraudulently joined and removal is appropriate.  *Cantrell v. Wyeth*, No. Civ. A. 303CV1659G, 2003 WL 22251079 (N.D. Tex. Sept. 19, 2003) (denying motion to remand because claim was untimely and thus fraudulently joined).

42.     Third, the Chinese Plaintiffs' claims are expressly released by the terms of the order confirming Superior's plan of reorganization.  Specifically, in Superior's Third Amended Plan of Reorganization dated July 23, 2009 (as confirmed), the Debtor (Superior) and the Official Committee of Unsecured Creditors proposed that the Brantly Group (of which FreeSky is a part) "pay a Cash contribution of $7.0 million, subject to certain adjustments, into a the Creditors' Trust" and that FreeSky would receive the stock of the Reorganized Debtor (Superior).  The plan further provided that the Creditors' Trust would distribute $500,000 to TAE (which was a creditor) in full satisfaction of its proof of claim in the amount of $18,208,260.  The plan further provided that "in consideration for the concessions made by TAE [and its parent], they

will be released from any and all claims and causes of action by anyone in connection with Debtor or this case." In approving the plan, the Bankruptcy Court specifically recognized that "the compromise of claims, Causes of Action and any adversary proceeding affecting [Superior], including, but not limited to those against ...[TAE], are approved as reasonable and necessary in the business judgment of the Debtor, the Committee and in the best interest of creditors, equity holders and all other parties-in-interest." In sum, the Bankruptcy Court ruled that any and all claims by anyone, including FreeSky against TAE in connection with the stock purchase that was the centerpiece of the plan were released. Freesky (and its alleged successor) thus was previously deemed to release any claim it might have had against TAE regarding the stock sale or other matters pursuant to an order of the Bankruptcy Court.

43.     Fourth, the Chinese Plaintiffs' claim fails under Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To plead fraud with the necessary particularity, a plaintiff must (1) specify the statements alleged to be fraudulent, (2) identify the person who made the statements, (3) state when and where the statements were made, and (4) explain why the statement were fraudulent (i.e., what facts were misrepresented and what the person making the statements gained). *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). In their claim, the Chinese Plaintiffs focus on statements allegedly made to Superior – not them – with respect to the 2001 Supplier Agreement, which (as discussed above) predated the Chinese Plaintiffs' purchase of stock in 2009 *by eight years*. But with respect to statements allegedly made to the Chinese Plaintiffs regarding their stock purchase, the Petition is vague and insufficient. The Chinese Plaintiffs do not specify any actual statements made to them; rather they vaguely state only that "in connection with the [stock] transaction in September 2009,"

Defendants "promised to not use Superior's [information] other than to perform the [2001] Supplier Agreement, and they affirmatively represented that they would return Superior's information to Superior." They do not identify the specific statements made, the person who allegedly made the statements, when and where the statements were made, or why the statement was fraudulent. It is obvious from the creative nature of the pleading that the Chinese Plaintiffs cannot point to a single statement made to them regarding the purchase of stock in 2009. And their reliance on the terms of a 2001 Supplier Agreement to which they were not a party cannot support their claim. To state a statutory fraud claim, the Chinese Plaintiffs must sufficiently allege representations or promises made to them for the purpose of inducing them to enter into the purchase of stock. Statements made to a third party (including any statements made to Superior) cannot support a statutory fraud claim as a matter of law. *See, e.g., Westcliff Co. v. Wall*, 267 S.W.2d 544, 546 (Tex. 1954); *Winkins v. Frank Winther Investments, Inc.*, 881 S.W.2d 557 (Tex. App.—Houston [1st Dist.] 1994, no writ).

44.     Finally, because the Chinese Defendants have not identified a single alleged misrepresentation made by Defendants *to the Chinese Defendants*, they lack standing to assert a fraud claim under Texas Business and Commerce Code § 27.01. *Winkins v. Frank Winther Investments, Inc.*, 881 S.W.2d 557 (unpublished text available in Westlaw) ("A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representation and to allege its falsity as a wrong to him under a claim of fraud").

45.     For the reasons set forth above the Chinese Plaintiffs cannot establish a claim against Defendants, and the citizenship of the Chinese Plaintiffs should be disregarded for purposes of determining removability and complete diversity of citizenship among the parties.

Alternatively, the Court may sever the claims of the Chinese Defendants, remand them to state court, and retain jurisdiction over the real dispute between Superior and Defendants. *See*, *e.g.*, *Willingham*, 2009 WL 2767679 at *5.

