IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SUPERIOR AIR PARTS, INC., et al., | § § § |
| Plaintiffs, | § § |
| v. | §   Case No. 3:14-cv-3492-D § § |
| BRUNO KÜBLER, IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR OF THIELERT AIRCRAFT ENGINES GMBH, et al., | § § § § § |
| Defendants, | § § |
| v. | § § |
| TECHNIFY MOTORS GMBH, | § § |
| Intervenor. | § |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS, OR ALTERNATIVE
RESPONSE TO, TECHNIFY MOTORS GMBH'S PETITION IN INTERVENTION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

    A. Superior's Relationship with Kübler and TAE. ......................................................1

    B. TAE/Kübler Attempt to Sell Superior's Property to One of
       Superior's Largest Competitors. .............................................................................1

    C. Technify Attempts to Intervene in the Superior/Kübler Dispute. ...........................2

II. FACTUAL BACKGROUND ..........................................................................................4

    A. Superior Enters Into a Confidential Supplier Relationship with TAE. ...................4

    B. Superior Files Chapter 11 Bankruptcy in the Northern District of Texas. .............5

    C. The Defendants Refuse to Return Superior's Property and Seek to
       Transfer Superior's Property to Technify. ..............................................................6

    D. The Procedural History of This Action. .................................................................8

III. ARGUMENT & AUTHORITIES ...................................................................................9

    A. Intervention, Generally. ..........................................................................................9

    B. Intervention as of Right. .......................................................................................10

       1. Technify Does Not Have a "Direct, Substantial, Legally
          Protectable Interest" in this Action. ..........................................................11

       2. Technify's Interest in the Property At Issue Cannot be
          Impaired or Impeded by the Disposition of this Case................................12

       3. Technify's Interest in the Property At Issue is Adequately
          Represented by Kübler.................................................................................13

    C. Technify Cannot Satisfy the Standard for Permissive Intervention.......................14

IV. PRAYER..........................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Armstrong v. Capshaw, Goss & Bowers, LLC*, 404 F.3d 933 (5th Cir. 2005) .......................... 9, 14

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 207 F. Supp. 252, 257
    (N.D. Ill. 1962) ....................................................................................................................... 17

*Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)............................................................ 14

*Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of
    the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)...................................................... 13

*Howse v. S/V "Canada Goose I"*, 641 F.2d 317, 322 (5th Cir. 1981)........................................... 15

*In re Oil Antitrust Litigation*, 570 F.3d 244, 247 (5th Cir. 2009).................................................. 11

*Langone v. Flint Ink North America Corp.*, 231 F.R.D. 114, 121 (D. Mass. 2005)...................... 16

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463
    (5th Cir. 1984)................................................................................................................... 11, 12

*Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 183 (N.D. Tex. 1986)
    (Fitzwater, J.) .................................................................................................................... 11, 12

*Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 524
    (Tex. App.—Dallas 2010, no pet.)....................................................................................... 15, 16

*U.S. v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) ........................... 16

*United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969).................................. 11

**Statutes**

28 U.S.C. § 1367(b) ......................................................................................................................... 9

Fed. R. Civ. P. 24.............................................................................................................................. 9

Fed. R. Civ. P. 24(a) ................................................................................................................. 10, 11

Fed. R. Civ. P. 24(b)(1), (3)....................................................................................................... 14, 15

Fed. R. Civ. P. 24(b)(3) .................................................................................................................. 16

Fed. R. Civ. P. 24(c) ....................................................................................................................... 10

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS, OR ALTERNATIVE RESPONSE TO, TECHNIFY MOTORS GMBH'S PETITION IN INTERVENTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Superior Air Parts, Inc., Weifang Freesky Aviation Technology Co., Ltd., and Superior Aviation Beijing Co., Ltd. and file this Brief in Support of their Motion to Dismiss, or Alternative Response to, Technify Motors GmbH's Petition in Intervention and respectfully show the Court as follows:

### I.   INTRODUCTION

**A.   Superior's Relationship with Kübler and TAE.**

Defendant Thielert Aircraft Engines GmbH ("*TAE*" or "*Thielert*") machined aircraft engine replacement parts for Plaintiff Superior Air Parts, Inc. ("*Superior*") pursuant to a supplier relationship. Pursuant to such relationship and various written agreements, Superior entrusted TAE with Superior's technical data and information to be used solely to assist Superior.[1] TAE was placed into an insolvency proceeding in Germany in 2008, and Defendant Bruno Kübler was appointed TAE's insolvency administrator. Nevertheless, Superior continued to do business with TAE/Kübler through the Spring of 2013.

