FILED
DALLAS COUNTY
8/21/2014 5:06:15 PM
GARY FITZSIMMONS
DISTRICT CLERK

Hector Faulk

NO. DC-14-09151
_____

| | | |
|---|---|---|
| SUPERIOR AIR PARTS, INC., | § | IN THE DISTRICT COURT |
| WEIFANG FREESKY AVIATION, | § | |
| TECHNOLOGY CO., LTD AND | § | |
| SUPERIOR AVIATION BEIJING CO., LTD, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | OF DALLAS COUNTY, TEXAS |
| BRUNO KÜBLER, IN HIS CAPACITY AS | § | |
| INSOLVENCY ADMINISTRATOR OF | § | |
| THIELERT AIRCRAFT ENGINES | § | |
| GMBH, AND THIELERT AIRCRAFT | § | |
| ENGINES GMBH, | § | |
| | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW Plaintiffs Superior Air Parts, Inc., Weifang Freesky Aviation Technology Co., Ltd. and Superior Aviation Beijing Co, Ltd. and file this Original Petition complaining of Defendants Bruno Kübler, in his capacity as the insolvency administrator for Thielert Aircraft Engines GmbH, and Thielert Aircraft Engines GmbH as follows:

### DISCOVERY

Discovery in this action is intended to be conducted under Level 3 in accordance with Rule 190.4 of the Texas Rules of Civil Procedure.

### PARTIES

Plaintiff Superior Air Parts, Inc. ("*Superior*") is a Texas corporation having its principal place of business in Coppell, Texas, Dallas County.

Plaintiff Weifang Freesky Aviation Technology Co., Ltd. ("*FreeSky*") is a business entity organized under the laws of the People's Republic of China having its principal place of business in China. FreeSky acquired the stock of Superior in or about 2009.

Plaintiff Superior Aviation Beijing Co., Ltd. ("*SAB*") is a business entity organized under the laws of the People's Republic of China having its principal place of business in China. SAB is the successor in interest to FreeSky with respect to Superior's stock.

Plaintiffs Superior, FreeSky, and SAB are sometimes referred to collectively herein as "*Plaintiffs*."

Defendant Bruno Kübler ("*Kübler*"), in his capacity as the insolvency administrator for Thielert Aircraft Engines GmbH, is an individual residing in the Republic of Germany. Kübler may be served with process by service upon the Secretary of State of Texas, P.O. Box 12079, Austin, Texas 78711-2079 pursuant to appointment of agent for service contained in the Supplier Agreement and purchase orders described herein. The Secretary of State of Texas may serve Kübler with process directed to Bruno Kübler, Ehrenhainstrasse 1, 42329 Wuppertal, Germany.

Defendant Thielert Aircraft Engines GmbH ("*TAE*") is a business entity organized under the laws of the Republic of Germany with its principal place of business in Germany. TAE may be served with process by service upon the Secretary of State of Texas, P.O. Box 12079, Austin, Texas 78711-2079 pursuant to appointment of agent for service contained in the Supplier Agreement and purchase orders described herein. The Secretary of State of Texas may serve TAE with process directed to Luca Botica, Platanenstr. 14, 09356 St. Egidien (Lichtenstein), Germany or Luca Botica, Kübler, Aachener Straße 222, 50931 Köln, Germany.

Defendants Kübler and TAE are sometimes referred to collectively herein as "*Defendants*."

<u>JURISDICTION AND VENUE</u>

This Court has subject matter jurisdiction over this case because Plaintiffs seek monetary damages within the jurisdictional limits of the Court. This Court also has jurisdiction, pursuant

to Section 65.021(a) of the Texas Civil Practice and Remedies Code, because Plaintiffs seek injunctive relief.

This Court has personal jurisdiction over Kübler and TAE as authorized by the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §§ 17.041 et seq., and the exercise of personal jurisdiction is consistent with federal and state constitutional due process guarantees. Among other things, Kübler and TAE have purposefully availed themselves of the privilege of conducting activities in Texas by seeking affirmative relief from courts in Dallas County, Texas and transacting business in Dallas County, Texas, as defined in Tex. Civ. Prac. & Rem. Code § 17.042, by contracting with Superior, a Texas resident, and such contract was expressly performable in whole or in part in Texas as described below.

Plaintiffs' causes of action, or part thereof, arose in Dallas County, Texas. Plaintiffs' causes of action are founded, in part, upon written supplier agreements and purchase orders which by their terms are expressly performable in Dallas County, Texas. Moreover, the parties to those supplier agreements and purchase orders (including TAE and Kübler) expressly consented to jurisdiction and venue in Dallas County.

FACTUAL BACKGROUND

Superior is the original equipment manufacturer and Federal Aviation Administration ("**FAA**") type certificate holder for an aviation gasoline ("**AV Gas**") powered piston aircraft engine ("**Vantage Engine**") and related parts. Superior is also the holder of numerous Parts Manufacturing Approvals ("**PMAs**") issued by the FAA to Superior authorizing Superior to manufacture various replacement aircraft parts for AV Gas powered piston aircraft engines originally manufactured by Lycoming Engines, a Division of Avco Corporation ("**Lycoming**") and Teledyne Technologies Incorporated a/k/a Teledyne Continental Motors ("**Continental**").

FAA regulations prohibit any person or entity from selling any aircraft part to the public unless such seller is a holder of the type certificate for that engine or a PMA for that part. Superior developed two experimental aircraft engines and holds a type certificate on what is known as the Vantage Engine. The drawings, dimensions, specifications, notes, data and information about these engines and the PMA parts designed, manufactured and sold by Superior are confidential, trade secrets and worthy of protection.

Superior obtained its PMAs at issue in this lawsuit using the Test and Computation method. To obtain such PMAs, Superior first had to invest substantial resources, time and money reverse engineering OEM parts by, among other things, measuring numerous dimensions on each part, determining the chemical composition, heat treatment and manufacturing technique of each part, and then determining the applicable tolerances for each dimension. Next, Superior had to prove to the FAA's satisfaction through testing and computations that Superior could manufacture parts that are as safe and airworthy as the OEM parts. Superior invested thousands of hours and millions of dollars in such efforts. Superior treated the design drawings and test reports (and the compilations of dimensions, notes, tolerances, methods, techniques, processes and other data and information therein) supporting its PMA applications (collectively Superior's "*Intellectual Property*") as its proprietary information and trade secrets.

Superior endeavored to use reasonable efforts to protect its Intellectual Property and keep it secret. Among other things, Superior included confidentiality clauses regarding its Intellectual Property in agreements with suppliers, Superior limited employee access to its Intellectual Property, utilized confidentiality agreements and implemented internal security controls, Superior utilized non-disclosure agreements with potential suppliers, Superior placed proprietary rights legends on its drawings, and Superior carefully limited the amount and type of information

about its Intellectual Property that was contained in overhaul manuals and other publications.

Superior's Intellectual Property at issue in this lawsuit has actual or potential value to third parties because such Intellectual Property is generally unknown to and not readily ascertainable at a reasonable cost by proper means by third parties from trade journals, reference books, or published materials.

