IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPERIOR AIR PARTS, INC., | § | |
| WEIFANG FREESKY AVIATION, | § | |
| TECHNOLOGY CO., LTD AND | § | |
| SUPERIOR AVIATION BEIJING CO., | § | |
| LTD. | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 3:14-cv-03492 |
| | § | |
| v. | § | |
| | § | |
| BRUNO KÜBLER, IN HIS CAPACITY AS | § | |
| INSOLVENCY ADMINISTRATOR OF | § | |
| THIELERT AIRCRAFT ENGINES | § | |
| GMBH, AND THIELERT AIRCRAFT | § | |
| ENGINES GMBH, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| VS. | § | |
| | § | |
| TECHNIFY MOTORS GMBH, | § | |
| | § | |
| Intervenor. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 1

ARGUMENT AND AUTHORITIES ......................................................................................... 5

  **I.   The Chinese Plaintiffs' Claims are Fraudulently Misjoined........................................ 6**

     A.  The Chinese Plaintiffs' Claim Does Not Comply with Rule 20 .................................... 6

        1.   The Chinese Plaintiffs' Claim Does Not Arise out of the Same Transaction ............. 7

        2.   There are no Common Issues of Law or Fact. ........................................................... 8

     B.  The Misjoinder Here is Egregious. ............................................................................... 9

  **II.  The Chinese Plaintiffs' Claim Was Fraudulently Joined ............................................ 11**

     A.  The Chinese Plaintiffs Cannot Establish a Reasonable Probability of Success............ 12

     B.  Defenses Can and Do Form the Basis for Dismissal Based on Fraudulent Joinder ...... 13

     C.  The Bankruptcy Court's Orders Bar the Chinese Plaintiffs' Claim .............................. 14

     D.  The Chinese Plaintiffs' Claim is Time-Barred ............................................................. 15

  **III.  Bankruptcy Jurisdiction Exists Over the Statutory Fraud Claim ............................ 18**

     A.  "Arising In" Jurisdiction Exists Over the Chinese Plaintiffs' Claim............................ 18

     B.  Judge Houser's Prior Subject Matter Jurisdiction Decision Is Consistent with the Existence of Bankruptcy Jurisdiction Over the Fraud Claim ........................................ 20

     C.  The Well-Pleaded Complaint Doctrine Does Not Apply ............................................. 21

     D.  The Fact That There Is No Longer a Bankruptcy Estate Is Irrelevant........................... 22

     E.  The Decision Whether to Abstain Should Be Left to the Bankruptcy Court................. 23

  **V.  The Removal Was Procedurally Proper ...................................................................... 24**

  **CONCLUSION ........................................................................................................................ 25**

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Boone v. Citigroup, Inc.,*
  416 F.3d 382, 392 (5th Cir. 2005) ............................................... 14

*Burleson State Bank v. Plunkett,*
  27 S.W.3d 605 (Tex. App.—Waco 2000, pet. denied) ............................. 7

*Cantrell v. Wyeth,*
  No. Civ. A. 303CV1659G, 2003 WL 22251079 (N.D. Tex. Sept. 19, 2003).......... 14

*Citizens Bank & Trust Co. v. Case (In re Case),*
  937 F.2d 1014 (5th Cir. 1991) ............................................... 22

*Coastal Bank SSB v. Chase Bank of Texas, N.A.,*
  135 S.W.3d 840 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ................. 15

*Crockett v. R.J. Reynolds Tobacco Co.,*
  436 F.3d 529 (5th Cir. 2006) ................................................. 6

*Davis v. Cassidy,*
  No. 11-1563, 2011 WL 6180054 (E.D. La. Dec. 13, 2011) .................... 6, 11

*Doe v. Kerwood,*
  969 F.2d 165 (5th Cir. 1992) ................................................ 25

*Eberspaecher North Am., Inc. v. Van-Rob, Inc.,*
  No. 06-15752, 2007 WL 2332470 (E.D. Mich. Aug. 15 2007)...................... 11

*Forest Oil Corp. v. McAllen,*
  268 S.W.3d 51 (Tex. 2008)................................................... 15

*Foster Poultry Farms, Inc. v. IBM Corp.,*
  No. CIV-F-06-0680 AWI SMS, 2006 WL 2769944 (E.D. Cal., Aug. 1, 2006)......... 22

*GoDaddy.com, LLC v. Toups,*
  429 S.W.3d 752 (Tex.App.—Beaumont 2014, pet. filed) ........................ 21

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*
  313 F.3d 305 (5th Cir. 2002) ................................................ 11

*Griggs v. State Farm Lloyds,*
  181 F.3d 694 (5th Cir. 1999) ............................................ 11, 16

*Guillot v. Credit Suisse Boston, LLC,*
  No. Civ. A. 03-0797, 2005 WL 2037372 (E.D. La. July 21, 2005)............... 11

*Hood v. Tinta,*
   247 Fed. Appx. 531 (5th Cir. 2007)........................................................................ 14

*In re Benjamin Moore & Co.,*
   318 F.3d 626 (5th Cir. 2002) .................................................................................. 6

*In re Brook Mays Music Co.,*
   363 B.R. 801 (Bankr. N.D. Tex. 2007)............................................................ 21, 22

*In re Placid Oil Co.,*
   932 F.2d 394 (5th Cir. 1991) ................................................................................ 16

*In re Superior Air Parts, Inc.,*
   516 B.R. 85 (Bankr. N.D. Tex. 2014) ................................................................... 20

*In re: Silica Prods. Liab. Litig.,*
   398 F. Supp. 2d 563 (S.D. Tex. 2005) .................................................................... 6

*McIntyre Land Co. v. McIntyre Bldg Co. (In re McIntyre Bldg Co., Inc.),*
   Case No. 10-30558-WRS, 2011 WL 1434691 (Bankr. M.D. Ala., April 14, 2011) ............... 21

*Oldham v. Nationwide Ins. Co. of Am.,*
   Civil Action No. 3:14–CV–575–B, 2014 WL 3855238 (N.D. Tex. Aug. 5, 2014)................. 12

*Oxford v. Williams Cos., Inc.,*
   137 F. Supp. 2d 756 (E.D. Tex. 2001) .................................................................. 11

*Pattison v. Hwy. Ins. Underwriters, et al.,*
   278 S.W.2d 207 (Tex. App—Galveston 1955, writ ref'd n.r.e.) ................................ 9

*Playboy Enters. Inc. v. Editorial Caballero, S.A. de C.V.,*
   202 S.W.3d 250 (Tex. App.—Corpus Christi 2006, pet. denied) ............................. 15

*Pride Transp. Inc. v. Harbin,*
   No. 4:10-CV-458-Y, 2010 WL 4314920 (N.D. Tex. Oct. 26, 2010) ................... 6, 10, 11

*Rivera v. Countrywide Home Loans, Inc.,*
   262 S.W.3d 834 (Tex. App.—Dallas 2008, no pet.)............................................. 15

*Rivet v. Regions Bank of Louisiana,*
   522 U.S. 470 (1998)............................................................................................. 21

*Ross v. Citifinancial, Inc.,*
   344 F.3d 458 (5th Cir. 2003) ................................................................................ 14

*Schlumberger Tech. Corp. v. Swanson,*
   959 S.W.2d 171 (Tex. 1997)................................................................................. 15

*Shakeri v. ADT Security Services, Inc.*,
  C.A. No. 3-13-CV-2852-D, 2013 WL 6498268 (N.D. Tex. Dec. 11, 2013) .......................... 13

*Smallwood v. Ill. Cen. R.R. Co.*,
  385 F.3d 568, 573 (5th Cir. 2004) ............................................................................... 5, 12