### The Chinese Plaintiffs' Claim is Removable in Any Event

46.     While removal of the case is appropriate here under 28 U.S.C. §§ 1332, 1441(b) and 1446 because the Chinese Plaintiffs were fraudulently joined and misjoined, removal of the claims by the Chinese Plaintiffs is also proper under 28 U.S.C.A. § 1452 and § 1334. First, Section 1452 permits removal of "any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). A federal district court has original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

47.     The Chinese Plaintiffs' claims are based upon alleged fraud in connection with a stock purchase they made pursuant to procedures of and under the supervision of the Bankruptcy Court. *See* ¶¶ 40, 42 *supra*. Moreover, the purchase was the key component of Superior's confirmed plan of reorganization and the Bankruptcy Court's order confirming that plan. *See* ¶¶ 40, 42 *supra*. The claim is also directly barred by the release of TAE in the confirmed plan. Accordingly, the Chinese Plaintiffs' claim "arises in" the Superior bankruptcy case. *See In re: Hereford Biofuels, L.P.,* 466 B.R. 841, 845 (N.D. Tex. 2012) (where post-confirmation dispute between two non-debtor parties concerns the interpretation and enforcement of a prior sale order of the bankruptcy court and the issue of what was or was not the property of the bankruptcy estate, the dispute was a "core ' arising in' proceeding, pursuant to 28 U.S.C. §§157(b)(2)(A).").

48. Based on the removal under Section 1452, this Court should refer the Chinese Plaintiffs' claim to the Bankruptcy Court. *See, e.g., In re: Bissonnet Investments, Inc.,* 320 F.3d 520, 521 (5th Cir. 2003) ("The purchaser removed the lawsuit to federal court pursuant to 28 U.S.C. § 1452 (1994), and the district court referred the case to bankruptcy court."). Once the Chinese Plaintiffs' claim is referred to the Bankruptcy Court, all remaining parties are diverse. Accordingly, removal of this cause is proper for that reason as well.

## Intervenor's Citizenship is Not Considered in Assessing Diversity

49. The presence of Intervenor, Technify Motors GmbH ("Intervenor"), does not impact the propriety of the removal. As set forth above, Intervenor filed a Petition in Intervention in the state court proceeding on September 19, 2014. Intervenor is a corporation organized and existing under the laws of the Republic of Germany and has its principal place of business in St. Egidien, Germany. Thus, it is a German citizen for the purpose of assessing diversity.

50. Initially, it is long settled that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events, such as intervention. *Mullan v. Torrance,* 22 U.S. (9 Wheat.) 537, 6 L.Ed. 154 (1824); *Clarke v. Mathewson,* 12 Pet. 164, 171, 9 L.Ed. 1041 (1838); *Wichita R.R. & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922) ("Jurisdiction once acquired ... is not divested by a subsequent change in the citizenship of the parties. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties.") (citations omitted). Thus, Intervenor's intervention is of no legal moment.

51.     In any event, Intervenor is a nominal party and thus its citizenship is irrelevant for purposes of determining diversity. Further, even if Intervenor was an indispensable party (and thus not nominal), which it is not, and even if alignment of Intervenor was appropriate (which it is not), it is aligned with Defendants with respect to its first claim for declaratory judgment (as discussed below). Thus, Intervenor's citizenship, which is the same as the Defendants, does not change the diversity analysis above.   Finally, even if Intervenor were somehow deemed "aligned" with Plaintiff Superior, Intervenor's claims should be disregarded as they are fraudulently joined.

52.     According to Intervenor, on July 22, 2013, Intervenor closed an asset acquisition that "gave it the sole and exclusive right to manufacture the Thielert line of aircraft diesel engines."   The referenced acquisition was between the Insolvency Administrator on the one hand[9] and Intervenor on the other hand.   The transaction was pursuant to a Business Purchase and Transfer Agreement entered into in Germany.   As expressly set forth in the Business Purchase and Transfer Agreement, the parties agreed that any dispute regarding Intervenor's purchase of the TAE assets will be governed by German law with exclusive venue in Germany.

53.     Some of the assets that are governed by the Business Purchase and Transfer Agreement are the documents and information (referred to as the "Property At Issue") that are at the center of the dispute between Superior and the Insolvency Administrator.

54.     Because Superior sought the return of documents before the Intervenor and the Insolvency Administrator entered into the Business Purchase and Transfer Agreement, the Insolvency Administrator and Technify negotiated an agreement regarding what would happen if some or all of the Property at Issue could not be transferred to Intervenor.   In the Closing

---

[9]     Centurion Aircraft Engines AG & Co. KG was also a party.