**B.   TAE/Kübler Attempt to Sell Superior's Property to One of Superior's Largest Competitors.**

In the Summer of 2013, Kübler attempted to sell the property in TAE's possession to Technify Motors GmbH ("*Technify*"), a company in the Continental Motors Group, one of Superior's largest competitors. Kübler and TAE were in possession of technical data and information belonging to Superior. Kübler knew he was contractually prohibited from selling Superior's data and information, but nevertheless and attempted to misappropriate them.

---

[1] For example, Kübler was contractually bound to return and refrain from disclosing or using the information and data other than to manufacture parts for Superior.

In April 2013 (promptly upon the cessation of its relationship with Kübler/TAE and apparently prior to the TAE asset sale), Superior demanded that Kübler immediately return all of Superior's data and information and refrain from transferring Superior's data and information to any third party.  Kübler's reaction to this demand was calculated and disingenuous.

Kübler communicated a startling series of misrepresentations in response to Superior's demand:

1. First, Kübler represented that he did not have any Superior data and information;

2. When pressed by Superior, he admitted to having "a little" data and information belonging to Superior.  Kübler later located and returned approximately 700 Superior part drawings clearly marked with Superior's name and logo;

3. Next, Kübler asked Superior to sign a release saying Kübler had returned everything, but Kübler refused to certify that he had returned all of Superior's data and information;

4. When pressed further and after a review by Superior of the TAE files "segregated" from the Technify sale, Superior discovered thousands of electronic files containing Superior data and information.  These files were even catalogued by Kübler/TAE as belonging to Superior, *i.e.* Kübler certainly knew he possessed and was trying to sell Superior's data and information.

Now, according to Kübler, he has segregated all Superior-related property from TAE's other assets.  However, rather than simply returning Superior's property to Superior, as he is obligated to do, Kübler forced Superior to file this lawsuit to protect its property.

C.  **Technify Attempts to Intervene in the Superior/Kübler Dispute.**

Superior continued to seek return of its technical data and information; therefore, Kübler and Technify purportedly agreed that Kübler would not transfer the Superior-related property until there has been a legal determination as to whether Kübler is entitled to transfer such property.  Kübler and Technify also agreed that if a court determines Kübler is not entitled to transfer Superior's property, Technify may assert any claims it may have against Kübler, but such claims would be limited in amount to a maximum of EUR 3,500,000.

Based on these contractual provisions that post-date the genesis of the Superior/Kübler dispute, Technify has attempted to intervene into this lawsuit. However, for purposes of the Intervention, Technify only has a dispute with Kübler, not Superior, and Technify's dispute with Kübler is not yet ripe.

Technify admits it has no rights to any information or data except possibly through Kübler, and *only* in the event a court determines Kübler has a right to the property in the first place. Accordingly, Technify has no basis to intervene.

Moreover, Technify (a German business entity) is attempting to interject a breach of contract claim against Kübler (a German resident) into this proceeding, despite the fact that there would be no diversity of citizenship and thus no jurisdiction for this cause of action.[2] Even worse, Technify's agreement with Kübler is purportedly governed by German law and sets exclusive venue for disputes in Germany.

Setting aside the obvious problems with Technify's putative claims (*e.g.* standing, ripeness, jurisdiction and venue), the fact remains that Technify's only interest in this lawsuit is completely derivative of Kübler's interest and is contingent on the outcome of the original claims Superior brought against Kübler that Kübler wrongfully removed. Moreover, both Plaintiffs and Defendants oppose Technify's intervention, and Technify has nothing to add to the original dispute between Superior and TAE/Kübler.