Superior's Intellectual Property is continuously used by Superior in its business, and has substantial value to Superior because of its secrecy. If Superior's Intellectual Property were to become known to the public Superior would incur substantial damages by losing the business advantage of knowing and using Superior's Intellectual Property unknown to Superior's actual or potential competitors. Moreover, Superior's Intellectual Property would have substantial value to Superior's actual or potential competitors because, among other things, it would allow such third parties to apply for PMAs without incurring the same amount of work and financial investment as expended by Superior.

As permitted by the PMA and Type Certificate issuing authorities, a PMA or Type Certificate holder can contract with suppliers to machine or process aircraft engine parts for the holder of the PMA or Type Certificate. In such situations, the FAA considers the PMA or Type Certificate holder to be the "manufacturer" even though the suppliers actually cast, forge, machine or treat the products that become aircraft parts.

The supplier must process the products exactly according to the dimensions, tolerances, processes and notes on the design drawings and supporting documents submitted to the FAA by the holder of the PMA or Type Certificate. Any variance from such approved dimensions, tolerances, processes and notes on the design drawings and supporting documents would prevent sale to the public. Accordingly, the holders of PMAs and Type Certificates routinely entrust

copies of their design drawings and test materials to suppliers in confidence with the understanding that suppliers will machine and process products exactly to the approved designs and that such design information will be held in confidence and returned to the holder of the PMA or Type Certificate.

Superior used multiple suppliers. One such supplier was TAE.

On or about December 15, 2001, Superior entered into a supplier agreement with TAE ("***Supplier Agreement***") performable in Dallas County, Texas. The Supplier Agreement provided for TAE to machine and sell to Superior various replacement aircraft parts for which Superior holds PMAs. All such PMAs were obtained by Superior through the Test and Computation method. Pursuant to such supplier relationship, Superior entrusted TAE in confidence with various design drawings, engineering orders, casting/forging drawings and test reports containing Superior's Intellectual Property solely to allow for the fabrication of parts for Superior and/or the bidding on such fabrication. Attached as <u>Exhibit A</u> hereto is a list of approximately 362 Superior PMA parts whose FAA-approved design drawings, data and information Superior entrusted to TAE in confidence pursuant to the Supplier Agreement.

TAE agreed to maintain the confidentiality of Superior's drawings, data, and information, and TAE agreed to return the drawings, data, and information upon termination of the Supplier Agreement:

> 3.02. Title. Superior shall retain title to all Superior furnished drawings, related data (whether or not maintained or stored on computer) and information supplied to TAE under this Agreement. TAE will maintain the confidentiality of all drawings, data and information supplied by Superior and will return such drawings, data and information to Superior upon termination of this Agreement.

TAE's obligation to return Superior's drawings, data, and information is not limited to a particular form; thus, if data or information was supplied by Superior to TAE pursuant to the Supplier Agreement, TAE is obligated to return it, regardless of whether or not TAE migrated

the data or information into a document generated by TAE or stored by TAE in an electronic model or drawing of the part.

TAE and Superior agreed that Superior's drawings, related data, and information could only be used by TAE to perform its obligations under the Supplier Agreement absent Superior's express written consent to the contrary:

> 3.03. Proprietary Rights Data. Superior's drawings, related data and information shall be used by TAE only for the performance of its obligations under this Agreement, unless otherwise provided in this Agreement or expressly approved by Superior in writing.

Superior gave no such written consent. Accordingly, the Supplier Agreement does not afford TAE the right to use or disclose Superior's drawings, data, and information for any purpose other than performing its obligations under the Supplier Agreement.

The Supplier Agreement provided that TAE could not even reproduce or divulge Superior's drawings, related data, and information without Superior's express written consent:

> Schedule 1.02, Paragraph 12. BUYER SUPPLIED ITEMS. Superior shall retain title to all Superior furnished drawings, equipment, data and information supplied to Seller [TAE]. Seller shall be responsible for any loss or damage to the drawings, equipment, data or information supplied by Superior, reasonable wear and tear excepted. Seller will maintain the confidentiality of all such drawings, data and information and may not reproduce or divulge such information without the express written consent of Superior. Superior's drawings, equipment, data and information shall be used by Seller only for the performance of its obligations under the purchase order and Seller will return all drawings, equipment, data and information to Superior at Superior's request.

Superior gave no such written consent.

The Supplier Agreement provided that it would be construed and interpreted by and in accordance with the laws of the State of Texas. The Supplier Agreement further provided that the parties consented to and agreed to venue in Dallas County, Texas. The parties further agreed to submit to the jurisdiction of the state courts located in Dallas County, Texas, and designated the Secretary of State of Texas as their agent for service of process.

Superior placed multiple purchase orders with TAE. Each purchase order contained confidentiality provisions similar to those in the Supplier Agreement. TAE accepted without modification such purchase orders with the confidentiality terms.

TAE entered German insolvency proceedings somewhat similar to U.S. bankruptcy. Kübler was appointed as TAE's insolvency administrator, assuming the rights and obligations of TAE. In his capacity as TAE's insolvency administrator, Kübler continued to operate TAE and supply aircraft parts to Superior pursuant to the Supplier Agreement. Moreover, the Defendants entered into multiple purchase order contracts, each of which were performable in Dallas County, Texas, stipulated to jurisdiction in Texas and appointed the Secretary of State of Texas to serve as agent for service of process. The Defendants also reaffirmed the Supplier Agreement and/or agreed to be bound by its terms.

In accordance with its rights under the Supplier Agreement, Superior requested that Kübler and TAE return Superior's drawings, data or information. The Defendants initially denied possessing any of Superior's drawings, data and information, but after months of stalling the Defendants eventually returned 700 drawings created by Superior. After belatedly returning such drawings, the Defendants initially denied possessing any other Superior's drawings, data or information; however, Superior eventually learned that the Defendants possess hundreds of 3D computer assisted design ("*CAD*") models created using Superior's drawings, data and information for approximately 362 aircraft parts for which Superior holds the exclusive PMA or type certificate ("*TAE-labeled 3D CAD models*"). Superior also learned that the Defendants possess hundreds of 2D drawings likewise created using Superior's drawings, data and information for those parts ("*TAE-labeled 2D drawings*"). Superior made demand for the removal of Superior's data and information from the TAE-labeled 3D CAD models and 2D

drawings, and the return of Superior's drawings, data and information. The Defendants refused and threatened to sell the TAE-labeled 3D CAD models and 2D drawings created from Superior's Intellectual Property to Continental or another competitor of Superior.

CAUSES OF ACTION

COUNT 1 – Misappropriation of Trade Secrets

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

Superior owns certain proprietary drawings and related data and information constituting its trade secrets, including without limitation the drawings and related data and information entrusted to TAE in confidence by Superior pursuant to the Supplier Agreement and purchase orders.