*Southmark Corp. v. Coopers & Lybrand (In re Southmark)*,
  163 F.3d 925 (5th Cir. 1999) ........................................................................................ 19

*State of Arkansas Teacher Retirement System v. Merrill Lynch & Co.*
  *(In re LJM2 Co-Investment, L.P.)*,
  319 B.R. 495 (Bankr. N.D. Tex. 2005) ......................................................................... 21

*Tapscott v. MS Dealer Serv. Corp.*,
  77 F.3d 1353 (11th Cir. 1996) ........................................................................................ 6

*Tony Gullo Motors I, L.P. v. Chapa*,
  212 S.W.3d 299 (Tex. 2006) ........................................................................................ 13

*Westcliff Co. v. Wall*,
  267 S.W.2d 544 (Tex. 1954) ........................................................................................ 12

*Willingham v. State Farm Ins. Co.*,
  No. 2:09-CV-59-SA-SAA, 2009 WL 2767679 (N.D. Miss. Aug. 27, 2009) ..................... 9, 11

*Winkins v. Frank Winther Investments, Inc.*,
  881 S.W.2d 557 (Tex. App.—Houston [1st Dist.] 1994, no writ) ........................................ 12

*Winstar Holdings, LLC v. Blackstone Group L.P.*,
  No. 07 Civ. 4634(GEL), 2007 WL 4323003 (S.D.N.Y., Dec. 10, 2007) ..................... 19, 20, 23

*Wood v. Wood (In re Wood)*,
  825 F.2d 90, 97 (5th Cir. 1987) .................................................................................... 19

*Wooley v. Schaffer*,
  ___ S.W.3d ___, No. 14-13-00385-CV, 2014 WL 3955111
  (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, no pet. history) ........................................ 12

*York Hannover Holding A.G. v. American Arbitration Association*,
  794 F.Supp. 118 (S.D.N.Y. 1992) ............................................................................ 24, 25

## **STATUTES**

28 U.S.C. § 1334 .......................................................................................................... 24

28 U.S.C. § 1441 .......................................................................................................... 24

28 U.S.C. § 1446 .......................................................................................................... 24

28 U.S.C. § 1452 ............................................................................................. 24

**<u>OTHER</u>**

14 Federal Practice and Procedure 3641 (3d ed. 1998) ................................. 5

14A Federal Practice and Procedure section 3731 (1985) ........................... 24

Dr. Bruno Kübler, in his capacity as insolvency administrator (the "Insolvency Administrator") of Thielert Aircraft Engines GmbH ("TAE"), and TAE[1] hereby respond to the Motion to Remand or, in the Alternative, to Abstain, brought by Plaintiffs Superior Air Parts, Inc. ("Superior" or "Plaintiff"), Weifang Freesky Aviation, Technology Co., Ltd and Superior Aviation Beijing Co., Ltd. (the "Chinese Plaintiffs") (collectively, the "Plaintiffs").

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation as currently constituted involves three separate and distinct transactions:

- **The Property Dispute** – Superior's claims against Defendants each center around the question of whether Superior or Defendants own certain property (the "Property at Issue") that TAE developed. Resolution of Superior's claims requires the court to assess the Superior/TAE supplier agreement and the business dealings between Superior and TAE from 2001 through 2013 principally to determine whether Defendants are in breach of the supplier agreement with Superior and whether the Property at Issue constitutes or contains Superior's trade secrets;

- **The Superior Stock Purchase Dispute** – The claim against Defendants by the Chinese Plaintiffs based on an alleged (but inadequately pled) misrepresentation by Defendants in connection with the Chinese Plaintiffs' acquisition of Superior's stock as part of Superior's bankruptcy case in 2009; and

- **The TAE Asset Purchase Dispute** – The claim against Defendants (who are both German citizens) by Intervenor Technify, a German entity, related to alleged damages under a 2013 asset purchase agreement governed by German law and subject to a mandatory German forum selection clause.[2]

The following table provides a general timeline of the relevant events:

| DATE | DESCRIPTION |
|------|-------------|
| **2001** | TAE (a German entity) and Superior enter into Supplier Agreement. Superior will issue purchase orders for certain parts to TAE, which will manufacture the parts. These transactions give rise to the **Property Dispute**. |
| **2008** | Superior files for Chapter 11 in Bankruptcy Court in Dallas ("Bankruptcy Court"). <br><br> TAE enters insolvency proceedings in Germany. Dr. Kübler becomes |

---

[1] As set forth in Defendants' answer in state court, TAE lacks the capacity to be sued. Under German insolvency law, because TAE is currently in insolvency proceedings in Germany, the right to manage and transfer the insolvency estate is vested in the Insolvency Administrator.
[2] Defendants intend to file a motion to dismiss the Intervenor's claims based on *forum non conveniens*.

| | insolvency administrator (similar to bankruptcy trustee) for TAE. |
|---|---|
| **2009** | Chinese Plaintiffs purchase Superior stock pursuant to a bidding procedures order in the Bankruptcy Court and the order confirming Superior's chapter 11 reorganization plan ("Confirmation Order").  This is the subject of the **Superior Stock Purchase Dispute**. |
| **2009 through April 2013** | Superior never requests that TAE or Dr. Kübler return any property even though Superior later contends that TAE has Superior's information related to hundreds of parts that it was no longer producing for Superior. |
| **April 2013** | Superior for first time requests "return" of certain property, basing its request on the Confirmation Order. |
| **July 11, 2013** | After some communications between the parties, Superior files a show cause motion in the Bankruptcy Court asking the Bankruptcy Court to hold Defendants in contempt of Court for failing to return Superior's property pursuant to the Confirmation Order. <br><br> After the Bankruptcy Court dismisses the contempt motion, Superior re-files its request as a Motion to Enforce the confirmation order. |
| **July 22, 2013** | Dr. Kübler sells the business of TAE to Technify, a German entity, pursuant to an asset purchase agreement that is governed by German law.  This is the transaction that gives rise to the **TAE Asset Purchase Dispute**. <br><br> Because of Superior's claims regarding the Property at Issue, Dr. Kübler excludes from the sale all property related to TAE's business with Superior (this is what has been referred to herein as the "Property at Issue").  Dr. Kübler has committed, both in the Bankruptcy Court and now this Court, to maintain possession of the Property at Issue and not to transfer it until a court resolves the dispute with Superior. <br><br> Technify and Kübler agree that Kübler will not transfer the Property at Issue to Technify until a final decision by a court or an agreement permits Kübler to do so.  Under the parties' Closing Protocol, Technify retains a potential damages claim "in case the [Property at Issue] cannot be transferred". |
| **August 20, 2014** | Following more than a year of litigation between Superior and Dr. Kübler (but with no involvement by the Chinese Plaintiffs or Technify), the Bankruptcy Court enters its Memorandum Opinion and Order Denying Motion to Enforce for Lack of Subject Matter Jurisdiction. |
| **August 21, 2014** | Superior and the Chinese Plaintiffs file this litigation in state court.  In eight counts, Superior seeks essentially the same relief it sought in Bankruptcy Court. <br><br> The Chinese Plaintiffs assert a statutory fraud claim alleging that they relied on unspecified misrepresentations by Defendants in connection with their purchase of Superior's stock in 2009 pursuant to the Bankruptcy Court's order confirming Superior's bankruptcy plan. |
| **September 19,** | Technify intervenes in the state-court action.  It seeks a declaratory |

| 2014 | judgment regarding the issues between Superior and Defendants.  It also asserts what it describes as an "alternative" damages claim that would get triggered only "in the event of a legal determination that Kübler must transfer the Property At Issue to Superior…"  Technify's damages claim is based on a potential alleged breach of its agreement with Defendants, which agreement is governed by German law and contains a mandatory forum selection clause providing for exclusive venue in German court. |

**The State Court Action**

In its Petition, Superior asserts eight counts against Defendants seeking essentially the same relief that was the subject of prior litigation between Superior and Defendants in the U.S. Bankruptcy Court for the Northern District of Texas.  *See In re Superior Air Parts, Inc.*, Case No. 08-36705-BJH-11.[3]  The dispute – both in the Bankruptcy Court and now before this Court – centers on business dealings between Superior and TAE over a number of years beginning in 2001 when TAE and Superior entered into a Supplier Agreement (the "2001 Supplier Agreement").  The crux of the dispute is focused on whether TAE owns or has the right to use certain property, specifically documents, data and information (collectively, the "Property at Issue"), that TAE itself generated at great effort and expense to facilitate its manufacture of aircraft engine parts for sale to Superior.