Protocol to the Business Purchase and Transfer Agreement, the parties expressly recognized the

dispute:

> Superior Air Parts, Inc., a US corporation … has [both in
> correspondence and the Bankruptcy Court proceeding] claimed the
> return of certain tangible and intangible assets that are allegedly
> owned by Superior (the "Superior Claims").  With regard to the
> making of the Superior Claims, Sellers have completely separated
> within the business of TAE all tangible and intangible assets …
> (together the "Superior Part") and will not transfer the Superior
> Part to the Buyer, until it has been legally finally and unappealable
> [sic] decided or agreed on, if and to what extent the Sellers shall be
> entitled to transfer the Superior Part to the Buyer …

The parties also negotiated a contractual resolution regarding the disputed assets in the

same Closing Protocol:

> Given that the Parties could not reach agreement on the value of
> the Superior Part, the determination of this value and, therefore,
> how high the damages of the Buyer, if any, is in case the Superior
> Part cannot be transferred, the Buyer shall retain all the rights and
> claims, in particular claims for damages within the meaning of §§
> 249 et seq. German Civil Code, in order to allow for him to go
> against the Seller because of this, whereby this is not an
> acknowledgment of any such claims by the Sellers, and whereby
> any such claims shall be limited in amount at a maximum of EUR
> 3.500.000,00.

55.    Intervenor's first claim simply seeks a declaratory judgment regarding the

"respective rights of Superior, Kübler and [Intervenor] to the Property at Issue in the possession,

custody and control of Kübler."  In other words, Intervenor, which purchased the assets of TAE,

is seeking a decision regarding the issues that are already front and center in the case (in 8

different causes of action no less); *i.e.*, who owns what information and what are the parties'

respective rights to that information. Intervenor's presence is certainly not essential to a decision

of the controversy between the original parties; thus, its presence is nominal and its citizenship is

not relevant to the diversity analysis. *See Wichita R.R. & Light Co.*, 43 S.Ct. 51.  Further,

Intervenors who intervene in an action to oversee a matter that might ultimately impact their

rights to particular property already the subject of the pending litigation are not indispensable and thus their citizenship is not considered for diversity purposes. *See Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013-14 (9th Cir. 2006) (non-diverse party who intervened to protect its rights to particular product line was not indispensable party). Further, with respect to Intervenor's interest here, Intervenor is at best seeking an advisory opinion from the court regarding an issue central to another contract controlled by German law. Such a claim is simply not appropriate. *Patterson v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (Texas courts do not have the authority to render "advisory opinions").

56.     The fact that Intervenor and the Insolvency Administrator already recognized the issue regarding the Property At Issue and negotiated a contract addressing each party's rights based on how a court might rule on the underlying issues further supports the conclusion that Intervenor is a nominal party. It has already negotiated a contract to provide it with protection depending on the Court's ruling on Superior's claims. Thus, it has no basis whatsoever to intervene; regardless of the Court's ruling, it has contracted for the protection it deems appropriate.

57.     The Intervenor did not intervene as either a plaintiff or a defendant and thus alignment is unnecessary and would be inappropriate.

58.     Even if Intervenor were an indispensable party with respect to its first claim (and thus not nominal) and even if alignment was proper, that claim was fraudulently misjoined and fraudulently joined. And in any event, that claim aligns with Defendants' position in the case.[10]

---

[10]     Indeed, according to Intervenor's Plea in Intervention, if Superior prevails in the lawsuit, Intervenor's damages would exceed the cap on damages agreed to between Intervenor and Kübler regarding the asset purchase deal. Thus, Intervenor's interest is clearly aligned with Defendants' interests because, according to Intervenor, it could not be made whole with a ruling in Superior's favor.

Thus, even if the alignment of the Intervenor were necessary, it would be aligned with Defendants and because Intervenor and Defendants are all German citizens, such an alignment would not impact diversity.

59.     Intervenor's alternative claim does not impact the analysis. In that second count, Intervenor requests that "if the Court determines that Intervenor has no rights in the Property At Issue and/or that Kübler cannot transfer the Property at Issue," then Intervenor requests the Court to award contract damages to Intervenor under the Purchase and Transfer Agreement entered into in Germany in 2013. This claim certainly does not align with Plaintiffs because the Plaintiffs have no interest in the contract between Intervenor and Defendants. Moreover, the second claim is clearly not ripe because it requires adjudication of the real dispute (Superior's claims against Defendants) before it matures. Indeed, if, as expected, the Court ultimately rules in Defendants' favor with respect to the Property At Issue, Intervenor's second claim would not exist by its own terms. Further, if the Court rules in favor of Superior either in full or in part (*i.e.*, the Court determines that some but not all of the property could be transferred by the Insolvency Administrator to Intervenor), there would have to be an entirely different action – under an entirely different contract (the agreement and closing protocol between Intervenor and the Insolvency Administrator) to determine the scope of any liability, if any, and damages, if any. Thus, Intervenor's second count is clearly not ripe. A claim that is not ripe cannot be a basis on which to assess diversity jurisdiction or the propriety of removal. *UE Group, LLC v. J&B Holding Co.*, No. 09-6088 (JAP), 2010 WL 3937138 (D.N.J. 2010); *see also Patterson v. Panned Parenthood of Houston*, 971 S.W.2d 439, 442-44 (Tex. 1998) (noting rule that a "case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass" and dismissing unripe claim); *Roman Catholic Diocese of Dallas v. Sebelius,* 927

F. Supp. 2d 406, 427 (N.D.Tex. 2013) ("Dismissal is the appropriate action where a claim is not ripe."); *Simmons v. Humphreys Cty. Sch. Dist.,* 21 F.3d 1108, 1994 WL 171626 at * 3 (5th Cir. April 26, 1994) (dismissing claim for lack of jurisdiction because it was not yet ripe).