The Federal Rules of Civil Procedure do not allow Technify to interject new and unrelated issues into the base lawsuit without invitation, especially when those "claims" do not support federal jurisdiction and are not ripe for adjudication. For these reasons, the Court should deny Technify's intervention into this suit.

---

[2] Both Technify and Kübler have referred to and/or quoted from the Technify/Kübler sale agreement in their pleadings; however, neither Technify nor Kübler have favored Superior or the Court with a copy of the agreement.

## II.    FACTUAL BACKGROUND

**A.    Superior Enters Into a Confidential Supplier Relationship with TAE.**

Superior is a local manufacturer of replacement parts for various gasoline powered reciprocating aircraft engines, including engines originally manufactured by Lycoming Engines, a Division of Avco Corporation ("***Avco***") and Teledyne Technologies Incorporated a/k/a Teledyne Continental Motors ("***TCM***"), having its principal place of business in Coppell, Texas, Dallas County. Superior is one of the largest competitors of Avco and TMC for the sale of replacement parts for reciprocating aircraft engines.

On or about December 15, 2001, Superior entered into a supplier agreement with TAE (now controlled by Kübler) ("***Supplier Agreement***") performable in Dallas County, Texas and governed by Texas law.[3] The Supplier Agreement provided for TAE to machine and sell to Superior various replacement aircraft parts for which Superior holds Parts Manufacturer Approvals ("***PMAs***") issued by the Federal Aviation Administration ("***FAA***").[4] Pursuant to such supplier relationship, Superior entrusted TAE in confidence with various confidential and proprietary design drawings, engineering orders, casting/forging drawings, test reports, and other data and information solely to allow for the fabrication of parts for Superior and/or the bidding on such fabrication.

In paragraph 3.02 of the Supplier Agreement, TAE agreed to maintain the confidentiality of Superior's drawings, data, and information, and TAE agreed to return the drawings, data, and information upon termination of the Supplier Agreement.[5] Similarly, in paragraph 3.03 of the Supplier Agreement, TAE and Superior agreed that Superior's drawings, related data, and

---

[3] APPX_0001-15; Supplier Agreement.
[4] *See id.*
[5] APPX_0002; Supplier Agreement at ¶ 3.02. TAE's obligation to return Superior's drawings, data, and information is not limited to a particular form; thus, if data or information was supplied by Superior to TAE pursuant to the Supplier Agreement, TAE is obligated to return it, regardless of whether or not TAE migrated the data or information into a document generated by TAE or stored by TAE in an electronic model or drawing of the part.

information could only be used by TAE to perform its obligations under the Supplier Agreement absent Superior's express written consent to the contrary.[6]  There are other provisions in the Supplier Agreement that further confirm the confidentiality of Superior's technical data and protect against the improper use or disclosure of it.[7]  Superior also placed multiple purchase orders with TAE, which contained confidentiality provisions similar to those in the Supplier Agreement.[8]

**B.    Superior Files Chapter 11 Bankruptcy in the Northern District of Texas.**

Superior sought bankruptcy protection after its parent, Thielert A.G. ("***TAG***")[9] (a German corporation) encountered financial difficulties.  Eventually Superior filed its "Third Amended Plan of Reorganization" ("***Plan of Reorganization***") on or about July 23, 2009.[10]  Two of the primary purposes of the Plan of Reorganization and subsequent Confirmation Order were (1) to allow Superior to continue manufacturing replacement parts and its own engines in competition with Lycoming and Continental using the PMAs and Type Certificates issued by the FAA and other aviation authorities and (2) to preserve Superior's interest in supporting documents, data and information "free and clear of all claims, liens, encumbrances and other interests of holders of claims and interests."[11]  The Plan of Reorganization was to be funded by the Brantly Group[12] contributing $7,000,000 to a creditors' trust, of which $500,000 was to be paid to TAE, through

---

[6] APPX_0002; Supplier Agreement at ¶ 3.03.  Superior has never given any such written consent.
[7] *See, e.g.,* APPX_0011; Supplier Agreement at Schedule 1.02(12).  The Supplier Agreement does not afford TAE the right to use or disclose Superior's drawings, data, and information for any purpose other than performing its obligations under the Supplier Agreement.
[8] *See, e.g.,* APPX_0016-17; Exemplar Superior Purchase Order to TAE.
[9] TAE was also owned by TAG, but Superior remained a separate corporation and continued to be organized and operated as a separate company from TAG and TAE with different products, customers, suppliers and creditors.
[10] Third Amended Plan of Reorganization [Bankr. Doc. No. 322]; *In re Superior Air Parts, Inc.*, Bankruptcy Case No. 08-36705, United States Bankruptcy Court for the Northern District of Texas – Dallas Division.
[11] *Id.*
[12] Plaintiff Weifang Freesky Aviation Technology Co. Ltd. was the Brantly Group entity that purchased Superior's stock.