The Defendants are using, selling or disclosing, or imminently threaten to use, sell or disclose, Superior's trade secrets, without Superior's consent, in violation of a confidential and/or contractual relationship with Superior, and/or after acquiring the trade secrets by improper means.

Superior has been and will continue to be injured as a result of the Defendant's misappropriation of its trade secrets. Superior sues the Defendants for misappropriation of trade secrets pursuant to the common law and The Texas Uniform Trade Secrets Act (TUTSA), Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et seq.*

Superior seeks an injunction enjoining TAE and Kübler, and their agents, successors and assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings,

without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

COUNT 2 – Breach of Contract

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

The Supplier Agreement and purchase orders prohibit TAE, and thus Kübler, from reproducing Superior's drawings, data or information without Superior's written consent. Superior did not give such written consent. Nevertheless, TAE and Kübler reproduced Superior's drawings, data or information without Superior's written consent by creating the TAE-labeled 3D CAD models and 2D drawings using Superior's drawings, data or information. Such actions by TAE and Kübler violate the terms of the Supplier Agreement and purchase orders, and thus constituted breaches of contract for which Superior sues the Defendants.

The Supplier Agreement and purchase orders prohibited TAE, and thus Kübler, from using Superior's drawings, data or information for any purpose other than fulfilling the Supplier Agreement or purchase orders. Nevertheless, TAE and Kübler are improperly refusing to return Superior's drawings, data or information, in whatever form, including without limitation the TAE labeled 3D CAD models and 2D drawings, and now threaten to sell such TAE-labeled 3D CAD models and 2D drawings to Continental or another competitor of Superior (if they have not already done so). Such actions by TAE and Kübler violate the terms of the Supplier Agreement and purchase orders, and thus constituted breaches of contract for which Superior sues the

Defendants.

The Supplier Agreement and purchase orders require TAE, and thus Kübler, to return Superior's drawings, data or information to Superior. Superior made demand for the return of its Superior's drawings, data or information, including Superior's data and information TAE and Kübler had placed in the TAE-labeled 3D CAD models and 2D drawings by copying Superior's drawings, data or information. Nevertheless, TAE and Kübler have failed to return Superior's data and information contained in the TAE-labeled 3D CAD models and 2D drawings created using Superior's drawings, data or information. Such actions by TAE and Kübler violate the terms of the Supplier Agreement and purchase orders, and thus constitute breaches of contract for which Superior sues the Defendants.

Superior performed, tendered performance or alternatively was discharged and excused from performing all of its obligations pursuant to the Supplier Agreement and purchase orders. All conditions precedent to Superior's enforcement of the Supplier Agreement and purchase orders were performed, occurred or alternatively excused.

Superior's Intellectual Property, including the drawings, data and information entrusted to TAE in confidence, has a special, peculiar, and unique value and character and Superior would not be adequately compensated for its loss by money damages. Improper reproduction, use, disclosure or failure to return Superior's Intellectual Property will cause irreparable harm to Superior for which it has no adequate remedy at law for damages or would result in inadequate compensation. Superior comes into this Court with clean hands and the Supplier Agreement and purchase orders were fair and free from misrepresentation, misapprehension, fraud, mistake, or surprise.

Accordingly, Superior seeks an injunction enjoining TAE and Kübler, and their agents,

successors or assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

COUNT 3 – Breach of Fiduciary Duty

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

TAE and Kübler owe fiduciary duties to Superior because Superior entrusted its Intellectual Property to TAE in confidence in furtherance of a written contract in which TAE promised to maintain such Intellectual Property confidential, limit use of such Intellectual Property, not reproduce or divulge such Intellectual Property, and to return such Intellectual Property to Superior. Kübler assumed the rights and obligations of TAE.

In addition, the circumstances of TAE and Kübler 's relationship of trust and confidence with Superior and TAE and Kübler's knowledge and course of dealing with Superior created a fiduciary duty in TAE and Kübler to Superior. Indeed, TAE and Kübler knew that Superior supplied its trade secrets to TAE in confidence and that TAE and Kübler were only allowed to use or disclose the trade secrets as necessary to perform their obligations under the Supplier Agreement. TAE and Kübler definitely knew they could not sell or disclose the trade secrets to

one of Superior's competitors.

TAE and Kübler's fiduciary duties to Superior were much like that those owed by an agent to his principal or an employee to his employer since TAE was acting merely as Superior's machine shop, no different than if it were an internal division of Superior.  These fiduciary duties include the duties of care, loyalty, honest dealing, and to refrain from usurpation or self-dealing, as well as the fiduciary duties set forth in the Supplier Agreement (*see, e.g.* §§ 3.01-3.03) and purchase orders.  TAE and Kübler breached these fiduciary duties by, among other things, engaging in the following acts, error or omissions:

- Failing to maintain the confidentiality of Superior's Intellectual Property by offering same for sale;

- Using Superior's Intellectual Property beyond performance of the Supplier Agreement and purchase orders;

- Selling or attempting to sell Superior's Intellectual Property to Continental or another competitor of Superior; and

- Failing to immediately return Superior's Intellectual Property, including those portions of the TAE-labeled 3D CAD models and 2D drawings containing Superior's Intellectual Property.

The foregoing acts, errors and omissions constitute breaches of the fiduciary duties owed by TAE and Kübler to Superior; such breaches reflect a conscious disregard of their duties to Superior, often clearly favoring themselves and others over the interests of Superior.  No person of ordinary sound business judgment would deem it appropriate to commit the acts, errors and omissions described above.

The acts, errors and omissions described above caused or threaten to cause substantial injury and harm to Superior and/or benefit to TAE and Kübler, and were not in Superior's best interest.  Such acts, errors and omissions were the proximate cause of damages to Superior for which Superior hereby sues.  Superior is further entitled to recover disgorgement of all fees,

commissions and profits paid to or received by TAE or Kübler resulting from their breach of the fiduciary duties set forth above.

In addition, Superior seeks an injunction enjoining TAE and Kübler, and their agents, successors or assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

<u>COUNT 4 – Conversion</u>

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

Superior owns, possessed or had a right to possession of its drawings, data and information contained in its Intellectual Property, which constitutes personal property including confidential information and/or trade secrets.

TAE and Kübler wrongfully exercised control and dominion over Superior's drawings, data and information inconsistent with Superior's rights by improperly reproducing, divulging, using and failing to return such drawings, data and information to Superior, and any TAE-labeled 3D CAD models and 2D drawings created using Superior's drawings, data and information, in a way that departed from the conditions under which Superior entrusted its drawings, data and

information to the Defendants.

Superior made demand for the return of its Superior's drawings, data and information, including Superior's data and information in the TAE-labeled 3D CAD models and 2D drawings created using Superior's drawings, data and information.  Nevertheless, TAE and Kübler failed to return to Superior its data and information contained in the TAE-labeled 3D CAD models and 2D drawings created using Superior's drawings, data or information.  Such actions by TAE and Kübler constitute conversion for which Superior sues the Defendants.