In the Bankruptcy Court, Superior sought to enforce the Bankruptcy Court's 2009 order confirming Superior's reorganization plan that Superior contended required Defendants to return to Superior certain information that Superior provided to TAE during the course of the parties' business relationship.  As the proceedings in the Bankruptcy Court evolved, Superior essentially sought the same injunctive relief from the Bankruptcy Court that it now seeks in this litigation – to prevent Defendants from using or transferring the information that TAE itself developed.  Superior and Defendants litigated in the Bankruptcy Court for over a year, following which

---

[3] The pleadings and filings in the Superior bankruptcy (*In re Superior Air Parts, Inc.*, Case No. 08-36705,United States Bankruptcy Ct, N.D. Tex.) are a matter of public record and accessible via Pacer.

Chief Judge Houser dismissed Superior's motion for lack of subject matter jurisdiction. The next day, Plaintiffs brought the instant suit.

Defendants currently have possession of the Property at Issue. Because of the issues raised by Superior (beginning with correspondence in April 2013), the Insolvency Administrator has segregated that property and withheld it from the assets transferred to Technify pursuant to the Closing Protocol between Technify and Defendants as discussed below. Defendants will not use or transfer these segregated assets to any other party, including the Intervenor, until such time as the dispute between Superior and Defendants is resolved.

**The Chinese Plaintiffs**

The Chinese Plaintiffs first became involved in 2009 after Superior filed for bankruptcy and Plaintiff FreeSky became the stalking horse bidder for Superior's stock.  The Chinese Plaintiffs acquired Superior's stock pursuant to a bid procedure order from and under the supervision of the Bankruptcy Court.  The Chinese Plaintiffs assert a single statutory fraud claim against Defendants under Section 27.01 of the Texas Business and Commerce Code.

**The Intervenor**

Technify acquired the assets of TAE's business on July 22, 2013. The transaction was pursuant to a Business Purchase and Transfer Agreement entered into in Germany and expressly governed by German law and that includes also a provision providing German courts with exclusive jurisdiction for any disputes. Because Superior sought the return of documents and information before the Intervenor and the Insolvency Administrator closed the sale, the Insolvency Administrator and Technify negotiated an agreement regarding what would happen if some or all of the Property at Issue could not be transferred to Intervenor.  In the Closing

4

Protocol[4] to the Business Purchase and Transfer Agreement the parties expressly recognized the dispute between Superior and Defendants:

> Superior Air Parts, Inc., a US corporation … has [both in correspondence and the Bankruptcy Court proceeding] claimed the return of certain tangible and intangible assets that are allegedly owned by Superior (the "Superior Claims").  With regard to the making of the Superior Claims, Sellers have completely separated within the business of TAE all tangible and intangible assets … (together the "Superior Part") and will not transfer the Superior Part to the Buyer, until it has been legally finally and unappealable [sic] decided or agreed on, if and to what extent the Sellers shall be entitled to transfer the Superior Part to the Buyer …

*See* APPX_006-07.  The parties also negotiated a damages limitation regarding the disputed assets in the Closing Protocol that applies "in case the Superior Part cannot be transferred…" Other than the amount of any damages to which Technify may be entitled if Defendants are unable to transfer the Property at Issue, there is no dispute between Defendants and Technify.

## ARGUMENT AND AUTHORITIES

While Plaintiffs argue that removal should be narrowly construed and doubts resolved in favor of remand, the Fifth Circuit (in a case relied on by Plaintiffs) has recognized the importance of vigilantly protecting federal jurisdiction, particularly where the facts indicate that a party is actively attempting to avoid otherwise proper federal jurisdiction.[5]  Federal jurisdiction clearly exists here as the only real dispute – indeed, a dispute that has been in litigation for some time in another forum – is between diverse parties, Superior and Defendants.  As discussed below, the Chinese Plaintiffs and Intervenor do not eliminate the Court's jurisdiction.

---

[4] A certified translation of the Closing Protocol is attached at APPX_001-APPX_023 in the Appendix filed herewith. The uncertified English translation is contained in the version submitted by Technify with its response to Defendants' motion to dismiss. [DI 20]

[5] *See Smallwood v. Ill. Cen. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004), citing 14 Federal Practice and Procedure 3641 at 173 (3d ed. 1998) ("The Federal court should not sanction devices intended to prevent the removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal Court as to permit the state courts in proper cases to retain their own jurisdiction.").

I.      **The Chinese Plaintiffs' Claims are Fraudulently Misjoined**

Even a cursory review of the Petition makes it clear that the Chinese Plaintiffs' claim does not belong in this case:  the claim of two Chinese companies against a German company and its Insolvency Administrator regarding a 2009 stock purchase has no real connection to the claims of a Dallas company (Superior) regarding whether Defendants own the rights to the Property at Issue.

As an initial matter, any argument that this Court should not follow the doctrine of fraudulent misjoinder first set out in *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir. 1996) must be rejected.  Both the Fifth Circuit and courts within this circuit have repeatedly cited *Tapscott* with approval and/or applied a *Tapscott* analysis.[6]  Even cases relied on by Plaintiffs acknowledge application of *Tapscott.*[7]  Thus, the Court can and should find that (1) the Chinese Plaintiffs' claim is not properly joined with Superior's claims under FRCP 20; and (2) such joinder was done solely to defeat diversity jurisdiction and is egregious.

A.      **The Chinese Plaintiffs' Claim Does Not Comply with Rule 20**

The parties are generally in agreement as to the applicable standard for joinder:  the Chinese Plaintiffs' claims must (1) arise out of the same transaction, occurrence or series of transactions or occurrences as Superior's claims; and (2) involve a common question of law or

---

[6] *See, e.g., Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529 (5th Cir. 2006) (setting out joinder requirements of Fed. R. Civ. P. 20 and, with a citation to *Tapscott,* noting that, "[i]f these requirements are not met, joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants."); *see also In re: Silica Prods. Liab. Litig.,* 398 F. Supp. 2d 563, 650 (S.D. Tex. 2005) citing *In re Benjamin Moore & Co.,* 318 F.3d 626, 630–31 (5th Cir. 2002) (finding plaintiffs had been fraudulently misjoined and noting that while the Fifth Circuit has not explicitly adopted *Tapscott,* "it has spoken in dicta of 'the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction.'…and the Court will assume for the sake of argument that the Fifth Circuit would explicitly adopt the *Tapscott* principle in an appropriate case."); *see also Davis v. Cassidy,* No. 11-1563, 2011 WL 6180054 *3-6 (E.D. La. Dec. 13, 2011) (discussing Fifth Circuit's "apparent endorsement" of "the *Tapscott* principle" and denying motion to remand based on fraudulent misjoinder).
[7] *See Pride Transp. Inc. v. Harbin,* No. 4:10-CV-458-Y, 2010 WL 4314920 at *2 (N.D. Tex. Oct. 26, 2010) ("the Fifth Circuit has not expressly adopted the *Tapscott* theory for removal jurisdiction, but has approved of the *Tapscott* analysis in dicta and has relied upon *Tapscott's* reasoning in allowing removal.") (emphasis added).

fact.  *See, e.g.,* Brief in Support of Superior's Motion ("Br.") at 5-6.  Importantly, both requirements must be met for joinder to be proper.  Here, neither requirement is met.