60.     Intervenor's second count is also irrelevant to the diversity analysis because it has been fraudulently joined and is fraudulently misjoined. Indeed, it involves an asset purchase agreement in 2013 between German entities that cannot possibly be considered to "arise" from the 2001 Supplier Agreement or any of the facts central to the dispute between Superior and Defendants.     Moreover, the controlling agreement expressly provides that any disputes thereunder (such as Intervenor's claim in its second count) will be controlled by German law with venue exclusively in Germany. Courts in the Fifth Circuit routinely enforce forum selection clauses and dismiss cases in favor of the forum to which the parties agreed. *See, e.g., Int'l. Software Sys., Inc v. Amplicon,* 77 F.3d 112 (5th Cir. 1996) (affirming dismissal of plaintiff's claims based on forum selection clause). Thus, in no event is a potential claim by Intervenor against Defendants properly brought as part of the instant case.

## The Amount in Controversy Exceeds $75,000

61.     Finally, the amount in controversy exceeds $75,000. While Plaintiffs do not plead a specific amount of damages, Superior asserts that it "invested thousands of hours and millions of dollars" developing the so-called "Intellectual Property" that it contends is being misappropriated by Defendants. (Pet. at 4.) Superior further contends that its "Intellectual Property…has actual or potential value to third parties because such Intellectual Property is generally unknown to and not readily ascertainable at a reasonable cost by proper means by third parties…" (Pet at 5.) Superior claims that it "would incur substantial damages" if its "Intellectual Property were to become known to the public…" (*Id.*) Superior asserts the

following claims: (1) misappropriation of trade secrets; (2) breach of contract; (3) breach of fiduciary duty; (4) conversion; (5) unfair competition by misappropriation; (6) Texas Theft Liability Act; (7) unjust enrichment; and (8) promissory estoppel.   (Pet. 9-18.)   It seeks injunctive relief, monetary damages, disgorgement of profits; punitive damages; interest, attorneys' fees and costs. (Pet at 22.) Thus, it is obvious from the face of the Petition and the facts set forth herein that the amount in controversy exceeds $75,000.

62.    In addition to the monetary relief sought by Superior, the Closing Protocol to the Business Purchase and Transfer Agreement (discussed above) supports a conclusion that the Insolvency Administrator faces potential liability in excess of $75,000 (to be determined by *a German Court and under German law*) in the event Superior succeeds on its claims.

63.    Because there is a complete diversity of citizenship between the properly joined Plaintiff and Defendants and the amount in controversy exceeds $75,000, this action is properly removed under 28 U.S.C. §§ 1332, and 1441.

64.    To the extent any question arises as to the propriety of the removal of this action, Defendants request an evidentiary hearing pursuant to 28 U.S.C. § 1446(c)(5).

### IV.    Conclusion

Defendants respectfully request that this Court exercise its jurisdiction over this action, and enter such further orders and grant such further relief as may be necessary to secure removal herein and to prevent further proceedings in the 191st District Court of Dallas County, Texas, and further seeks all other relief to which it is justly entitled.

Dated:  September 26, 2014

Respectfully submitted,

  /s/ *Craig F. Simon*

Craig F. Simon, Esq.
State Bar No. 00784968
Daniel P. Winikka, Esq.
State Bar No. 00794873
Matthew W. Ray, Esq.
State Bar No. 00788248
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX  75201
Telephone:  (214) 871-2292
Facsimile:  (469) 759-1699

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of September, 2014, a true and correct copy of the foregoing document has been served on the parties listed below via the manner provided below.

Counsel for Plaintiffs:

Via Hand Delivery:
Jerry Alexander
James Adams
Christopher Robison
PASSMAN & JONES
1201 Elm Street, Suite 2500
Dallas, TX 75270

Counsel for Intervenor:

Via Hand Delivery:
Ross Cunningham
Rose Walker LLP
3500 Maple Ave., Ste. 900
Dallas, TX 75219

Via First Class U.S. Mail:
Will Skinner
Skinner Law Group
21600 Oxnard Street, Suite 1760
Woodland Hills, CA 91367

*/s/ Craig F. Simon*
Craig F. Simon