Kübler, as one of Superior's largest creditors.[13]  TAE/Kübler accepted Superior's Plan of Reorganization and made statements to encourage the sale of Superior's stock.[14]

On August 27, 2009, the Bankruptcy Court entered an order ("***Confirmation Order***") in the Superior Bankruptcy Case confirming Superior's Plan of Reorganization.[15]  Paragraph 37 of the Confirmation Order directed TAE, TAG, Avco, TCM, among others, to return to Superior any documents or information related to its business and expressly retained Superior's rights under confidentiality agreements executed in connection with the exchange of such information.[16]

TAE continued to fabricate replacement aircraft parts for Superior after Superior emerged from bankruptcy, including parts for Avco and TMC engines, plus parts for Superior's Vantage Engines and XP-Series Engines.  Such fabrication was performed using Superior's confidential and proprietary drawings, data and information.  Superior ceased purchasing parts from TAE in Spring 2013.

**C.    The Defendants Refuse to Return Superior's Property and Seek to Transfer Superior's Property to Technify.**

At the conclusion of its supplier relationship with TAE, Superior requested that TAE/Kübler return to Superior all drawings, data and information related to Superior's business.[17]

---

[13] *Id.*

[14] Order Granting Motion of Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. § 1126(a) & (e) for an Order Enforcing the Settlement Agreement, Determining that the Vote Thielert Aircraft Engine to Reject the Plan Will Not be Counted and, Deeming Thielert Aircraft Engine to Accept the Plan [Bankr. Doc. No. 419]; *In re Superior Air Parts, Inc.*, Bankruptcy Case No. 08-36705, United States Bankruptcy Court for the Northern District of Texas – Dallas Division.

[15] Order Confirming Third Amended Plan of Reorganization File (sic) by the Debtor and the Official Committee of Unsecured Creditors Dated July 23, 2009 [Bankr. Doc. No. 404]; *In re Superior Air Parts, Inc.*, Bankruptcy Case No. 08-36705, United States Bankruptcy Court for the Northern District of Texas – Dallas Division.

[16] *Id.*

[17] *See* APPX_0018-27; Letter from Superior to Kübler dated April 24, 2013.

The Defendants initially denied possessing any of Superior's drawings, data and information,[18] but after months of stalling the Defendants eventually agreed to return 700 drawings created by Superior. After belatedly returning such drawings, the Defendants initially denied possessing any other Superior drawings, data or information and attempted to dupe Superior into releasing TAE/Kübler from any further obligations or liability. However, Superior eventually learned that the Defendants possess hundreds of 3D computer assisted design ("**CAD**") models which TAE/Kübler created using exclusively Superior's drawings, data and information for approximately 362 aircraft parts for which Superior holds the exclusive PMA or type certificate ("**TAE-labeled 3D CAD models**"). Superior also learned that the Defendants possess hundreds of 2D drawings likewise created exclusively using Superior's drawings, data and information for those parts ("**TAE-labeled 2D drawings**"). That is to say, the TAE-labeled 3D CAD models and the TAE-labeled 2D drawings exist only by virtue of the data and information supplied by Superior. They contain no other information or data. They are merely alternate expressions of the Superior drawings furnished to TAE/Kübler that TAE/Kübler agreed to return to Superior.

Superior made demand for the removal of Superior's data and information from the TAE-labeled 3D CAD models and 2D drawings, and the return of Superior's drawings, data and information (collectively referred to herein as the "**Property At Issue**"). The Defendants refused and threatened to sell the TAE-labeled 3D CAD models and 2D drawings created from Superior's drawings, data and information to a third party.