Superior has no adequate remedy at law for damages or such damages would result in inadequate compensation to Superior.  Accordingly, Superior seeks an injunction enjoining TAE and Kübler, and their agents, successors or assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

<u>COUNT 5 – Unfair Competition by Misappropriation</u>

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

It took a lot of time, skill, effort, and money for Superior to develop its drawings and the related data and information.  Without control of these drawings and related data and information, Superior will not be able to stay in business.

The Defendants' sale or imminent threat to sell Superior's drawings and related data and information acquired by virtue of Superior's confidential relationship with TAE and Kübler will give an unfair and special advantage to Continental or other third parties that directly compete with Superior because they incurred little to no expense in developing the data and information underlying Superior's drawings, so they will be profiting at Superior's expense (*i.e.* a free ride).

Superior has suffered actual damage or loss as a result of the Defendants' unfair competitive tactics and will continue to suffer damage and loss.

Accordingly, Superior seeks an injunction enjoining TAE and Kübler, and their agents, successors or assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

<u>COUNT 6 – Texas Theft Liability Act</u>

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

Superior has a possessory right to the drawings and related data and information entrusted to TAE in confidence pursuant to the Supplier Agreement or purchase orders.  These

drawings and related data and information constitute Superior's trade secrets or, at minimum, Superior's personal property.

TAE and Kübler are unlawfully appropriating and/or securing this property, or imminently threaten to unlawfully appropriate and/or secure the property, as prohibited by TEXAS PENAL CODE section 31.03 (Theft of Real or Personal Property) and section 31.05 (Theft of Trade Secrets) with the intent to deprive Superior of the property.

Superior has sustained damages as a result of Defendants' theft of Superior's property for which Superior sues the Defendants.

COUNT 7 – Unjust Enrichment

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein and alternatively pleads a cause of action for unjust enrichment as follows in this count.

The actions of TAE and Kübler have resulted in unjust enrichment to the Defendants. TAE and Kübler obtained a benefit from Superior's Intellectual Property by fraud or taking undue advantage of Superior and used, and are still using, Superior's Intellectual Property without compensating Superior for such use

Such actions have resulted in unjust enrichment to TAE and Kübler and damages to Superior for which Superior hereby sues the Defendants.

COUNT 8 – Promissory Estoppel

Superior incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein and alternatively pleads a cause of action for promissory estoppel as follows in this count.

TAE and Kübler promised Superior that they would (a) maintain the confidentiality of

Superior's Intellectual Property; (b) not reproduce Superior's Intellectual Property without Superior's written consent; (c) not divulge Superior's Intellectual Property to third parties; (d) not use Superior's Intellectual Property beyond performance of the Supplier Agreement and purchase orders; (e) not sell or attempt to sell Superior's Intellectual Property to Continental, Lycoming or another competitor of Superior; and (f) immediately return Superior's Intellectual Property, including those portions of any materials containing Superior's Intellectual Property. TAE and Kübler could have and should have foreseen that Superior would substantially rely on those promises.   Superior relied to its detriment on the promises of TAE and Kübler by entrusting Superior's Intellectual Property to TAE and Kübler in confidence.   TAE and Kübler breached those promises as described herein.   Accordingly, TAE and Kübler are estopped to deny that they are liable for the legal fees, expert fees, expenses and other costs incurred by Superior in protecting and recovering its Intellectual Property and any damages incurred in reliance on these promises for which Superior sues the Defendants.

Accordingly, Superior seeks an injunction enjoining TAE and Kübler, and their agents, successors or assigns, from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler.

COUNT 9 – Statutory Fraud

SAB and FreeSky incorporate by reference the allegations in the preceding paragraphs as if set forth verbatim herein.

As set forth herein (*e.g.*, Counts 1-3), TAE and Kübler made false promises to Superior, including the promise that TAE and Kübler would not use Superior's drawings, related data, and information, except as provided in the Supplier Agreement, and would return such drawings, data, and information to Superior.  The promises were made in the Supplier Agreement and in numerous purchase orders accepted in connection with Superior's purchase of parts from TAE and/or Kübler.  These promises were made in order to induce Superior into (1) entering into the Supplier Agreement; (2) entrusting its drawings, related data, and information with TAE; (3) continuing to do business with TAE and Kübler; and (4) not demanding the earlier return of Superior's drawings, related data, and information.  TAE and Kübler had no intention of fulfilling the promises to limit their use of and to return Superior's drawings, related data, and information.

Kübler, as TAE's Insolvency Administrator, was aware the falsity of TAE's promises and failed to disclose same.  For example, Kübler was aware that TAE had generated the TAE-labeled 3D CAD models and 2D drawings using Superior's drawings, data and data for all Superior parts, not just the parts it machined for Superior, since Kübler and his agents (including Ms. Luca Botica) oversaw TAE's business and operated the company for several years.  Kübler was also aware that TAE's manufacturing days were numbered, and eventually TAE would go into a liquidation or wind down and would no longer operate as a going concern, and thus, would have no use for the TAE-labeled 3D CAD models and 2D drawings of Superior's parts, especially as they related to parts TAE never machined for Superior, and would ultimately

APPX_0040

attempt to sell such models and drawings.

In connection with the transaction in September 2009 whereby FreeSky[1] purchased Superior's stock, the Defendants promised to not use Superior's drawings, related data, and information other than to perform the Supplier Agreement, and they affirmatively represented that they would return Superior's information to Superior. These promises and representations were material to FreeSky and FreeSky relied on same because, as set forth herein, Superior's information is a valuable trade secret, and if the information was not kept secret and not returned by TAE and Kübler as promised, FreeSky would be deprived of the benefit of the $7,000,000 it paid for Superior's stock. FreeSky likewise relied on TAE's and Kübler's promises to limit the use of and return Superior's information by entering into the stock transaction and in paying $7,000,000 for Superior's stock.

TAE and Kübler also made the promises and representations that they would return Superior's information for the purpose of inducing FreeSky to purchase Superior's stock. Importantly, TAE and Kübler were in a position to directly benefit from the stock transaction's consummation in that they stood to receive (and ultimately received) $500,000 of the $7,000,000 paid by FreeSky for Superior's stock.

Finally, TAE and Kübler made their promises to return Superior's information with no intention of fulfilling such promises. For example, the Defendants did not return all of the data and information and drawings for the parts TAE was not manufacturing for Superior, even though the Defendants promised to do so. While the Defendants might have had a reason for keeping the information pertaining to the 48 parts TAE continued machining for Superior, the

---

[1] SAB is the successor in interest to FreeSky with respect to ownership of Superior's stock. Both FreeSky and SAB sue in this Count 9. The Defendants continued their promises, misrepresentations and failures to disclose throughout the ownership of both FreeSky and SAB of Superior.