### 1.    The Chinese Plaintiffs' Claim Does Not Arise out of the Same Transaction

The Chinese Plaintiffs' claim does not arise out of the same transaction or occurrence as Superior's claims.  *See* Notice of Removal at 9-11.[8]  Any contractual, statutory or common-law basis for Superior's claim that Defendants are prohibited from using or transferring information and/or documents TAE-created during the course of its supplier relationship with Superior must necessarily be based on the Supplier Agreement, purchase orders or legal principles such as trade secrets law that Superior contends apply to the parties' relationship.

The Chinese Plaintiffs were not a party to the 2001 Supplier Agreement, any of the purchase orders, or in any way involved in the dealings between Superior and TAE from 2001 to 2013.  Rather, their purported claim arises solely out of the "transaction in September 2009 whereby FreeSky purchased Superior's stock."  Petition at 20.  The Chinese Plaintiffs' fraud claim, therefore, must be based on alleged representations made by Defendants to the Chinese Plaintiffs related specifically to the 2009 stock purchase.  Any representations made in the Supplier Agreement, purchase orders or to Superior cannot form the basis of the Chinese Plaintiffs' claim for fraud related to the 2009 stock purchase.[9]  Because the Chinese Plaintiffs' claim (a statutory fraud claim arising from a 2009 stock purchase) does not arise out of the same transaction as the claims of Superior (a 2001 Supplier Agreement and subsequent purchase orders), the Chinese Plaintiffs have failed to meet the first prong of Rule 20.

---

[8] Defendants respectfully refer the Court to their Notice of Removal for additional discussion on this issue.
[9] *See Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied) ("Section 27.01 only applies to misrepresentations of material fact made to induce another to enter a contract for the sale of land or stock.") (emphasis added).

Plaintiffs' sole argument on this point is the strange assertion that the Chinese Plaintiffs' claim is "logically related to Superior's claims against the Defendants in that they serve as an alternate theory of relief" if Defendants are not liable to Superior.  Br. at 6. Plaintiffs do not (and cannot) cite a single authority that supports their argument that a different party's assertion of an "alternate theory of relief" somehow satisfies the "same transaction" test of Rule 20.  Nonsensical on its face, Plaintiffs ignore altogether the fact that Superior's claims concern contractual and property rights while in contrast the Chinese Plaintiffs' claims concern a stock purchase, which are obviously entirely different.

### 2.   There are no Common Issues of Law or Fact.

While the lack of a common transaction is sufficient to render the joinder improper, Plaintiffs have also failed to identify a single common question of law or fact.  Indeed, Plaintiffs do not even attempt to identify a common question of law and thus appear to concede that there are none.  Nor are there any common questions of fact.  The facts underlying Superior's claim relate to the terms of the Supplier Agreement, purchase orders and the information in the possession of the Insolvency Administrator that Superior seeks to enjoin Defendants from using. The facts underlying the Chinese Plaintiffs' claims will relate to what representations, if any, were made by Defendants in connection with the 2009 stock purchase and whether or not the Chinese Plaintiffs reasonably relied on any such alleged representations.

In an effort to manufacture a common question of fact, Plaintiffs claim that "the facts regarding Superior's confidential supplier relationship with TAE, which are part of Superior's claims, are also important to the Investor claims."  Br. at 6.  But simply because there may be some minimal overlap of relevant facts does not of course mean there are *common questions* of fact.  As Defendants pointed out in their Notice of Removal, the questions of fact in the Chinese Plaintiffs' stock fraud claim – e.g., what misrepresentations were made to the Chinese Plaintiffs

to induce them to buy the stock – are not common to those in Superior's underlying claims regarding the property at issue – e.g., who owns or has the rights to the Property at Issue.

The sole case relied on by Plaintiffs to support their claim that there are common issues of law or fact is *Pattison v. Hwy. Ins. Underwriters, et al.,* 278 S.W.2d 207  (Tex. App—Galveston 1955, writ ref'd n.r.e.).  Plaintiffs mischaracterize *Pattison.*  In *Pattison*, the plaintiffs had settled their claims arising out of a vehicle accident but later discovered that the insurance company for the other driver had misrepresented the policy limits, inducing the plaintiffs to settle for less than they desired.  *Id.* at 209.  When the fraud was discovered, the plaintiffs sued the insurer and the owner and driver of the truck involved in the accident.  The plaintiffs sought to rescind the original settlement agreement on the basis of the insurance company's alleged fraud and also sued the insurance company for fraud.  The *Pattison* court found that there was a common issue of fact regarding the claims because determining whether a fraud/deceit occurred in connection with the settlement was a necessary element in adjudicating both the claim to rescind (and proceed on the underlying collision claims) and the fraud claim against the insurance company.  *Id.*  The *Pattison* court's decision is unremarkable and did not involve "similar joinder issues" as this case.

### B.      The Misjoinder Here is Egregious.

Even a cursory review of the circumstances establishes that the joinder of the Chinese Plaintiffs is egregious.[10]  In the Factual Background section of Plaintiffs' Petition—which is nearly six full pages long—there is no mention of the Stock Purchase Agreement that forms the basis of the Chinese Plaintiffs' claim.  Instead, the entire Factual Background—like the bulk of

---

[10] *See, e.g., Willingham v. State Farm Ins. Co.,* No. 2:09-CV-59-SA-SAA, 2009 WL 2767679 at * 4 (N.D. Miss. Aug. 27, 2009) (finding "misjoinder is sufficiently egregious to constitute fraudulent misjoinder" where "[w]hile both claims arguably 'arose' from the fire loss of Plaintiffs' house, they involve two separate contracts and implicate distinctly different factual and legal issues.").

the Petition as a whole—relates solely to the relationship between Superior and TAE. Rather than being an essential part of the background and story of this dispute, the claim arising out of the 2009 stock purchase is an entirely distinct claim that was tacked on to defeat diversity.

The procedural history of this dispute further demonstrates that the Chinese Plaintiffs' claim was joined solely to defeat diversity jurisdiction. As discussed above, Superior and TAE are not new adversaries—this very dispute was recently litigated in Bankruptcy Court for over a year. The Chinese Plaintiffs made no effort to join that dispute or to otherwise institute litigation against Defendants. Their claim now is obviously a transparent attempt to destroy diversity.

Finally, as discussed in detail in the fraudulent joinder section below, the Chinese Plaintiffs' claim is improper and deficient on a number of fronts. The statutory fraud claim is untimely, directly defeated by orders from the Bankruptcy Court, and fails on a variety of other grounds as a matter of law. These fatal problems with the claim demonstrate egregiousness.