In short, having already benefitted (to the tune of $500,000) from the Brantly Group's funding of the Plan of Reorganization, Kübler decided to "double dip" by improperly attempting to sell Superior's assets.

---

[18] *See* APPX_0028-29; Letter from Kübler's counsel to Superior dated June 3, 2013.

According to the Defendants and Technify, on July 22, 2013, Technify acquired the TAE assets from Kübler.[19] This transaction was memorialized by a Business Purchase and Transfer Agreement ("***Technify/Kübler Agreement***") that is purportedly governed by German law.[20]

Because Superior sought return of its documents, data, and related information before the Technify/Kübler Agreement was finalized and executed, the Defendants segregated the Superior-related property from TAE's assets, and the Defendants and Technify negotiated an agreement regarding what would happen if some or all of the Superior-related property could not legally be transferred to Technify.[21] Specifically, the Defendants and Technify agreed that the Defendants would not transfer the Superior-related property until there has been a legal determination as to whether Kübler is entitled to transfer such property.[22] If a court determines Kübler is not entitled to transfer the Superior-related property, the Defendants and Technify agreed that Technify may assert any claims it may have against the Defendants, but capped the amount of damages at EUR 3,500,000.[23]

**D.     The Procedural History of This Action.**

Plaintiffs filed their Original Petition for this action in Dallas County State District Court on August 21, 2014.[24] In the Original Petition, Plaintiffs assert multiple causes of action against the Defendants, seeking money damages and an injunction enjoining the Defendants from reproducing, using, selling or transferring the Superior-related property and compelling Defendants to return all Superior-related property to Superior.[25]

---

[19] *See* Notice of Removal at ¶¶ 52-60 54 [Doc. No. 1]; *see also* Petition in Intervention at ¶¶ 15-16 [Doc. No. 1, Exhibit C(3)].
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Original Petition [Doc. No. 1, Exhibit C(1)].
[25] *See id.*

On September 19, 2014, before the Defendants had even answered, Technify filed its Petition in Intervention, pursuant to Rule 60 of the Texas Rules of Civil Procedure.[26] Through its proposed intervention, Technify is seeking to assert two claims: (1) a claim for declaratory judgment, adjudicating all parties' rights to the Property At Issue and (2) a breach of contract claim against Kübler, in the event it is determined he cannot transfer the Property At Issue to Technify.[27]

Defendants filed their Original Answer and First Amended Answer in state court on September 22, 2014 and September 25, 2014, respectively.[28] One day later, Defendants filed their Notice of Removal to remove this action to Federal Court.[29]

### III. ARGUMENT & AUTHORITIES

**A. Intervention, Generally.**

Technify filed its Petition in Intervention pursuant to Rule 60 of the Texas Rules of Civil Procedure.[30] However, in determining whether the intervention should be permitted, the Court should rely on federal law.[31] Federal Rule of Civil Procedure 24 is the applicable federal rule regarding intervention and should guide the Court's evaluation of whether or not Technify should be permitted to intervene.[32]

---

[26] Petition in Intervention [Doc. No. 1, Exhibit C(3)].
[27] *See id.*
[28] Original Answer [Doc. No. 1, Exhibit C(4)]; First Amended Answer [Doc. No. 1, C(5)].
[29] Notice of Removal [Doc. No. 1].
[30] Petition in Intervention [Doc. No. 1, Exhibit C(3)] at ¶ 12.
[31] *Armstrong v. Capshaw, Goss & Bowers, L.L.P.,* 404 F.3d 933, 936 (5th Cir. 2005).
[32] FED. R. CIV. P. 24. 28 U.S.C. § 1367(b) would also be applicable if the Court decides to align Technify as a plaintiff since doing so would destroy diversity jurisdiction under 28 U.S.C. § 1332, which is the sole jurisdictional basis of Defendants' improper removal.

According to Rule 24, a party may seek to intervene by filing a motion stating the grounds for the intervention, accompanied by a pleading setting forth the claim or defense for which intervention is sought.[33]

Intervention under Rule 24 may be as of right or permissive. Technify filed its Petition in Intervention pursuant to the Texas Rules of Civil Procedure rather than the Federal Rules; therefore, Technify did not identify whether it seeks to intervene as of right or permissively. In either event, Technify's intervention is improper.