Defendants had no reason for keeping Superior's drawings, data and information regarding the other approximately 314 parts. Moreover, when asked to return Superior's drawings, data and information in April of 2013, the Defendants first denied having any of Superior's drawings, data and information at all by letter dated June 3, 2013. The representation that the Defendants did not have any of Superior's drawings, data or information was false, and was intended to deceive Superior and its owners. The Defendants then stated they only had the original Superior drawings for approximately 300 Superior parts, but nothing else. That representation was false. The Defendants then had their agents try to manipulate Superior into an agreement whereby TAE and/or Kübler would have been allowed to sell anything else they had previously "set aside" as a result of Superior's inquiry, including the TAE-labeled 3D CAD models and 2D drawings of Superior's parts created almost entirely from Superior's proprietary information. The Defendants' intent was to sell Superior's information to one of Superior's competitors (*e.g.* Continental or another competitor).

SAB and FreeSky have been and will continue to be injured and suffer damage as a result of the Defendants' violations of Section 27.01 of the Texas Business and Commerce Code. SAB and FreeSky sue the Defendants for statutory fraud pursuant to Section 27.01 of the Texas Business and Commerce Code.

JURY DEMAND

Plaintiffs incorporates by reference the allegations in the preceding paragraphs as if set forth verbatim herein

Plaintiffs demand a jury trial.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Superior Air Parts, Inc., Weifang Freesky Aviation Technology Co., Ltd., and Superior Aviation Beijing Co., Ltd. pray that Defendants

Bruno Kübler, in his capacity as the insolvency administrator for Thielert Aircraft Engines GmbH, and Thielert Aircraft Engines GmbH be cited to appear and answer.  Plaintiffs request that they be awarded judgment against the Defendants for the following:

(1)    An injunction to enjoin the Defendants and their agents, successors and assigns from: (a) reproducing Superior's drawings, data or information without Superior's written consent; (b) using, selling or transferring Superior's drawings, data or information, or selling or transferring any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, without first removing Superior's drawings, data or information; and (c) failing to return to Superior its drawings, data or information, and any document, program or data created using Superior's drawings, data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings, less any data or material that the Court might determine to be the sole property of TAE or Kübler;

(2)    Monetary damages;

(3)    Disgorgement of any profits paid to Defendants in connection with a sale of Superior's drawings or related data or information, including without limitation the TAE-labeled 3D CAD models and 2D drawings;

(4)    Punitive damages;

(5)    Prejudgment interest from the date first lawfully available to the date of judgment, at the highest lawful rate;

(6)    Post-judgment interest at the rate provided by law, from the date of judgment until same is paid in full;

(7)    Plaintiffs' reasonable and necessary attorney's fees pursuant to Texas Civil Practice & Remedies Code § 38.001 et seq., Texas Civil Practice & Remedies Code § 134.005(b) et seq., Texas Business & Commerce Code § 27.01(e), and the express terms of the Supplier Agreement and purchase orders;

(8)    All costs of court; and

(9)    Such further relief, both specific and general, in law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, TX  75270-2599
Phone:  214-742-2121
Fax:  214-748-7949

COUNSEL FOR PLAINTIFFS

## **VERIFICATION**

| | |
|---|---|
| STATE OF TEXAS | § |
| DALLAS COUNTY | § |

Before me, the undersigned notary, on this day personally appeared Kent Abercrombie, the affiant, a person whose identity in known to me. After I administered an oath to the affiant, he testified:

"My name is Kent Abercrombie. I am the Chief Financial Officer of Superior Air Parts, Inc. ("*Superior*") and am authorized to and capable of making this verification. I read the foregoing Plaintiff's Original Petition. The facts stated in the Plaintiff's Original Petition are within my personal knowledge, my knowledge gained from Superior's business records that would be admissible at trial of this lawsuit, my knowledge of statements by representatives of Dr. Bruno Kübler ("*Kübler*") and/or Thielert Aircraft Engines GmbH ("*TAE*") and/or my knowledge from personal observation of Superior's drawings, data and information that Kübler and TAE possess and will not return, and such statements are true and correct."



_____
Kent Abercrombie

SUBSCRIBED AND SWORN TO BEFORE ME on this ᒿ1 day of August, 2014.

_____
Notary Public, State of Texas

JAN L. CLEMENS
Notary Public, State of Texas
My Commission Expires
May 25, 2015

Exhibit A to Plaintiffs' Original Petition

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|-----------------|
| 1 | SA10200-A1 | ASSEMBLY, STUD |
| 2 | SA10202 | BARREL |
| 3 | SA10203 | HEAD MACHINING |
| 4 | SA10204 | VALVE |
| 5 | SA10205 | VALVE GUIDE |
| 6 | SA10209 | VALVE GUIDE |
| 7 | SA2106 | INSERT, VALVE SEAT, EXHAUST |
| 8 | SA21284 | PUSH ROD HOUSING |
| 9 | SA21361 | VALVE SPRING LOCK |
| 10 | SA22949 | BUSHING |
| 11 | SA24026 | VALVE SPRING RETAINER |
| 12 | SA24029 | SPRING |
| 13 | SA24044 | VALVE SPRING RETAINER |
| 14 | SA24802 | VALVE KEY |
| 15 | SA350998 | BUSHING, CRANKSHAFT, CWT |
| 16 | SA35967 | INSERT, VALVE SEAT, EXHAUST |
| 17 | SA35971 | RETAINER |
| 18 | SA401870 | STUD |
| 19 | SA401893 | STUD |
| 20 | SA402044 | STUD |
| 21 | SA402151 | STUD |
| 22 | SA47000L-A1 | CYLINDER ASSEMBLY LONG REACH |
| 23 | SA47000S-A1 | CYLINDER ASSEMBLY SHORT REACH |
| 24 | SA47001 | CYLINDER HEAD ASSY |
| 25 | SA47005 | HEAD MACHINING |
| 26 | SA47006L-A1 | CYLINDER STUD ASSEMBLY, LONG R |
| 27 | SA47006S-A1 | CYLINDER STUD ASSEMBLY, SHORT |
| 28 | SA47030 | BARREL MACHINED 470 |
| 29 | SA52000-A1 | CYLINDER ASSEMBLY |
| 30 | SA52001 | 520 HEAD MACHINING, INVESTMENT |
| 31 | SA52005 | 520 HEAD MACHINING, STANDARD |
| 32 | SA52006 RWK | 520 REWORK |
| 33 | SA52006-A1 | CYLINDER STUD ASSEMBLY |
| 34 | SA52030 | BARREL MACHINED 520 |
| 35 | SA524818 | PIPE PLUG |
| 36 | SA530830 | PISTON PIN ASSY |
| 37 | SA530851 | BODY, HYD. LIFTER |
| 38 | SA535661 | CAMSHAFT |
| 39 | SA537882 | CAM LIFT AND TIMING |
| 40 | SA539467 | PISTON PIN ASSY |
| 41 | SA539988 | VALVE |
| 42 | SA55000-A1 | CYLINDER STUD ASSEMBLY |
| 43 | SA55006-A1 | CYLINDER STUD ASSEMBLY |
| 44 | SA55030 | BARREL |
| 45 | SA625393 | VALVE SPRING RETAINER |