In claiming that the joinder of the Chinese Plaintiffs' claims is not egregious, Plaintiffs claim that this case is like *Pride*, 2010 WL 4314920. Plaintiffs' are incorrect. In *Pride*, the plaintiff sued its former lawyer as well two insurance companies to recover monies it had paid to settle a claim involving a vehicle accident. In remanding the case and rejecting the defendantss fraudulent misjoinder arguments, the *Pride* Court concluded that the plaintiff's claims against the defendants all arose out of the same transaction – *i.e.*, the manner in which the defendants handled the underlying settlement. The court also relied on the fact that the plaintiff was seeking the same relief from all defendants. Finally, the court found persuasive the fact that one of the defendants had informed the court that they "intend to request consolidation of Pride's claims for purposes of conducting joint discovery," which led the court to note that "if claims share enough

factual elements to merit joint discovery," it follows that they were not fraudulently misjoined. *Id.*

Ultimately, *Pride* in no way supports the Chinese Plaintiffs' position here. The Chinese Plaintiffs' claim does not arise out of the same transaction as Superior's claims. Nor are Superior and the Chinese Plaintiffs seeking the same relief. Finally, Defendants have not (and will not) seek to consolidate Superior's claims with the Chinese Plaintiffs' claim for purposes of discovery because the discovery regarding such claims will be vastly different.

Ultimately, joinder of the Chinese Plaintiffs' claim—which involves different plaintiffs, arises out of a separate transaction, and involves entirely different legal and factual issues—was done solely to defeat diversity jurisdiction and is egregious.[11]

## II.    The Chinese Plaintiffs' Claim Was Fraudulently Joined

The citizenship of the Chinese Plaintiffs should also not be considered under a traditional fraudulent joinder analysis.[12] A joinder is improper where "there is absolutely no possibility that the plaintiff will be able to establish a cause of action…"[13] "When a court addresses fraudulent joinder and determines whether there is any possibility that a plaintiff will be able to establish a cause of action against the in-state defendant, it looks for a reasonable possibility – not merely a theoretical one – that the plaintiff can establish a claim."[14] The same standard applies where the Plaintiff – rather than the defendant – is fraudulently joined.[15] In this case, there is no reasonable

---

[11] *See, e.g., Willingham*, 2009 WL 2767679 at * 4 (finding egregious misjoinder where claims related to separate contract); *see also Davis*, 2011 WL 6180054 at *3-6 (finding egregious misjoinder).

[12] *See, e.g., Guillot v. Credit Suisse Boston, LLC*, No. Civ. A. 03-0797, 2005 WL 2037372 at *5 (E.D. La. July 21, 2005) (denying motion to remand and noting that "[t]he doctrine of fraudulent joinder is applicable both to plaintiffs and defendants").

[13] *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

[14] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002); *see also Oxford v. Williams Cos., Inc.*, 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001) (a plaintiff "cannot avoid finding of improper joinder by asserting a mere hypothetical possibility of a cause of action against non-diverse defendants").

[15] *Guillot*, 2005 WL 2037372 at *5 (finding plaintiff fraudulently joined because there was no possibility that the non-diverse plaintiff could recover); *Eberspaecher North Am., Inc. v. Van-Rob, Inc.*, No. 06-15752, 2007 WL

possibility that the Chinese Plaintiffs will be able to establish a cause of action against Defendants.

In examining improper joinder, the Court first conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law …."[16] In conducting this analysis, there is some division in the courts regarding whether to apply the federal or state pleading standard to determine whether a plaintiff can state a claim for relief.[17] Here, determining the appropriate standard is not necessary because the Chinese Plaintiffs are improperly joined under either standard. Indeed, with the recently enacted Texas Rule of Civil Procedure 91a (requiring "dismissal of causes of action that have no basis in law or fact"), applying either state or federal pleading standards leads to the same result.[18]

## A.     The Chinese Plaintiffs Cannot Establish a Reasonable Probability of Success

The Chinese Plaintiffs cannot state a claim. Indeed, Plaintiffs' Petition and brief fail to identify a single alleged misrepresentation *made to the Chinese Plaintiffs*. Instead, while the Petition is exceptionally sparse and vague, their claim appears to be based on alleged unarticulated statements *made to Superior* by unspecified persons. Statements made to a third party (including any statements made to Superior) cannot support a statutory fraud claim as a

---

2332470 at *4 (E.D. Mich. Aug. 15 2007) (noting that "a defendant may relay upon the fraudulent joinder doctrine to challenge joinder of nondiverse plaintiffs" and concluding that plaintiff was fraudulently joined).

[16] *Smallwood*, 285 F.3d at 573.

[17] As Judge Boyle recently recognized, "[w]ith regards to the Rule 12(b)(6)-type analysis in an improper joinder case, the law is unsettled regarding whether to apply state or federal pleading standards to the Complaint." *Oldham v. Nationwide Ins. Co. of Am.*, Civil Action No. 3:14–CV–575–B, 2014 WL 3855238, *4 (N.D. Tex. Aug. 5, 2014).

[18] With the enactment of Rule 91a, Texas now has a motion to dismiss mechanism similar to Federal Rule 12(b)(6). Because Rule 91(a) was only recently enacted, guidance from Texas courts on its application is somewhat limited. However, the appellate courts that have addressed the application of the rule have concluded that it is akin to Rule 12(b)(6). Specifically, in *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754-55 (Tex.App.—Beaumont 2014, pet. filed), the Beaumont Court of Appeals concluded that almost all federal 12(b)(6) jurisprudence applies to the new Texas rule. Similarly, the Houston Court of Appeals for the 14th District recently found "case law interpreting Rule 12(b)(6) instructive" *Wooley v. Schaffer*, ___ S.W.3d ___, No. 14-13-00385-CV, 2014 WL 3955111, *3 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, no pet. history).

matter of law.[19]  Moreover, because the Chinese Defendants have not identified a single alleged misrepresentation made by Defendants *to the Chinese Defendants*, they lack standing to assert a fraud claim under Texas Business and Commerce Code § 27.01.[20]

Plaintiffs claim that their Petition alleges that Defendants made promises directly to the Chinese Plaintiffs.  But a careful review of the Petition reveals more of the same: creatively worded, conclusory statements that never state the factual basis of the claim and certainly do not articulate statements made to the Chinese Defendants.  Indeed, the Chinese Plaintiffs fail to articulate any representations even allegedly made to Superior beyond statements contained in the TAE/Superior agreements.  In any event, even if such statements were alleged, the Chinese Defendants' claim still fails.  Their entire claim is premised on allegations that the Defendants violated contractual provisions in the 2001 Supplier Agreement and subsequent purchase orders regarding the return of information addressed by those alleged contracts.  But it is settled Texas law that a mere breach of contract is not fraud and cannot even be used as evidence of fraud.[21]  Thus, the Chinese Plaintiffs' claim, which is based solely on Defendants' alleged failure to perform contractual obligations owed to Superior, necessarily fails as a matter of law.[22]

## B.    Defenses Can and Do Form the Basis for Dismissal Based on Fraudulent Joinder

Plaintiffs contend that defenses to their claims should be ignored because they are "affirmative defenses, which a plaintiff need not anticipate and plead around."  Br. at 11.

---

[19] *See, e.g., Westcliff Co. v. Wall*, 267 S.W.2d 544, 546 (Tex. 1954); *Winkins v. Frank Winther Investments, Inc.*, 881 S.W.2d 557 (Tex. App.—Houston [1st Dist.] 1994, no writ).

[20] *Winkins*, 881 S.W.2d 557 (unpublished text available in Westlaw) ("A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representation and to allege its falsity as a wrong to him under a claim of fraud").

[21] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

[22] *See Shakeri v. ADT Security Serv., Inc.*, C.A. No. 3-13-CV-2852-D, 2013 WL 6498268, *3, n. 8 (N.D. Tex. Dec. 11, 2013) (plaintiffs cannot prevail on DTPA or fraud claims based on Defendants' failure to perform the contracts).