### B.     Intervention as of Right.

Rule 24(a) governs intervention as a matter of right:

> **Intervention of Right**. On timely motion, the court must permit anyone to intervene who:
>
> (1)   is given an unconditional right to intervene by a federal statute; or
>
> (2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest.[34]

Here, Technify has not identified a United States statute that confers a right to intervene; therefore, the only basis for intervention as of right is Rule 24(a)(2).

To intervene under Rule 24(a)(2), a putative intervenor must meet all four requirements set forth in the Rule: (i) timeliness, (ii) an interest relating to the action, (iii) that the interest will be impaired or impeded by disposition of this action, and (iv) that its interest will be

---

[33] FED. R. CIV. P. 24(c).
[34] FED. R. CIV. P. 24(a).

inadequately represented by the existing parties.[35] Here, Technify cannot intervene as a matter of right because it fails to meet the second, third and fourth requirements.

### 1. Technify Does Not Have a "Direct, Substantial, Legally Protectable Interest" in this Action.

Intervention of right requires a "direct, substantial, legally protectable interest in the proceedings."[36] The interest must be one which the substantive law recognizes as belonging to an intervenor, rather than just an economic interest in the outcome of the case.[37] In other words, the intervenor must be the "real party in interest" who, under substantive law, "'possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.'"[38] A derivative or contingent interest in a proceeding does not meet the Fifth Circuit's test for a direct, substantial, legally protectable interest sufficient to support intervention as of right.[39]

Technify's only interest in this proceeding is based on its agreement with Kübler regarding the acquisition of the TAE assets.[40] According to both Technify and Kübler, the Technify/Kübler Agreement did not transfer Kübler's interest in the Property At Issue to Technify. Instead, due to the fact that Superior had made a claim to the Property At Issue before Technify and Kübler finalized the Technify/Kübler Agreement, Technify and Kübler agreed to condition the transfer of the Property At Issue *only* upon a final legal determination that Kübler is entitled to transfer the Property At Issue to Technify:

> Superior Air Parts, Inc., a US corporation…has [both in correspondence and the Bankruptcy Court proceeding] claimed the return of certain tangible and intangible assets that are allegedly owned by Superior (the "Superior Claims"). With regard to the

---

[35] *Id.*; *In re Oil Antitrust Litigation*, 570 F.3d 244, 247 (5th Cir. 2009).
[36] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984).
[37] *Id.* at 464.
[38] *Id.* (quoting *United States v. 936.71 Acres of Land*, 418 F.2d 551, 556 (5th Cir. 1969).
[39] *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 183 (N.D. Tex. 1986) (Fitzwater, J.).
[40] Petition in Intervention [Doc. No. 1, Exhibit C(3)] at ¶¶ 13-17.

> making of the Superior Claim, **Sellers have completely separated within the business of TAE all tangible and intangible assets…(together the "Superior Part") and will not transfer the Superior Part to the Buyer, until it has been legally finally and unappealable [sic] decided or agreed on, if and to what extent the Sellers shall be entitled to transfer the Superior Part to the Buyer…**[41]

Technify cannot have direct, substantial, legally protectable interest in this proceeding, when the very contract it relies on confirms that Technify's interest is derivative of Kübler's interest and expressly contingent on Kübler prevailing in this case. This alone devastates Technify's intervention into this action.[42]

### 2. Technify's Interest in the Property At Issue Cannot be Impaired or Impeded by the Disposition of this Case.

Technify's interest in the Property At Issue is expressly contingent on the outcome of this proceeding. Therefore, Technify's interest in the Property At Issue cannot be impaired or impeded by the disposition of this case.