APPX_0047

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|-----------------|
| 46 | SA625957 | SPRING |
| 47 | SA625958 | SPRING |
| 48 | SA625961 | VALVE SPRING SEAT |
| 49 | SA628975 | BUSHING, CRANKSHAFT, CWT |
| 50 | SA629117 | ROTOCOIL |
| 51 | SA629518 | PIPE PLUG |
| 52 | SA629690 | PISTON PIN ASSY |
| 53 | SA630046 | PISTON PIN ASSY |
| 54 | SA630591 | INSERT, VALVE SEAT, INTAKE |
| 55 | SA632092 | EXPANSION PLUG |
| 56 | SA636242 | VALVE GUIDE |
| 57 | SA638125 | CAPTIVE LOCKING STUD |
| 58 | SA639193 | BUSHING, CRANKSHAFT, CWT |
| 59 | SA640482 | CAPTIVE LOCKING STUD |
| 60 | SA641792 | VALVE |
| 61 | SA641793 | INSERT, VALVE SEAT, INTAKE |
| 62 | SA641931 | BOLT, CRANKCASE, THRU |
| 63 | SA643789 | GUIDE, VALVE, INTAKE |
| 64 | SA643873 | VALVE |
| 65 | SA646985 | SEAL, GREEN |
| 66 | SA649520 | CAMSHAFT |
| 67 | SA649520-A3 | ASSEMBLY CAMSHAFT |
| 68 | SA65000-A1 | STUD ASSY A65 |
| 69 | SA65001 | HEAD, CYLINDER |
| 70 | SA65030 | BARREL |
| 71 | SA65140 | VALVE |
| 72 | SA65150 | INSERT, VALVE SEAT, INTAKE |
| 73 | SA65160 | VALVE |
| 74 | SA65170 | INSERT, VALVE SEAT, EXHAUST |
| 75 | SA652984 | SHAFT, ROCKER |
| 76 | SA654441 | VALVE SPRING |
| 77 | SA654442 | VALVE SPRING |
| 78 | SAC10203 | CASTING HEAD O-200 |
| 79 | SAC52001 | CASTING HEAD 520 STANDARD |
| 80 | SAF10202 | FORGING, BARREL, O-200 |
| 81 | SAF36030 | FORGING, BARREL, O-235 |
| 82 | SL02G21382 | NIPPLE GAGE |
| 83 | SL10077 | VALVE SPRING SEAT |
| 84 | SL10207A | PISTON, 8.80:1 |
| 85 | SL10302-A1 | STUD ASSY 235 L2C |
| 86 | SL10303-A1 | STUD ASSY 235 C |
| 87 | SL10311 | HEAD MACHINING |
| 88 | SL10450 | CYLINDER FIN STABILIZER |
| 89 | SL10451 | CYLINDER FIN STABILIZER |
| 90 | SL10452 | CYLINDER FIN STABILIZER |
| 91 | SL10545 | PISTON, 7.30:1 |
| 92 | SL1102 | PIPE PLUG |

APPX_0048

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|---|---|---|
| 93 | SL11485 | TUBE, SHROUD |
| 94 | SL11626 | VALVE GUIDE |
| 95 | SL11750 | CONNECTING ROD ASSEMBLY |
| 96 | SL11750-1 | CONNECTING ROD SUB-ASSEMBLY |
| 97 | SL11775 | PLUG |
| 98 | SL11795 | SPRING |
| 99 | SL11796 | SPRING |
| 100 | SL11797 | VALVE SPRING |
| 101 | SL11800 | VALVE SPRING |
| 102 | SL11900 | INSERT, VALVE SEAT, INTAKE |
| 103 | SL11901 | INTAKE VALVE |
| 104 | SL12186 | NUT-HEX |
| 105 | SL12545 | PLUG, OIL SCREEN |
| 106 | SL12596 | BOLT, CONNECTING ROD |
| 107 | SL12688 | INSERT, VALVE SEAT, INTAKE |
| 108 | SL13212A | BEARING |
| 109 | SL13321 | VALVE SPRING SEAT |
| 110 | SL13322 | VALVE SPRING SEAT |
| 111 | SL13323 | VALVE SPRING SEAT |
| 112 | SL13444 | PISTON PIN ASSY |
| 113 | SL13444-1 | PISTON PIN ASSY |
| 114 | SL13445 | PISTON PIN |
| 115 | SL13521A | BEARING |
| 116 | SL13622 | VALVE SPRING SEAT |
| 117 | SL13793 | STUD |
| 118 | SL13884A | BEARING |
| 119 | SL13923A | BUSHING, CONNECTING ROD |
| 120 | SL14780 | GAGE ASSY, OIL LEVEL |
| 121 | SL14820 | SNAP RING |
| 122 | SL14W21696 | COUNTERWEIGHT ROLLER |
| 123 | SL15314 | VALVE |
| 124 | SL15B21319 | PUSHROD CUP |
| 125 | SL15F19957 | PUSH ROD ASSY |
| 126 | SL16475 | VALVE SPRING SEAT |
| 127 | SL16511 | CAMSHAFT |
| 128 | SL16511-1 | CAMSHAFT PROFILE |
| 129 | SL16699 | INSERT, VALVE SEAT, EXHAUST |
| 130 | SL16711A | BEARING |
| 131 | SL16740A | INTAKE VALVE |
| 132 | SL17F21187 | ROCKER ARM |
| 133 | SL17F21188 | ROCKER ARM |
| 134 | SL18667 | PIN, TACH DRIVE |
| 135 | SL18790 | ROCKER ARM |
| 136 | SL18815 | PROP FLANGE BUSHING |
| 137 | SL18816 | PROP FLANGE BUSHING |
| 138 | SL18817 | PROP FLANGE BUSHING |
| 139 | SL18818 | PROP FLANGE BUSHING |