Plaintiffs' contention is incorrect and ignores extensive case law in this circuit making clear that defenses routinely form the basis for a finding of fraudulent joinder.[23]

### C.      The Bankruptcy Court's Orders Bar the Chinese Plaintiffs' Claim

It is undisputed that the Chinese Plaintiffs' stock acquisition was made under and governed by the Bankruptcy Court's bid procedures order.  That order provided the terms under which any potential buyer would acquire Superior's stock in Superior's bankruptcy case.  Indeed, the Chinese Plaintiffs, who are identified as the "Brantly Group" in the order, were the stalking horse bidder for the Superior stock under the order.

Plaintiffs contend that the bid procedures order does not bar their claims because the language of that order only protects Superior, its agents and the estate.  Plaintiffs cite the paragraph containing the "As-is, where-is" provision and, in particular, the first sentence.  That sentence is indeed limited to representations made by the debtor, its agents or estate.  But, while Plaintiffs accuse Defendants of ignoring that sentence, Plaintiffs selectively ignore the operative language, which is in no way limited as Plaintiffs suggest.  Stated differently, while the first sentence of Section M, which is entitled "As-Is, Where-As [sic] Sale", provides that any sale is made without representations or warranties "by the Debtor, its agents, or estate", the next sentence (which Plaintiffs ignore) is broader.  It states, in unambiguous language, that each qualified bidder "shall be deemed to acknowledge and represent that it…has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Superior

---

[23] *See, e.g., Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (affirming district court's finding of fraudulent joinder based on statute of limitations); *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir. 2003) (affirming denial of motion to remand based on fraudulent joinder due to, among other things, statute of limitations); *Cantrell v. Wyeth*, No. Civ. A. 303CV1659G, 2003 WL 22251079, *4 (N.D. Tex. Sept. 19, 2003) ("[T]he court finds that Cantrell's claims against Kwong are barred by the statute of limitations…. Consequently, the court concludes that Kwong has been fraudulently joined, as there is no reasonable possibility that Cantrell will be able to establish a cause of action against her."); *Hood v. Tinta,* 247 Fed. Appx. 531, 533 (5th Cir. 2007) (affirming district court's denial of a motion to remand because a release signed by the plaintiff barred her claims, which fulfilled the test for fraudulent joinder).

Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever…" [24] The Chinese Plaintiffs' claim here flies in the face of this representation to the Bankruptcy Court and other parties.[25] The bid procedures order plainly bars the Chinese Plaintiffs' claim.

In addition, there can be no question that in conjunction with the TAE settlement approved pursuant to Superior's Plan of Reorganization (the "Plan"), TAE obtained a complete release of all claims against it relating to TAE's prior dealings with Superior. The Chinese Plaintiffs argue that the operative release language in Article IV of the Plan is inconsistent with the broader language in Article I of the Plan summarizing the release and that the release therefore only applies to claims of the debtor or estate. While the operative release language in the Plan may not technically apply on its face to the Chinese Plaintiffs' claim, the language of the Bankruptcy Court's orders, taken together, establish the invalidity of the Chinese Plaintiffs' claim.

### D.     The Chinese Plaintiffs' Claim is Time-Barred

Plaintiffs do not dispute that (1) the applicable statute of limitations for the Chinese Plaintiffs' claim is four years and (2) that more than four years has elapsed since any cause of action accrued. Instead, while it is somewhat unclear, Plaintiffs apparently seek to rely on either the discovery rule or a fraudulent concealment argument to avoid the time bar. But to rely on either of these theories, Plaintiffs were required to plead them.[26] Despite having ample

---

[24] This provision protects all parties in interest that may have discussions with particular bidders and helps ensure that material promises made to a bidder (if the bidder hopes to rely on it) are disclosed to put all bidders on equal footing.

[25] *See, e.g., Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 179 (Tex. 1997)*; Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 60-61 (Tex. 2008); *Playboy Enters. Inc. v. Editorial Caballero, S.A. de C.V.,* 202 S.W.3d 250, 258-59 (Tex. App.—Corpus Christi 2006, pet. denied); *Coastal Bank SSB v. Chase Bank of Texas, N.A.,* 135 S.W.3d 840, 843-45 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[26] *Rivera v. Countrywide Home Loans, Inc.,* 262 S.W.3d 834, 841 (Tex. App.—Dallas 2008, no pet.) (Noting that, "[t]o rely on the discovery rule or the doctrine of fraudulent concealment, the Riveras were required to properly

opportunity to amend their pleadings prior to filing their motion to remand, the Chinese Plaintiffs elected not to add these theories.

Further, for either the discovery rule or fraudulent concealment to apply, "the plaintiff is required to act with diligence in seeking to discover" the fraud or its cause of action.[27] Plaintiffs make no attempt to allege or prove that they exercised any diligence, let alone reasonable diligence, to discover their cause of action during the period of time between 2009 and the filing of this case.   That failure dooms any reliance on either the discovery rule or fraudulent concealment.

With respect to the discovery rule, Plaintiffs state that "the Original Petition alleges the Investor Plaintiffs could not have discovered Defendants' misrepresentation until April 2013, when Superior ceased doing business with Defendants, and Defendants failed to live up to their promise to return Superior's Intellectual Property."  Br. at 12.   But Plaintiffs offer no citation to the Petition to support this statement, and in fact their Petition contains no such allegation. Indeed, Plaintiffs do not even plead that they lacked knowledge that Defendants had Superior's property or that Defendants were unwilling to return anything that might belong to Superior. Likewise, Plaintiffs do not allege any facts to establish diligence on their part, nor do they allege that their alleged injury was inherently undiscoverable.   Plaintiffs cannot defeat a finding of fraudulent joinder based on post-removal submission of a theory—application of the discovery rule—that is not raised in their pleadings.[28]

---

plead and prove each defense" and finding that plaintiffs had "waived any right to assert the discovery rule of fraudulent concealment" in response to motion for summary judgment because they did not plead either doctrine until their first amended petition, which was filed after the submission date for motions for summary judgment and without leave of court).

[27] *In re Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991).

[28] *See Griggs*, 181 F.3d at 699 ("Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.").

Plaintiffs' fraudulent concealment defense is similarly defective.  In fact, the allegations in the petition affirmatively disprove Plaintiffs' newfound contention that they were unaware that Defendants had Superior's information.   For example, Plaintiffs allege that they asked Defendants to return Superior's information in April 2013.   Petition at 21.   While Plaintiffs submit Defendants' response to that letter in their appendix, they fail to provide the Court with their April 2013 letter, which eliminates any doubt concerning Superior's knowledge that Defendants had in their possession certain documents provided to them by Superior notwithstanding Superior's contention that the Bankruptcy Court's confirmation order required Defendants to return that information in 2009.   *See* April 23, 2013 Letter, attached at APPX_024-APPX_033.   Superior knew in April 2013 that Defendants had certain Superior property in their possession and that, according to Superior, Defendants had been ordered to return such property to Superior in 2009 pursuant to the Bankruptcy Court's confirmation order.

Moreover, Plaintiffs' Petition alleges that while "Defendants might have had a reason for keeping the information pertaining to the 48 parts TAE continued machining for Superior [after the bankruptcy case], the Defendants had no reason for keeping Superior's drawings, data and information regarding the other approximately 314 parts."   Petition at 20-21.   Thus, Plaintiffs knew that Defendants allegedly had Superior information for 314 parts, and despite Superior's contention that Defendants did not need that information to make parts for Superior and despite allegedly having been ordered by the Bankruptcy Court to return it, Defendants had not returned the information to Superior.   Thus, to the extent there is any factual basis for the claim, Plaintiffs knew it long ago.

Finally, Plaintiffs' allegations concerning the events after Superior's April 2013 letter do not establish fraudulent concealment.   For those events to have any bearing or relevance, they

must have resulted in the delay by Superior of its request for the return of its property.  Plaintiffs'
own allegation that Superior requested the return of its property in April 2013 – before those
later events occurred – establishes that there was no fraudulent concealment.