In fact, Kübler and Technify even included a contractual contingency provision in the Technify/Kübler Agreement setting forth Technify's rights against Kübler in the event a court determines Kübler is *not* entitled to transfer the Property At Issue:

> Given that the Parties could not reach agreement on the value of the Superior Part, the determination of this value and, therefore, how high the damages of the Buyer, if any, is in case the Superior Part cannot be transferred, the Buyer shall retain all the rights and claims, in particular claims for damages within the meaning of §§ 249 et seq. German Civil Code, in order to allow for him to go against the Seller because of this, whereby this is not an acknowledgment of any such claims by the Sellers, and whereby any such claims shall be limited in amount at a maximum of EUR 3.500.000,00.[43]

---

[41] Petition in Intervention [Doc. No. 1, Exhibit C(3)] at ¶¶ 15-16; Notice of Removal [Doc. No. 1] at ¶ 54 (emphasis added).
[42] *New Orleans Pub. Serv*. at 463-64; *Rigco* at 183.
[43] Notice of Removal [Doc. No. 1] at ¶ 54.

Thus, Technify and Kübler have already agreed upon their respective rights based on either of the two possible outcomes of this litigation. Accordingly, Technify will not be impaired or impeded by this disposition of this case because: (i) Technify's rights in this proceeding are solely derived from Kübler, and (ii) Technify has contracted to protect its rights in the event Kübler does not prevail in this case.

### 3. Technify's Interest in the Property At Issue is Adequately Represented by Kübler.

Technify bears the burden of establishing that Kübler does not adequately represent Technify's alleged interest in this proceeding.[44] This burden is especially high when "the party seeking to intervene has the same ultimate objective as a party to the suit."[45] Under those circumstances, "the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance."[46]

This presumption is patently applicable here. According to their pleadings, the ultimate objective for both Kübler and Technify is to consummate their agreement for the transfer of the Property At Issue.[47]

Technify has not alleged (nor could it) collusion between Superior and Kübler, nonfeasance on the part of Kübler, or adversity of interest with Kübler. Any such allegation would be belied by the following facts:

- Superior and Kübler have been vigorously litigating against each other for over a year;
- Kübler has retained able Dallas lawyers to represent him in this suit;

---

[44] *Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).
[45] *Id.* at 578-79.
[46] *Id.* at 579.
[47] Petition in Intervention [Doc. No. 1, Exhibit C(3)] at ¶¶ 13-17; Notice of Removal [Doc. No. 1] at ¶¶ 19-22.

Response to, Technify Motors GmbH's Petition in Intervention                                Page 13

- The Technify/Kübler Agreement confirms that Technify's interest in the Property At Issue is derivative of Kübler's interest and contingent on the outcome of this proceeding;

- The Technify/Kübler Agreement further provides that Technify's contract claim against Kübler is not ripe until a court determines Kübler is not entitled to transfer the Property At Issue.

Therefore, Technify fails to meet this requirement too, and it should not be permitted to intervene.[48]

### C. Technify Cannot Satisfy the Standard for Permissive Intervention.

Rule 24(b) provides the standard for permissive intervention:

(1) **In General**. On timely motion, the court may permit anyone to intervene who:

    (A) is given a conditional right to intervene by a federal statute; or

    (B) has a claim or defense that shares with the main action a common question of law or fact...

(3) **Delay or Prejudice**. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.[49]

As with intervention of right, Technify has not identified a federal statute that confers a conditional right to intervene. As a result, the only basis for allowing Technify to permissibly intervene is Rule 24(b)(1)(B).

Rule 24(b)(1)(B) is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors.[50] Thus, the threshold determination for permissive intervention under Rule 24(b)(1)(B) is whether or not the intervenor's claim or defense and the main action have a

---

[48] *Armstrong v. Capshaw, Goss & Bowers, LLC*, 404 F.3d 933 (5th Cir. 2005).
[49] FED. R. CIV. P. 24(b)(1), (3).
[50] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994).

question of law or fact in common, which is a question of law.[51] If this requirement is met, the Court must then exercise its discretion in determining whether or not intervention will unduly delay or prejudice the original parties to the action.[52]

Here, Technify's breach of contract claim against Kübler cannot pass the threshold determination. Technify's breach of contract claim is based on the Technify/Kübler Agreement between Technify and Kübler, which, according to Kübler, is governed by German law with venue exclusively set in Germany. In contrast, Plaintiffs' claims against Kübler and TAE are governed by Texas law with venue exclusively set in Dallas County, Texas.[53] Moreover, the Technify/Kübler Agreement, presumably executed in the Summer of 2013, is not factually related to Plaintiffs' claims against TAE and Kübler. The claims by Superior against Kübler and TAE arise from confidential supplier relationship and agreement between Superior and TAE, as well as representations made by Kübler to Freesky during Superior's bankruptcy.