APPX_0049

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|------------------|
| 140 | SL18819 | PROP FLANGE BUSHING |
| 141 | SL18840 | CAMSHAFT |
| 142 | SL18840-1 | CAMSHAFT PROFILE |
| 143 | SL18840-2 | CAMSHAFT |
| 144 | SL18840-3 | CAMSHAFT PROFILE |
| 145 | SL18843 | CAMSHAFT ASSY |
| 146 | SL18843-2 | CAMSHAFT FRONT MNT PROP GOV |
| 147 | SL18921 | PROP FLANGE BUSHING |
| 148 | SL18922 | PROP FLANGE BUSHING |
| 149 | SL19001A | VALVE |
| 150 | SL19034 | EXHAUST VALVE |
| 151 | SL19227 | COUNTERWEIGHT ASSY |
| 152 | SL19227-1 | COUNTERWEIGHT FOR SL36650-A1 |
| 153 | SL19332-1 | CONNECTING ROD SUB-ASSY |
| 154 | SL19340-1 | CAMSHAFT PROFILE |
| 155 | SL19340-2 | CAMSHAFT |
| 156 | SL19340-3 | CAMSHAFT PROFILE |
| 157 | SL23530 | BARREL |
| 158 | SL25C | STUD |
| 159 | SL31C-12 | STUD, 5/16 IN DIA, COARSE THRD |
| 160 | SL32000N-A1 | STUD ASSY 320 |
| 161 | SL32000NA-A1 | STUD ASSY 320N ND SPOT FACED |
| 162 | SL32000W-A1 | STUD ASSY 320 |
| 163 | SL32000WH-A1 | STUD ASSY 320 76 SERIES |
| 164 | SL32000WL-A1 | STUD ASSY 320 WIDE LONG |
| 165 | SL32006N-A1 | CYLINDER STUD ASSY |
| 166 | SL32006NA-A1 | CYLINDER STUD ASSY |
| 167 | SL32006W-A1 | CYLINDER STUD ASSY |
| 168 | SL32033 | BARREL |
| 169 | SL32033N | BARREL |
| 170 | SL32500 | CRANKSHAFT MACHINING |
| 171 | SL32500-A1 | CRANKSHAFT ASSEMBLY 320 |
| 172 | SL36000N-A1 | STUD ASSY 360 |
| 173 | SL36000NL-A1 | STUD ASSY 360 NARROW LONG |
| 174 | SL36000TW-A1 | STUD ASSY 360 THIN WIDE |
| 175 | SL36000TWL-A1 | STUD ASSY 360 THIN WIDE LONG |
| 176 | SL36000W-A1 | STUD ASSY 360 |
| 177 | SL36000WH-A1 | STUD ASSY 360 76 SERIES |
| 178 | SL36000WL-A1 | STUD ASSY 360 |
| 179 | SL36001 | HEAD MACHINING, INVESTMENT |
| 180 | SL36005 | HEAD MACHINING |
| 181 | SL36006 | CYLINDER ASSY MASTER DRAWING |
| 182 | SL36006N-A1 | CYLINDER STUD ASSY |
| 183 | SL36006W | CYLINDER ASSY BUILD UP |
| 184 | SL36006W-A1 | CYLINDER STUD ASSY |
| 185 | SL36033 | BARREL MACHINED 360W NAT CHOKE |
| 186 | SL36033N | BARREL |

APPX_0050

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|-----------------|
| 187 | SL36033TW | BARREL |
| 188 | SL36100WLC-A1 | CYLINDER ASSY |
| 189 | SL36100WSC-A1 | STUD ASSY ANGLE VALVE 361 |
| 190 | SL36101 | 360 HEAD MACHINING, ANGLE VALVE |
| 191 | SL36101S | HEAD MACHINING |
| 192 | SL36400 | CRANKSHAFT MACHINING SOLID |
| 193 | SL36500 | CRANKSHAFT MACHINING |
| 194 | SL36500-A1 | CRANKSHAFT SUB-ASSY CONST SPD |
| 195 | SL36550 | CRANKSHAFT MACHINING |
| 196 | SL36550-A1 | CRANKSHAFT ASSY THIN WALL CNTR |
| 197 | SL36600 | CRANKSHAFT MACHINING |
| 198 | SL36600-A1 | CRANKSHAFT ASSY HEAVY WALL |
| 199 | SL36650 | CRANKSHAFT MACHINING |
| 200 | SL36650-A1 | CRANKSHAFT SUB-ASSY CNTR WTD |
| 201 | SL36800 | CRANKCASE MACHINING |
| 202 | SL36800-R1 | CRNKCSE ASSY WD/#1 MNT, ROLLER |
| 203 | SL36800-W1 | CRANKCASE ASSY,WD /W #1 MOUNT |
| 204 | SL36850 | CRANKCASE MACHINING |
| 205 | SL36850-R1 | CRNKCSE ASSY WD/#1 MNT, ROLLER |
| 206 | SL36850-W1 | CRANKCASE ASSY,WD /W #1 MOUNT |
| 207 | SL38 | STUD |
| 208 | SL383-B | NUT-HEX |
| 209 | SL38D | STUD |
| 210 | SL50 | STUD |
| 211 | SL54001 | CYLINDER HEAD |
| 212 | SL54002-A1 | CYLINDER ASSEMBLY |
| 213 | SL54002NLC-A1 | CYLINDER ASSEMBLY |
| 214 | SL60009 | VALVE KEY |
| 215 | SL60430 | COVER, VACUUM PUMP |
| 216 | SL60803 | STRAP |
| 217 | SL61098 | ADAPTER, VACUUM PUMP |
| 218 | SL61174A | SHAFT, DRIVE, OIL PUMP |
| 219 | SL61510 | PLUG |
| 220 | SL61544 | PLUNGER, FUEL PUMP |
| 221 | SL61618A | VALVE GUIDE |
| 222 | SL62388 | ROTO CAP |
| 223 | SL62415 | PLUNGER, OIL COOLER |
| 224 | SL65441 | VALVE SPRING SEAT |
| 225 | SL66610 | BUSHING, ROCKER SHAFT |
| 226 | SL66670 | BUSHING, ROCKER SHAFT |
| 227 | SL66728 | WASHER |
| 228 | SL68317 | PROP DRIVE GEAR |
| 229 | SL68484 | TUBE, PROPELLER OIL |
| 230 | SL68317 | GEARSHAFT, PROP GOVERNOR |
| 231 | SL68795 | VALVE COVER |
| 232 | SL69106 | COVER, GOVERNOR DRIVE ADAPTER |
| 233 | SL69532 | VALVE SPRING SEAT |

APPX_0051

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|------------------|
| 234 | SL69796 | DOWEL |
| 235 | SL71105 | TAPPET BODY |
| 236 | SL71140 | FITTING, BREATHER |
| 237 | SL71894A | INSERT, VALVE SEAT, EXHAUST |
| 238 | SL71895A | VALVE SEAT |
| 239 | SL71903A | BUSHING |
| 240 | SL71907A | COUNTERWEIGHT WASHER |
| 241 | SL72050 | LOCK, VALVE SPRING RETAINER |
| 242 | SL72057A | VALVE SEAT |
| 243 | SL72058A | VALVE SEAT |
| 244 | SL72072 | OIL TUBE |
| 245 | SL72073 | OIL TUBE |
| 246 | SL72155 | PROP FLANGE BUSHING |
| 247 | SL72255 | SHROUD TUBE |
| 248 | SL72343 | STABILIZER |
| 249 | SL72344 | STABILIZER |
| 250 | SL72378 | COVER, GOVERNOR DRIVE |
| 251 | SL72626A | ROCKER SHAFT |
| 252 | SL72797 | COUNTERWEIGHT ROLLER |
| 253 | SL72877 | BODY, HYD. |
| 254 | SL72877A | BODY, HYD. |
| 255 | SL73161 | SPACER, INJECTOR |
| 256 | SL73207 | OIL TUBE |
| 257 | SL73249 | WASHER, THRUST |
| 258 | SL73250 | WASHER, THRUST |
| 259 | SL73251 | WASHER, THRUST |
| 260 | SL73252 | WASHER, THRUST |
| 261 | SL73810 | BUSHING, CRANKCASE, CWT |
| 262 | SL73857A | PISTON RING |
| 263 | SL73938 | VALVE |
| 264 | SL74230A | VALVE GUIDE |
| 265 | SL74241A | PISTON RING |
| 266 | SL74637 | BUSHING, VALVE ROCKER |
| 267 | SL74710 | TUBE, OIL |
| 268 | SL74711 | PLUG |
| 269 | SL74887 | SPACER |
| 270 | SL74996 | GEAR AND BUSHING ASSY |
| 271 | SL75060 | BOLT, ROD |
| 272 | SL75061 | BOLT, ROD |
| 273 | SL75089A | PISTON |
| 274 | SL75154 | STUD |
| 275 | SL75545-1 | PROP GOVERNOR ADAPTER |
| 276 | SL75545-2 | PROP GOVERNOR ADAPTER |
| 277 | SL75656 | PROP FLANGE BUSHING |
| 278 | SL75657 | PROP FLANGE BUSHING |
| 279 | SL75706 | CAMSHAFT |
| 280 | SL75706-1 | LOBE PROFILE |