## III.   Bankruptcy Jurisdiction Exists Over the Statutory Fraud Claim

The Chinese Plaintiffs are alleging they were defrauded into funding Superior's
reorganization by a creditor that received a release and $500,000 of the purchase price
distributed pursuant to the confirmed plan.  Bankruptcy jurisdiction exists over that claim, which
goes to the heart and integrity of the Bankruptcy Court sale and reorganization process.

### A.   "Arising In" Jurisdiction Exists Over the Chinese Plaintiffs' Claim

The allegations in the Petition relating to the purported fraud claim are completely devoid
of the context in which the stock purchase occurred.  Plaintiffs conveniently ignore that (i) the
stock was purchased in a Bankruptcy Court supervised sale process and pursuant to the
Bankruptcy Court's ordered bid procedures; (ii) the stock transaction was consummated as the
centerpiece of the order confirming Superior's plan of reorganization, which also included
express provisions relating to TAE returning Superior-owned documents and information (the
subject of the purported fraud claim), and a settlement with, and release of, TAE; and (iii)
pursuant to the Bankruptcy Court's bid procedures, Plaintiff Freesky was deemed to have
represented that "it has relied solely on its own independent review, investigation, and/or
inspection of any documents and/or the Superior Assets in making its Bid, and that it did not rely
on any written or oral statements, representations, promises, warranties, or guaranties
whatsoever . . ." and to have "submitted to the exclusive jurisdiction of the Bankruptcy Court
with respect to all matters relating to the sale and the transactions contemplated thereby."

"Arising in" proceedings are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."[29] Similarly, a "core" proceeding is "a proceeding that, by its nature, could arise only in the context of a bankruptcy case."[30] The fact that a claim is based on state law is not dispositive.[31]

The facts here are similar to the case of *Winstar Holdings, LLC v. Blackstone Group L.P.*[32] In *Winstar*, a buyer of assets in bankruptcy commenced a state court lawsuit years later against two of the debtor's advisors and one of the debtor's major creditors alleging that they made misrepresentations in connection with the sale and the buyer was fraudulently induced into entering in the asset purchase. The defendants removed the case on "arising in" bankruptcy jurisdiction grounds. The buyer argued that there was no "arising in" jurisdiction because it was asserting a garden-variety state law fraud claim that could be brought outside of a bankruptcy proceeding. The *Winstar* court disagreed because the claims were "more closely connected to the administration of the bankruptcy than most garden-variety common-law claims."[33] The court explained that the matter "is intimately related to the administration of the bankruptcy" . . . because, among other reasons, the bankruptcy court "has a vital interest in policing the integrity of the bankruptcy process in general, and of the sales of estate assets under the court's supervision in particular."[34]

The Chinese Plaintiffs' claim is similarly inseparable from the bankruptcy. Moreover, the bankruptcy court has a vested interest in policing the sale and confirmation process,

---

[29] *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987).
[30] *Id.*
[31] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark),* 163 F.3d 925, 931-32 (5th Cir. 1999) (finding state law professional malpractice claims against a former bankruptcy estate professional constituted a core proceeding because the court's ability to oversee professionals is an important aspect in restructuring the debtor-creditor relationship and the claims were therefore inseparable from the bankruptcy context).
[32] *Winstar Holdings, LLC v. Blackstone Group L.P.,* No. 07 Civ. 4634(GEL), 2007 WL 4323003 (S.D.N.Y., Dec. 10, 2007).
[33] *Id.* at *4.
[34] *Id.* at *5.

including any representations made by a major creditor (TAE) to induce a particular buyer (Freesky) without disclosure to the court.  Indeed, if there was some promise made that Plaintiff Freesky as the stalking horse bidder deemed material to its offer, it should have been disclosed to put all potential bidders on equal footing and maximize the price realized.

### B.   Judge Houser's Prior Subject Matter Jurisdiction Decision Is Consistent with the Existence of Bankruptcy Jurisdiction Over the Fraud Claim

The Plaintiffs quote selective portions of Chief Bankruptcy Judge Houser's memorandum opinion relating to subject matter jurisdiction over Superior's claims against TAE and contend that the same analysis applies to the fraud claim.[35]  Judge Houser's reasoning, however, demonstrates why, in contrast to Superior's claims, there is subject matter jurisdiction over the statutory fraud claim.  First, in concluding that "arising under" jurisdiction did not exist, Judge Houser reasoned that:

> the Plan provision upon which Superior purports to rely for the return of its information is not even implicated here because Superior voluntarily resumed its business relationship with TAE after the Plan was confirmed . . . [and therefore] TAE's alleged obligation to return Superior's information and property did not arise from the Plan or Confirmation Order (as alleged in the Motion), but instead from the termination of a post-confirmation business relationship and whatever agreement . . . that governed the parties' relationship post-confirmation.[36]

Similarly, Judge Houser concluded that "arising in" jurisdiction did not exist because "TAE's alleged obligation to use Superior's property only for Superior's benefit and to return the property at the conclusion of the manufacturing relationship would have arisen regardless of Superior's bankruptcy filing" and furthermore "Superior would have claims against TAE for the return of its property regardless of its bankruptcy filing."[37]  In contrast to Superior's claims, the purported fraud claim arose during, and solely because of, the bankruptcy proceeding, and

---

[35] Br. at 18.

[36] *In re Superior Air Parts, Inc.*, 516 B.R. 85, 94 (Bankr. N.D. Tex. 2014).

[37] *Id*. at  96 (emphasis added).

implicates the integrity of the sale and plan confirmation process.  It is inseparable from the bankruptcy context and will require consideration of the effect of the bid procedures order, reorganization plan and confirmation order.

### C.    The Well-Pleaded Complaint Doctrine Does Not Apply

Plaintiffs contend that the well-pleaded complaint doctrine applies to bankruptcy jurisdiction removal and that an affirmative defense of release in a bankruptcy order "cannot serve as a basis for bankruptcy jurisdiction."[38]  For this proposition, the Plaintiffs cite a 2005 opinion of Bankruptcy Judge Felsenthal[39] and a 2007 opinion of Bankruptcy Judge Jernigan.[40] Although Judge Felsenthal concluded that the well-pleaded complaint doctrine applied to bankruptcy jurisdiction removal, he did so based on his belief that such conclusion was compelled by *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998).[41]  Judge Jernigan in the subsequent *Brook Mays* case, however, reached the opposite conclusion, holding that the well-pleaded complaint doctrine only applies with regard to federal question "arising under" jurisdiction and does not apply to the "arising in" or "related to" prongs of bankruptcy jurisdiction.[42]  As Judge Jernigan correctly concluded, "the Supreme Court has specifically held that the well pleaded complaint doctrine only applies with regard to federal question 'arising under' jurisdiction."[43]  Furthermore, as Judge Jernigan also correctly pointed out, the *Rivet* case involved removal on federal question grounds not on bankruptcy jurisdiction grounds.[44]  Even if

---

[38] Brief at 21.

[39] *State of Arkansas Teacher Retirement System v. Merrill Lynch & Co. (In re LJM2 Co-Investment, L.P.)*, 319 B.R. 495 (Bankr. N.D. Tex. 2005).

[40] *In re Brook Mays Music Co.*, 363 B.R. 801 (Bankr. N.D. Tex. 2007).

[41] *LJM2 Co-Investment*, 319 B.R. at 500.

[42] *Brook Mays*, 363 B.R. at 815.

[43] *Id.* at 814-815, (citing *American Red Cross v. S.G.*, 505 U.S. 247, 258 (1992).