Technify's declaratory judgment claim likewise fails to pass muster even assuming, *arguendo*, it involves common questions of law and fact. The problems with this claim are threefold.

A claim under the Texas Declaratory Judgment Act is improper if it is nothing more than a mere denial of a plaintiff's claims and fails to have greater ramifications than the original suit.[54] Here, Technify's declaratory judgment claim adds nothing to the case and has no greater ramifications than Superior's claims against TAE/Kübler. The relief sought in the declaratory judgment claim – *i.e.* a declaration of the parties' rights with respect to the Property At Issue –

---

[51] *Howse v. S/V "Canada Goose I"*, 641 F.2d 317, 322 (5th Cir. 1981).
[52] *Id.*; *see also* FED. R. CIV. P. 24(b)(1), (3).
[53] Notice of Removal [Doc. No. 1] at ¶ 59; APPX_0006; Supplier Agreement at ¶¶10.01 and 10.02.
[54] *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 524 (Tex. App.—Dallas 2010, no pet.) ("A counterclaim for declaratory judgment is improper if it is nothing more than a mere denial of the plaintiff's claims and the counterclaim fails to have greater ramifications than the original suit.").

has already been put at issue by Plaintiffs' original claims and TAE/Kübler's defenses. Accordingly, Technify's declaratory judgment claim fails as a matter of law and is subject to dismissal.[55]

Likewise, Technify's participation adds nothing to the underlying dispute between Plaintiffs and Kübler/TAE. Technify's interest in the Property At Issue is derived from Kübler and is contingent on the outcome of Plaintiffs' claims against Kübler. Technify's presence in this lawsuit will not add to the determination of Kübler's rights to the Property At Issue or to the underlying dispute between Plaintiffs and Kübler/TAE. Under virtually identical circumstances, the United State District Court for Massachusetts denied permissive intervention on the basis that the presence of the intervenor would only serve to delay the adjudication of the original parties' rights.[56] The same principle is true here.

Finally, the balance of prejudices to the respective parties weighs in favor of denying the intervention.[57] The prejudice to Technify if the intervention is denied is low since (1) Technify's claims have not yet matured, (2) Technify and Kübler have already agreed to their respective rights in the event of either of two possible outcomes of this litigation, and (3) Technify has a ready forum (Germany, according to the Technify/Kübler Agreement) to pursue its claims against Kübler if and when they mature.[58] In contrast, Technify's presence in this proceeding will increase the time and expense of litigation for Plaintiffs and Defendants and further

---

[55] *See id.*
[56] *Langone v. Flint Ink North America Corp.*, 231 F.R.D. 114, 121 (D. Mass. 2005).
[57] *See* FED. R. CIV. P. 24(b)(3).
[58] *See Langone* at 121; *see also U.S. v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991). In fact, according to Kübler, Germany is the proper venue for such an action.

complicate the issues for trial.[59] Thus, it is not a coincidence that both Plaintiffs and Defendants oppose the intervention.[60]

## IV. PRAYER

WHEREFORE, premises considered, Superior prays that, for the foregoing reasons, the Court dismiss or strike Technify's Petition in Intervention.

Respectfully submitted,

*/s/ Jerry C. Alexander*
Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, TX 75270-2599
Phone: 214-742-2121
Fax: 214-748-7949
COUNSEL FOR SUPERIOR AIR PARTS, INC.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on October 10, 2014, pursuant to the Federal Rules of Civil Procedure, the foregoing instrument was served on counsel of record via ECF/PACER.

*/s/ Jerry C. Alexander*
Jerry C. Alexander

---

[59] For example, Technify's presence will inject German law into this case, according to Kübler.
[60] While the parties' opposition may not be conclusive, it is a factor for the Court to consider. *See Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 207 F. Supp. 252, 257 (N.D. Ill. 1962).