APPX_0052

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|------|-------------|-----------------|
| 281 | SL75767 | TUBE, OIL LEVEL |
| 282 | SL75838A | VALVE GUIDE |
| 283 | SL76118 | SPACER |
| 284 | SL76121 | TACH DRIVE ASSY |
| 285 | SL76220 | THRU BOLT |
| 286 | SL77450 | CONNECTING ROD ASSEMBLY |
| 287 | SL77450-1 | CONNECTING ROD SMALL/NARROW |
| 288 | SL78027 | BOLT, CONNECTING ROD |
| 289 | SL78030 | CONNECTING ROD ASSEMBLY |
| 290 | SL78030-1 | CONNECTING ROD SUB-ASSEMBLY |
| 291 | SL78290 | PLUNGER ASS'Y |
| 292 | SL78290A | PLUNGER ASS'Y |
| 293 | SL78915 | OIL SUMP ASSY |
| 294 | SL78915-1 | OIL SUMP MACHINING |
| 295 | SLC078915 | OIL SUMP CASTING |
| 296 | SLC20049 | CASTING, CRANKCASE (L), 360 |
| 297 | SLC20050 | CASTING, CRANKCASE (r), 360 |
| 298 | SLC20051 | CASTING, CRANKCASE (L),F.M.P.G |
| 299 | SLC20052 | CASTING, CRANKCASE,(R) F.M.P.G |
| 300 | SLC36005 | CASTING HEAD 360 STANDARD |
| 301 | SLC36101 | CASTING HEAD 360 ANGLE HEAD |
| 302 | SLF10207 | FORGING |
| 303 | SLF17F21188 | ROCKER ARM FORGING |
| 304 | SLF18790 | ROCKER ARM FORGING |
| 305 | SLF36030 | SLF36030 FORGING |
| 306 | SLF36500 | CRANKSHAFT FORGING (360) |
| 307 | SLF36550 | CRANKSHAFT FORGING (360 C/W) |
| 308 | SLF36700 | CONNECTING ROD FORGING |
| 309 | SL-STD-1065 | DOWEL, STEPPED |
| 310 | SL-STD-1066 | DOWEL |
| 311 | SL-STD-1211 | EXPANSION PLUG |
| 312 | SL-STD-1411 | NUT-HEX |
| 313 | SL-STD-1623 | HELICOIL |
| 314 | SL-STD-1872 | HELICOIL |
| 315 | SL-STD-2090 | NUT-HEX |
| 316 | SL-STD-33 | WASHER |
| 317 | SL-STD-514 | DOWEL |
| 318 | SL-STD-557 | DOWEL |
| 319 | SL-STD-700 | ELBOW |
| 320 | SL-STD-8 | WASHER |
| 321 | SL-STD-1066 | DOWEL |
| 322 | SV00001 | TC ENGINE ASSY MASTER DRAWING |
| 323 | SV18800 | CAMSHAFT |
| 324 | SV18800-2 | CAMSHAFT SUB ASSEMBLY |
| 325 | SV18803 | CAMSHAFT ASSEMBLY-400/10:1 CR |
| 326 | SV18803-2 | CAMSHAFT, ROLLER LIFTER,FPG |
| 327 | SV18805 | CAMSHAFT ASSEMBLY-361&400/8.5 |

APPX_0053

DRAWINGS FORWARDED TO TAE

| Item | Part Number | Part Description |
|---|---|---|
| 328 | SV18805-2 | CAMSHAFT, ROLLER LIFTER,FPG |
| 329 | SV40001 | STUD ASSY, CYLINDER, 400 |
| 330 | SV40001 MOD | |
| 331 | SV40006 | VALVE ASSY ANGLE VALVE 400 |
| 332 | SV40006-A1 | STUD ASSY, CYLINDER, 400 |
| 333 | SV40006-A2 | VALVE ASSY ANGLE VALVE 400 |
| 334 | SV40033 | BARREL MACHINING |
| 335 | SV40450 | CONNECTING ROD ANGLED |
| 336 | SV40450-1 | CONNECTING ROD, SUB ASSEMBLY |
| 337 | SV40650 | CRANKSHAFT ASSY CNTR WT,400 |
| 338 | SV40650-A1 | CRANKSHAFT ASSY CNTR WT,400 |
| 339 | SV40850 | CRANKCASE SUB ASSY |
| 340 | SV40851 | BUSHING |
| 341 | SV72800 | ROLLER LIFTER |
| 342 | SV72800-1 | ROLLER LIFTER BODY |
| 343 | SV72800-10 | NEEDLE BEARING |
| 344 | SV72800-11 | PIN |
| 345 | SV72800-2 | SHIM |
| 346 | SV72800-5 | PUSHROD CUP |
| 347 | SV72805-2 | ROLLER LIFTER ASSY |
| 348 | SV78945-1 | COLD AIR INTAKE PIPE ASSY |
| 349 | SV78946-1 | COLD AIR INTAKE PIPE ASSY |
| 350 | SV90842-1 | ROD BOLT 400 SERIES |
| 351 | SV912 | SCREW SHORT FINE ROLLER LIFTER |
| 352 | SV913 | SCREW SHORT COARSE ROLLER LIFT |
| 353 | SVF40033 | BARREL FORGING |
| 354 | SX20049 | CRANKCASE MACHINING |
| 355 | SX20050 | CRANKCASE MACHINING |
| 356 | SX36800 | CRANKCASE ASSY |
| 357 | SX36800-R1 | CRANKCSE ASSY WD/#1 MNT, ROLLER |
| 358 | SX36800-R2 | CRANKCSE ASSY WD/#2 MNT, ROLLER |
| 359 | SX36800-R3 | CRANKCSE ASSY WD/#3 MNT, ROLLER |
| 360 | SX36850 | CRANKCASE ASSY FRONT MOUNT |
| 361 | SX40850 | CRANKCASE ASSY |
| 362 | SX72805-1 | ROLLER LIFTER BODY |

APPX_0054