[44] Other courts have disagreed with the *LMJ2 Co-Investment* opinion for those same reasons.  *See, e.g., Foster Poultry Farms, Inc. v. IBM Corp.,* No. CIV-F-06-0680 AWI SMS, 2006 WL 2769044, *7-8 (E.D. Cal., Aug. 1, 2006); *McIntyre Land Co. v. McIntyre Bldg Co. (In re McIntyre Bldg Co., Inc.)*, Case No. 10-30558-WRS, 2011 WL 1434691, *11 (Bankr. M.D. Ala., April 14, 2011).

the well-pleaded complaint doctrine did apply, it should not defeat jurisdiction because here the basis for jurisdiction is not solely a defense based on a bankruptcy court order but the context in which the claim set forth in the complaint occurred – in connection with the bankruptcy court sale and confirmation process.[45]

### D.     The Fact That There Is No Longer a Bankruptcy Estate Is Irrelevant

Plaintiffs suggest that there is no bankruptcy jurisdiction over the fraud claim because it will have no effect on Superior's former bankruptcy estate.  This contention is incorrect.  In *Citizens Bank & Trust Co. v. Case*,[46] the debtor (Case), an attorney, filed a chapter 11 case and as part of the reorganization plan settled a $280,000 claim of the bank by executing a $75,000 promissory note.  The bankruptcy court approved the execution of the new note, which was specified in the confirmed plan of reorganization.  Months after the bankruptcy case was closed, Case became delinquent on the note, and the bank commenced a state court lawsuit for default.  Case thereafter alleged that the bank had fraudulently induced him to make the settlement.  The bankruptcy court concluded that the dispute was a "core" proceeding notwithstanding that there was no longer a bankruptcy estate.  The district court affirmed.  The Fifth Circuit agreed with the lower courts, reasoning that the note "was provided for in, and executed as an integral part of, the settlement agreement and reorganization plan."[47]  The same is true for Freesky's purchase of Superior's stock.  "Arising in" jurisdiction, therefore, exists over the claim.

---

[45] In this regard, the facts here are fundamentally different than the situation in *Brook Mays*.  Judge Jernigan in *Brook Mays* found no "arising in" jurisdiction based on an asserted defense in that case that an order approving the debtor's postpetition financing contained a release that barred the claim, but *Brook Mays* involved a cause of action antecedent to the bankruptcy case (a claim that arose regardless of the bankruptcy) not a cause of action based on alleged conduct that occurred during, and under the auspices of, a bankruptcy-court supervised sale process.

[46] *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991).

[47] *Id* at 1020.

**E.      The Decision Whether to Abstain Should Be Left to the Bankruptcy Court**

The decision whether to exercise discretionary abstention is best left to the Bankruptcy Court.  To the extent the Court is inclined to rule on the abstention request, however, there is no good reason to abstain.   Given that the claim implicates the integrity and efficacy of the bankruptcy sale and confirmation process, there is a strong reason to exercise jurisdiction and little reason to abstain in favor of the state court.[48]

The Plaintiffs assert that the often-considered abstention factors weigh in favor of abstention.   The Plaintiffs, however, again ignore the context in which the purported fraud occurred.   For instance, the Plaintiffs assert that "state law issues predominate over bankruptcy issues" because the claim arises under state law.    But there is no unique aspect of Texas law involved, and the issues relating to the effect of the bid procedures order, the TAE settlement and release in the plan, and the lack of disclosure are best addressed by the Bankruptcy Court. Similarly, the Plaintiffs assert that the fraud claim "will have no impact whatsoever on the efficient administration of the estate (Factor 1)" and the "degree of relatedness of this proceeding to the main bankruptcy case is likewise low since the main bankruptcy case is now closed (Factor 6)."[49]  The sale process for the equity of the debtor, however, is perhaps the most significant aspect of the administration of the bankruptcy estate, and the fact that there is no longer a bankruptcy estate does not change the fact that the fraud claim implicates the integrity of that process.  On the whole, the applicable factors weigh against abstention.

---

[48] *See Winstar*, 2007 WL 4323003 at *6 (finding abstention should not be invoked because the sale that was the subject of the state law fraud claims "was pursuant to directives issued by the Bankruptcy Court" and the "evaluation of those claims will necessarily involve the interpretation of the Bankruptcy Court-approved APA, which contains provisions . . . that are arguably inconsistent with the plaintiffs' claims").

[49] Br. at 24.

**V.      The Removal Was Procedurally Proper**

Plaintiffs contend that Defendants' removal was procedurally deficient because Defendants did not obtain the consent of the Intervenor.  Plaintiffs' cursory argument fails.  As expressed in detail in Defendants' Response to Intervenor's Motion to Remand, it is well settled that Defendants are not required to obtain the consent of nominal parties, such as Technify.  14A Federal Practice and Procedure section 3731, at 507-8 (1985).  Further, even if Technify was a legitimate party in this action, its consent as an intervenor is not required under the clear terms of the controlling statute.  28 U.S.C. § 1446, which sets forth the procedures for removal, provides that "when a civil action is removed *solely* under section 1441(a), all *defendants* who have been *properly joined and served* must join in or consent to the removal of the action."  (emphasis added).  Defendants here did not remove the case "solely under section 1441(a)" but rather removed the case under 28 U.S.C. §§ 1441(a) and 28 U.S.C. §§ 1334 and 1452.  Thus, the consent requirement contained in section 1446 is not triggered.

Even if section 1446 applied, consent is only required from "all defendants who have been properly joined and served."  Technify intervened and is not a defendant; nor was it properly joined or served.  Thus, section 1446 does not require Technify's consent.  Indeed, even if an intervenor could be a "defendant" under section 1441(a) under certain circumstances, Technify does not meet those circumstances here because it was not "properly joined" as required by section 1441(a)'s clear language.  Specifically, as set forth in Defendants' Motion to Dismiss and Objection to Intervenor's Claims and Brief in Support, Technify is not a properly joined intervenor in this case.  Thus, under no circumstances was its consent required.

Neither Technify nor Plaintiffs cite a single case to support their novel argument that if Technify is aligned with Defendants, its consent to removal was required.  Instead, Technify cites a New York District Court case, *York Hannover Holding A.G. v. American Arbitration*

24

*Association*, 794 F.Supp. 118 (S.D.N.Y. 1992), where the plaintiff argued that the *intervenor*, who removed the case, failed to properly get the consent of the *named defendant* in the case. The case in no way addresses Technify's unsupported argument that a *defendant* must get the consent of an *intervenor*.  As support for their argument that Technify's consent was required, Superior cites a single case, *Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir. 1992), which does not even involve an intervenor but rather addresses the unremarkable point that, under appropriate circumstances, all defendants must consent to removal.  Thus, *Kerwood* in no way supports the contention that an intervenor's consent is required.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to Remand be denied in its entirety and that they have such other relief to which they may be entitled.

 Dated:  November 14, 2014

Respectfully submitted,

 /s/ *Craig F. Simon*
Craig F. Simon, Esq.
State Bar No. 00784968
Daniel P. Winikka, Esq.
State Bar No. 00794873
Matthew W. Ray, Esq.
State Bar No. 00788248
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX  75201
Telephone:  (214) 871-2292
Facsimile:  (469) 759-1699

***Counsel for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of November, 2014, a true and correct copy of the foregoing document has been served on the parties listed below via the Court's ECF filing system, first class mail or other appropriate means.


Counsel for Plaintiffs:


Jerry Alexander
James Adams
Christopher Robison
PASSMAN & JONES
1201 Elm Street, Suite 2500
Dallas, TX 75270


Counsel for Intervenor:

Ross Cunningham
Rose Walker LLP
3500 Maple Ave., Ste. 900
Dallas, TX 75219


*/s/ Craig F. Simon*
Craig F. Simon

27