**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SUPERIOR AIR PARTS, INC.,** | § | |
| **WEIFANG FREESKY AVIATION,** | § | |
| **TECHNOLOGY CO., LTD AND** | § | |
| **SUPERIOR AVIATION BEIJING CO.,** | § | |
| **LTD.** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 3:14-cv-03492** |
| | § | |
| **v.** | § | |
| | § | |
| **BRUNO KÜBLER, IN HIS CAPACITY AS** | § | |
| **INSOLVENCY ADMINISTRATOR OF** | § | |
| **THIELERT AIRCRAFT ENGINES** | § | |
| **GMBH, AND THIELERT AIRCRAFT** | § | |
| **ENGINES GMBH,** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **TECHNIFY MOTORS GMBH,** | § | |
| | § | |
| **Intervenor.** | § | |

## DEFENDANTS' RESPONSE TO INTERVENOR'S MOTION TO REMAND

## TABLE OF CONTENTS

**INTRODUCTION** ......................................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ..................................................... 1

**ARGUMENT AND AUTHORITIES** ........................................................................... 6

    I.   Superior and the Defendants are Diverse ........................................................... 6

    II.  Intervenor's Citizenship is Not Considered in Assessing Diversity ................... 7

        A.  Intervenor is A Nominal Party ................................................................... 7

        B.  Even if Intervenor Was Not a Nominal Party, Its Only Conceivable Interests Align with Defendant ................................................................... 11

        C.  Technify's Claims Are Fraudulently Joined ............................................. 15

    III.  Defendants Were Not Required to Obtain Technify's Consent .................... 16

    IV.  The Chinese Plaintiffs ..................................................................................... 17

    V.  Bankruptcy Jurisdiction .................................................................................. 19

**CONCLUSION** ........................................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

*Acosta v. Master Maintenance and Construction Inc.*,
   452 F.3d 373 (5th Cir. 2006) ................................................................. 7, 8, 9

*Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*,
   No. 4:13-CV-2011, 2014 WL 3543720 (S.D. Tex. July 14, 2014) ......................... 10

*Chesapeake Louisiana, L.P. v. Buffco Production, Inc.*,
   564 Fed. Appx. 751 (5th Cir. 2014) ................................................... 13, 14

*City of Indianapolis v. Chase Nat. Bank of City of N.Y.*,
   314 U.S. 63 (1941) .......................................................................... 11

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) ............................................................. 15

*Griggs v. State Farm Lloyds*,
   181 F.3d 694 (5th Cir. 1999). ............................................................ 15

*Guillot v. Credit Suisse Boston, LLC*,
   No. Civ. A. 03-0797, 2005 WL 2037372 (E.D. La. July 21, 2005) ....................... 15

*Indemnity Ins. Co. of N.A. v. First Nat. Bank at Winter Park, Fla.*,
   351 F.2d 519 (5th Cir.1965) .............................................................. 11

*Int'l. Software Sys., Inc v. Amplicon, Inc.*,
   77 F.3d 112 (5th Cir. 1996) .............................................................. 15

*Mattel, Inc. v. Bryant*,
   446 F.3d 1011 (9th Cir. 2006) ............................................................. 9

*Nsight Technologies, LLC v. Fed. Ins. Co.*,
   Civ. Action No. 3:09-cv-6-WHB-LRA,2009 WL 1106868 (S.D. Miss. Apr. 23, 2009) ........ 18

*Oxford v. Williams Cos., Inc.*,
   137 F. Supp. 2d 756 (E.D. Tex. 2001) .................................................... 16

*Patterson v. Panned Parenthood of Houston*,
   971 S.W.2d 439 (Tex. 1998) ............................................................... 11

*Pride Transp., Inc. v. Harbin*,
   Civ. Action No. 4:10-CV-458-Y, 2010 WL 4314920 (N.D. Tex. Oct. 26, 2010) ........... 18

*Roman Catholic Diocese of Dallas v. Sebelius*,
  927 F. Supp. 2d 406 (N.D.Tex. 2013) .................................................................. 11

*Simmons v. Humphreys Cty. Sch. Dist.*,
  21 F.3d 1108, 1994 WL 171626 (5th Cir. April 26, 1994) ...................................... 11

*Smallwood v. Ill. Cen. R.R. Co.*,
  385 F.3d 568 (5th Cir. 2004) .................................................................................. 6

*UE Group, LLC v. J&B Holding Co.*,
  No. 09-6088 (JAP), 2010 WL 3937138 (D.N.J. 2010)............................................ 11

*Wichita R.R. & Light Co. v. Public Util. Comm'n. of Kansas*,
  260 U.S. 48 (1922)............................................................................................. 7, 9

*Xtria, LLC v. Tracking Sys., Inc.*,
  No. 3:07–CV–0160, 2007 WL 1791252 (N.D.Tex. Jun.21, 2007) ......................... 10

*York Hannover Holding A.G. v. American Arbitration Association*,
  794 F.Supp. 118 (S.D.N.Y. 1992) ......................................................................... 17

## STATUTES

28 U.S.C. § 1332................................................................................................... 6

28 U.S.C. § 1334................................................................................................. 16

28 U.S.C. § 1441............................................................................................. 16, 17

28 U.S.C. § 1446................................................................................................. 16

28 U.S.C. § 1452................................................................................................. 16

## OTHER

13B Federal Practice and Procedure § 3606 (2d ed. 1986)....................................... 7

Dr. Bruno Kübler, in his capacity as insolvency administrator (the "Insolvency Administrator") of Thielert Aircraft Engines GmbH ("TAE") (the Insolvency Administrator and TAE, collectively, "Defendants") hereby respond to Intervenor Technify Motors GMBH's ("Intervenor" or "Technify") Motion to Remand.  Because removal in this case was proper, Intervenor's Motion should be denied.

## INTRODUCTION

Technify has no impact on the analysis of the Court's subject matter jurisdiction.  It is at best merely a nominal party whose claims are fraudulently joined and fraudulently misjoined.  Even though it admits it wants the same result as Defendants concerning the Property at Issue, it asserts a declaratory judgment claim concerning that property that it somehow alleges is asserted against Defendants.  Yet it does not plead, nor could it, any dispute with Defendants over the contractual right to that property because there is no such dispute.  Finally, Technify's alternative damages claim is, by its own express terms, plainly not ripe.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation as currently constituted involves three separate and distinct transactions:

- **The Property Dispute** – Superior's claims against Defendants each center around the question of whether Superior or Defendants own certain property (the "Property at Issue") that TAE developed.  Resolution of Superior's claims requires the court to assess the Superior/TAE supplier agreement and the business dealings between Superior and TAE from 2001 through 2013 principally to determine whether Defendants are in breach of the supplier agreement with Superior and whether the Property at Issue constitutes or contains Superior's trade secrets;

- **The Superior Stock Purchase Dispute** -- The claim against Defendants by the Chinese Plaintiffs based on an alleged (but inadequately pled) misrepresentation by Defendants in connection with the Chinese Plaintiffs' acquisition of Superior's stock as part of Superior's bankruptcy case in 2009; and

- **The TAE Asset Purchase Dispute** – The claim against Defendants (who are both German citizens) by Intervenor Technify, a German entity, related to alleged

1

damages under a 2013 asset purchase agreement governed by German law and subject to a mandatory German forum selection clause.[1]

The following table provides a general timeline of the relevant events:

| DATE | DESCRIPTION |
|---|---|
| **2001** | TAE (a German entity) and Superior enter into Supplier Agreement. Superior will issue purchase orders for certain parts to TAE, which will manufacture the parts.  These transactions give rise to the **Property Dispute**. |
| **2008** | Superior files for Chapter 11 in Bankruptcy Court in Dallas ("Bankruptcy Court"). |
| | TAE enters insolvency proceedings in Germany.  Dr. Kübler becomes insolvency administrator (similar to bankruptcy trustee) for TAE. |
| **2009** | Chinese Plaintiffs purchase Superior stock pursuant to a bidding procedures order in the Bankruptcy Court and the order confirming Superior's chapter 11 reorganization plan ("Confirmation Order").  This is the subject of the **Superior Stock Purchase Dispute**. |
| **2009 through April 2013** | Superior never requests that TAE or Dr. Kübler return any property even though Superior later contends that TAE has Superior's information related to hundreds of parts that it was no longer producing for Superior. |
| **April 2013** | Superior for first time requests "return" of certain property, basing its request on the Confirmation Order. |
| **July 11, 2013** | After some communications between the parties, Superior files a show cause motion in the Bankruptcy Court asking the Bankruptcy Court to hold Defendants in contempt of Court for failing to return Superior's property pursuant to the Confirmation Order. |
| | After the Bankruptcy Court dismisses the contempt motion, Superior re-files its request as a Motion to Enforce the confirmation order. |
| **July 22, 2013** | Dr. Kübler sells the business of TAE to Technify, a German entity, pursuant to an asset purchase agreement that is governed by German law.  This is the transaction that gives rise to the **TAE Asset Purchase Dispute**. |
| | Because of Superior's claims regarding the Property at Issue, Dr. Kübler excludes from the sale all property related to TAE's business with Superior (this is what has been referred to herein as the "Property at Issue").  Dr. Kübler has committed, both in the Bankruptcy Court and now this Court, to maintain possession of the Property at Issue and not to transfer it until a court resolves the dispute with Superior. |
| | Technify and Kübler agree that Kübler will not transfer the Property at Issue to Technify until a final decision by a court or an agreement permits Kübler |

---

[1] Defendants intend to file a motion to dismiss the Intervenor's claims based on *forum non conveniens*.

| | to do so.  Under the parties' Closing Protocol, Technify retains a potential damages claim "in case the [Property at Issue] cannot be transferred". |
|---|---|
| **August 20, 2014** | Following more than a year of litigation between Superior and Dr. Kübler (but with no involvement by the Chinese Plaintiffs or Technify), the Bankruptcy Court enters its Memorandum Opinion and Order Denying Motion to Enforce for Lack of Subject Matter Jurisdiction. |
| **August 21, 2014** | Superior and the Chinese Plaintiffs file this litigation in state court.  In 8 counts, Superior seeks essentially the same relief it sought in Bankruptcy Court. |
| | The Chinese Plaintiffs assert a statutory fraud claim alleging that they relied on unspecified misrepresentations by Defendants in connection with their purchase of Superior's stock in 2009 pursuant to the Bankruptcy Court's order confirming Superior's bankruptcy plan. |
| **September 19, 2014** | Technify intervenes in the state-court action.  It seeks a declaratory judgment regarding the issues between Superior and Defendants.  It also asserts what it describes as an "alternative" damages claim that would get triggered only "in the event of a legal determination that Kübler must transfer the Property At Issue to Superior…"  Technify's damages claim is based on a potential alleged breach of its agreement with Defendants, which agreement is governed by German law and that contains a mandatory forum selection clause providing for exclusive venue in German court. |

**The State Court Action**

In its Petition, Superior asserts eight counts against Defendants seeking essentially the same relief that was the subject of prior litigation between Superior and Defendants in the U.S. Bankruptcy Court for the Northern District of Texas.  *See In re Superior Air Parts, Inc.*, Case No. 08-36705-BJH-11. [2]  The dispute – both in the Bankruptcy Court and now before this Court – centers on business dealings between Superior and TAE over a number of years beginning in 2001 when TAE and Superior entered into a Supplier Agreement (the "2001 Supplier Agreement").  The crux of the dispute is focused on whether TAE owns or has the right to use certain property, specifically documents, data and information (collectively, the "Property at

---

[2] The pleadings and filings in the Superior bankruptcy (*In re Superior Air Parts, Inc.*, Case No. 08-36705,United States Bankruptcy Ct, N.D. Tex.) are a matter of public record and accessible via Pacer.

Issue"), that TAE itself generated at great effort and expense to facilitate its manufacture of aircraft engine parts for sale to Superior.

In the Bankruptcy Court, Superior sought to enforce the Bankruptcy Court's 2009 order confirming Superior's reorganization plan, which Superior contended required Defendants to return to Superior certain information that Superior provided to TAE during the course of the parties' business relationship.  As the proceedings in the Bankruptcy Court evolved, Superior essentially sought the same injunctive relief from the Bankruptcy Court that it now seeks in this litigation – to prevent Defendants from using or transferring the information that TAE itself developed.  Superior and Defendants litigated in the Bankruptcy Court for over a year, following which Chief Judge Houser dismissed Superior's motion for lack of subject matter jurisdiction. The next day, Plaintiffs brought the instant suit.

Defendants currently have possession of the Property at Issue. Because of the issues raised by Superior (beginning with correspondence in April 2013), the Insolvency Administrator has segregated that property and withheld it from the assets transferred to Technify pursuant to the Closing Protocol between Technify and Defendants as discussed below. Defendants will not use or transfer these segregated assets to any other party, including the Intervenor, until such time as the dispute between Superior and Defendants is resolved.

**The Chinese Plaintiffs**

The Chinese Plaintiffs first became involved in 2009 after Superior filed for bankruptcy and Plaintiff FreeSky became the stalking horse bidder for Superior's stock.  The Chinese Plaintiffs acquired Superior's stock pursuant to a bid procedure order from and under the supervision of the Bankruptcy Court.  The Chinese Plaintiffs assert a single statutory fraud claim against Defendants under Section 27.01 of the Texas Business and Commerce Code.

**The Intervenor**

Technify acquired the assets of TAE's business on July 22, 2013. The transaction was pursuant to a Business Purchase and Transfer Agreement entered into in Germany and expressly governed by German law and that includes a provision providing German courts with exclusive jurisdiction for any disputes. Because Superior sought the return of documents and information before the Intervenor and the Insolvency Administrator closed the sale, the Insolvency Administrator and Technify negotiated an agreement regarding what would happen if some or all of the Property at Issue could not be transferred to Intervenor.  In the Closing Protocol[3] to the Business Purchase and Transfer Agreement the parties expressly recognized the dispute between Superior and Defendants:

> Superior Air Parts, Inc., a US corporation … has [both in correspondence and the Bankruptcy Court proceeding] claimed the return of certain tangible and intangible assets that are allegedly owned by Superior (the "Superior Claims").  With regard to the making of the Superior Claims, Sellers have completely separated within the business of TAE all tangible and intangible assets … (together the "Superior Part") and will not transfer the Superior Part to the Buyer, until it has been legally finally and unappealable [sic] decided or agreed on, if and to what extent the Sellers shall be entitled to transfer the Superior Part to the Buyer …

*See* APPX_006-07.  The parties also negotiated a damages limitation regarding the disputed assets in the same Closing Protocol that applies "in case the Superior Part cannot be transferred…" Other than the amount of any damages to which Technify may be entitled if Defendants are unable to transfer the Property at Issue, there is no dispute between Defendants and Technify.

---

[3] A certified translation of the Closing Protocol is at APPX_001-APPX_023 in the Appendix filed herewith.  The uncertified English translation is contained in the version submitted by Technify with its response to Defendants' motion to dismiss. [DI 20]

## ARGUMENT AND AUTHORITIES

While Technify argues that removal should be narrowly construed and doubts resolved in favor of remand, the Fifth Circuit has recognized the importance of vigilantly protecting federal jurisdiction, particularly where the facts indicate that a party is actively attempting to avoid otherwise proper federal jurisdiction. *See Smallwood v. Ill. Cen. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004), citing Federal Practice and Procedure § 3641 at 173 (3d ed. 1998) ("The Federal courts should not sanction devices intended to prevent the removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal Court as to permit the state courts in proper cases to retain their own jurisdiction."). Federal jurisdiction clearly exists here as the real dispute – indeed, a dispute that has been in litigation for some time in another forum – is between diverse parties, Superior and Defendants. For the myriad reasons discussed below, the citizenship of the remaining parties, the Chinese Plaintiffs and Intervenor, should not be considered for purposes of assessing diversity.

## I.      Superior and the Defendants are Diverse

No party disputes that Plaintiff Superior Air Parts, Inc. ("Superior"), a citizen of Texas, and Defendants, both citizens of Germany, are completely diverse. *See* Notice of Removal ("Notice") at ¶13. Nor does any party dispute that if the citizenship of Superior and Defendants were the only relevant inquiry, subject matter jurisdiction exists under 28 U.S.C. § 1332. As discussed below and in Defendants' Response to Plaintiffs' Motion to Remand,[4] the citizenship of the remaining parties, Intervenor Technify and Plaintiffs, Weifang Freesky Aviation, Technology Co., Ltd and Superior Aviation Beijing Co., Ltd. (the "Chinese Plaintiffs"), should not be considered to assess diversity. Thus, this Court has subject matter jurisdiction.

---

[4] In the interest of brevity, Defendants incorporate herein by reference their response to Plaintiff's Motion to Remand, which is being filed concurrently herewith.

## II.     Intervenor's Citizenship is Not Considered in Assessing Diversity

### A.     Intervenor is A Nominal Party

As set forth in Defendants' Notice, the presence of Intervenor does not impact the propriety of the removal.  Indeed, it is long settled that the citizenship of a nominal party, like Technify, is irrelevant for purposes of determining diversity.   13B Federal Practice and Procedure § 3606 (2d ed. 1986) ("it has long been established by innumerable precedents from all quadrants of the federal judicial system that the citizenship of nominal or formal parties who have no interest in the action will be ignored; if the real controversy is between citizens of different states, the court has subject matter jurisdiction.")  Technify's interests here are nominal because its presence is not essential to a decision of the real controversy between Superior and Defendants and because Technify's claims are not properly joined.  *See Wichita R.R. & Light Co. v. Public Util. Comm'n of Kansas*, 260 U.S. 48, 54 (1922).

As the Fifth Circuit explained in *Acosta v. Master Maintenance and Construction Inc.*, 452 F.3d 373, 379 (5th Cir. 2006) (internal citations omitted), whether a party is "nominal," for removal purposes depends on whether, in the absence of the party, "the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff."  Because the Court can enter a final judgment here that is consistent with equity and good conscience without Intervenor's presence, Intervenor is nominal.  Indeed, Defendants *and* Plaintiffs have moved to dismiss Intervenor's claims.[5]  Thus, even Plaintiffs believe Intervenor's presence is unnecessary.  In *Acosta*, the Fifth Circuit found that, where the plaintiffs had agreed to sever some of the defendants claims from the case, those defendants were

---

[5] As set forth in Defendants' Motion to Dismiss and Objection to Intervenor's Claims and Brief in Support, Technify does not have standing to assert its declaratory judgment claim and its claim for damages is not ripe.  Where a party cannot survive a Rule 12(b) motion to dismiss, its claims are obviously not essential to a decision of the controversy between the original parties.

nominal.  *See id.*  Similarly, because Plaintffs here have sought to dismiss Intervenor, its presence is not necessary.

An examination of Intervenor's claims further establishes its nominal status. Intervenor's first claim simply seeks a declaratory judgment regarding the "respective rights of Superior, Kübler and [Intervenor] to the Property at Issue in the possession, custody and control of Kübler."  Petition at ¶ 21.  But Intervenor's declaratory judgment action is superfluous and any issues it raises are before the Court as a result of Superior's affirmative claims.  Indeed, Superior's entire case against Defendants is focused on whether Defendants own the rights to the Property at Issue.

Technify argues that it has an interest in the Property at Issue, and thus may intervene, due to its contractual relationship with Defendants.  It then makes its singular argument regarding why it is not a nominal party:  "a party is not 'nominal' for purposes of removal jurisdiction when it has a valid and potentially enforceable claim to the property that is the subject of the lawsuit."  Brief at 7.  While Intervenor argues that the "parties do not dispute that Technify purchased the assets of TAE in July of 2013, and the sale included the property that is the subject of this litigation," that statement is incorrect.  As reflected by the terms of the Closing Protocol, the Property at Issue in this dispute (referred to in the Closing Protocol as the "Superior Part") was expressly excluded from the assets transferred by Defendants to Technify.  *See* APPX_001-023 at Preamble, paragraph (D) (stating that Defendants "will not transfer the Superior Part to [Technify], until it has been legally finally and unappealably decided or agreed on, if and to what extent [Defendants] shall be entitled to transfer the Superior Part to [Technify]").

In any event, Technify misses the point.  The question is not whether Technify has a contractual interest in the property, the question is whether Technify's presence is essential to a decision of the controversy between the original parties and thus whether, in the absence of Technify, "the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff."  *See Acosta*, 452 F.3d at 379; *see also Wichita R.R. & Light Co.*, 260 U.S. at 54.  Here, the Court can clearly enter such a judgment.

The Closing Protocol between Technify and Defendants also illustrates why the Intervention is not proper or necessary.  Defendants and Technify agreed, in the Closing Protocol, that Technify would be entitled to seek damages from Defendants in an amount to be determined by a German Court under German law if the "Superior Part" could not be transferred.  There is no dispute at all (let alone a justiciable controversy) between Defendants and Intervenor regarding who is entitled to the Property at Issue – the parties' rights are set forth in their agreements, and each has an expressed desire to establish Defendants' right to transfer the property to Technify.  Intervenor's declaratory judgment action is thus not necessary; the Court can and should resolve the controversy between Superior and Defendants without Intervenor's presence.  In the unlikely event, based on that decision, Defendants are unable to transfer the property to Intervenor, it can then seek damages from Defendants in a German court.

Simply put, Intervenor's claim, which merely and improperly seeks a "declaration" regarding the very issues already before the Court, is not essential to a decision of the controversy between the original parties.  *See Wichita R.R. & Light Co.*, 260 U.S. at 54; *see also Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1013-14 (9th Cir. 2006) (non-diverse party who intervened to protect its rights to particular product line was not indispensable party).  Indeed, "Courts in the

Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC,* No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014); *see also Xtria, LLC v. Tracking Sys., Inc.,* No. 3:07–CV–0160, 2007 WL 1791252, at *3 (N.D.Tex. Jun.21, 2007) (dismissing claim that sought "a declaratory judgment to the same effect as [the existing] breach of contract claim....").

Intervenor's "alternative" claim, which actually asks the Court, if the Court finds Superior owns the Property at Issue, to then adjudicate and determine Intervneor's claim for damages under German law, does not impact the analysis. In that second count, Intervenor requests that "**in the event of a legal determination** that Kubler must transfer the Property At Issue to Superior, Technify will have a claim for damages…" Petition at ¶ 24 (emphasis added). Technify further alleges that "**if** the Court determines that Intervenor has no rights in the Property at Issue and/or that Kübler cannot transfer the Property at Issue," then Intervenor requests the Court to award contract damages to Intervenor under the Purchase and Transfer Agreement entered into in Germany in 2013. Petition at ¶ 25 (emphasis added). By its own terms, Technify's claim is not ripe because it requires adjudication of the real dispute (Superior's claims against Defendants) before it matures. Indeed, if, as expected, the Court ultimately rules in Defendants' favor with respect to the Property at Issue, Defendants would transfer the property to Technify and, as a result, Technify's second claim would not exist by its own terms.

Further, if the Court determines that some, but not all, of the property could be transferred by the Insolvency Administrator to Intervenor, there would have to be an entirely different action – under an entirely different contract (the agreement and closing protocol between Intervenor and the Insolvency Administrator) to determine the scope of any liability, if

any, and damages, if any.  Thus, Intervenor's second count is clearly not ripe.   A claim that is not ripe cannot be a basis on which to assess diversity jurisdiction or the propriety of removal. *UE Group, LLC v. J&B Holding Co.*, No. 09-6088 (JAP), 2010 WL 3937138 *4 (D.N.J. 2010) (finding fraudulent joinder because claim was not ripe); *see also Roman Catholic Diocese of Dallas v. Sebelius,* 927 F. Supp. 2d 406, 427 (N.D.Tex. 2013) ("Dismissal is the appropriate action where a claim is not ripe."); *Simmons v. Humphreys Cty. Sch. Dist.,* 21 F.3d 1108, 1994 WL 171626 at * 3 (5th Cir. April 26, 1994) (dismissing claim for lack of jurisdiction because it was not yet ripe); *Patterson v. Panned Parenthood of Houston*, 971 S.W.2d 439, 443 (Tex. 1998) (noting rule that a "case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass" and dismissing unripe claim).

**B.     Even if Intervenor Was Not a Nominal Party, Its Only Conceivable Interests Align with Defendant**

Even assuming Intervenor is not a nominal party, it is clear that its interests align with Defendants.  Thus, even if alignment were proper, Intervenor, a Germany citizen, would be aligned with Defendants, also German citizens, and thus the alignment would not impact the diversity of the parties.

In aligning the parties, it is the duty of this court to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat. Bank of City of N.Y.,* 314 U.S. 63, 69 (1941), quoting *Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.,* 197 U.S. 178 (1905).  The question is whether there is an "actual, substantial controversy between citizens of different states," and this court must look to the "principal purpose of the suit and the primary and controlling matter in dispute."  *Indemnity Ins. Co. of N.A. v. First Nat. Bank at Winter Park, Fla.,* 351 F.2d 519, 522 (5th Cir.1965), citing *City of Indianapolis,* 314 U.S. 63.  Thus, the court conducts its own review of the party's interests in

the litigation and determines whether they are more appropriately aligned with the plaintiff or defendants.

In its Petition in Intervention, Technify seeks a declaration as to the rights of the parties with respect to the Property at Issue.  Defendants contend that the Property at Issue belongs to them and thus, under the contract with Technify, the Insolvency Administrator can transfer the Property at Issue to Technify.   In its Brief in Support of its Motion to Remand ("Brief"), Technify expressly aligns itself with Defendants on this point, stating that "Technify's clear preference is to obtain the property that it purchased from Defendants when it entered into an agreement with Defendants in 2013."  Brief at 8.  The only way to achieve Technify's "clear preference" is for Defendants to prevail in their dispute with Superior regarding the ownership of the Property at Issue.  Only if the Court rules that Defendants own the Property at Issue can that property be transferred to Technify.  If Plaintiffs prevail, then Defendants will have no right to the property and Technify, in turn, will not receive the property.  Clearly then, Technify wants precisely what Defendants want (*i.e.*, a ruling that the Property at Issue belongs to Defendants) and the exact opposite of what Plaintiffs want (*i.e.*, that the Property at Issue belongs to Plaintiffs).  Thus, based on its own stated preference, Technify is aligned with Defendants on this claim.

Despite the fact that Technify's interests are the exact opposite of Plaintiffs' interests, Technify remarkably argues that it is aligned with Plaintiffs with respect to its declaratory judgment claim regarding the Property at Issue.  Relying on a contorted argument and a wholly inapt case, Technify contends that because it has contracted with Defendants to purchase the property, "Technify is claiming that it owns the property at issue that Defendants currently possess" and thus both Technify and Plaintiffs "are asserting claims against the current possessor

of the property at issue that they actually own the property." Brief at 9. This ill-conceived argument ignores two fundamental facts. First, Superior contends that it owns the Property at Issue and that Defendants do not own the property. Thus, if Superior prevails, Technify – whose only right to potentially obtain the Property at Issue is through its contract with Defendants – flat loses. Thus, Technify cannot possibly be aligned with Superior. Second, Technify conflates concepts and ignores that Technify is not in a dispute with Defendants over whether *Technify or Defendants* own the rights to the property – they agree that those rights are controlled by the contract between Technify and Defendants. Rather, the dispute is whether *Superior or Defendants* own those rights. Because Defendants and Technify are clearly aligned on this issue that is at the core of all of Superior's claims, the Court should summarily reject Technify's baseless argument that it should somehow be aligned as a plaintiff.

Doubling down on its argument that it and the Plaintiffs are aligned despite the fact that they seek exactly opposite findings, Technify asks the Court to rely on *Chesapeake Louisiana, L.P. v. Buffco Production, Inc.*, 564 Fed. Appx. 751, 755 (5th Cir. 2014), which in no way supports Technify's position and, to the contrary, supports Defendants' position regarding alignment. In that case, the plaintiff, Chesapeake, paid $13.6 million to two defendants, Freeman and Buffco, for what Chesapeake believed was 100% of the working interests in an oil and gas property referred to as the Geisler Unit. When Chesapeake discovered that Freeman and Buffco owned only 47% of the working interests, Chesapeake sued Freeman and Buffco to recover 53% of the payment amount. Harleton Oil and Gas, which owned 50% of the working interests in the Geisler Unit intervened and sought to recover 50% of the payment made to Freeman and Buffco in exchange for the conveyance of its 50% interest to Chesapeake.

In addressing the alignment of the Intervenor, Harleton, the Fifth Circuit concluded that Harleton was aligned with the Plaintiff, Chesapeake, because both parties were seeking money from the Defendants and both parties sought Harleton's transfer of its interest to Chesapeake in exchange for 50% of the money paid to the defendants. The Fifth Circuit explained that both Chesapeake and Harleton "only wanted to recover money from [Defendants] to ensure that Harleton received payment and Chesapeake received Harleton's interest in the Geisler unit." *Id.* at 755. The Court further noted that "[w]hether this was done directly by [Defendants] paying Harleton who would then convey its interest to Chesapeake or by refunding part of Chesapeake's payment such that Chesapeake could then purchase Harleton's interest in practicality did not matter to Chesapeake or Harleton." *Id.*

Contrary to Intervenor's contention, *Chesapeake* supports the argument that, if alignment is necessary or proper, Technify is properly aligned with Defendants, not Plaintiffs, with respect to its declaratory judgment claim. Here, Defendants allege they own the Property at Issue and that they have contracted to sell that property to Intervenor. If the Court finds that Defendants own the Property at Issue, then they will – as Intervenor desires ("Technify's clear preference is to obtain the property that it purchased from Defendants when it entered into an agreement with Defendants in 2013"  (Brief at 8.)) – transfer the property to Intervenor. Thus, like Chesapeake and Harleton in the *Chesapeake* case, Defendants and Intervenor are seeking the same result:  a ruling that allows Defendants to transfer the property to Intervenor. Like Chaseapeake and Harleton then, Defendants and Intervenor are seeking the same result and their interests are aligned.

14

Technify's remaining "alternative" *claim*, which Technify admits is not a "primary claim," (Brief at 8, n. 4) is so clearly improper in this proceeding that it is nominal and alignment is not necessary. *See* Section II.A., *supra*.

Technify's second and "alternative" claim is also not relevant to the diversity analysis because it was fraudulently misjoined. Notice at ¶ 55. That claim involves an asset purchase agreement in 2013 between German entities that cannot possibly be considered to "arise" from the 2001 Supplier Agreement or any of the facts central to the dispute between Superior and Defendants. Moreover, the controlling agreement expressly provides that any disputes thereunder (such as Intervenor's claim in its second count) will be controlled by German law with venue exclusively in Germany. Courts in the Fifth Circuit routinely enforce forum selection clauses and dismiss cases in favor of the forum to which the parties agreed. *See, e.g., Int'l. Software Sys., Inc v. Amplicon, Inc.,* 77 F.3d 112 (5th Cir. 1996) (affirming dismissal of plaintiff's claims based on forum selection clause). Thus, in no event is the second claim by Intervenor against Defendants properly brought as part of the instant case.

### C.    Technify's Claims Are Fraudulently Joined

As set forth in Defendant's Notice of Removal, Intervenor's citizenship should also not be considered under a traditional fraudulent joinder analysis. Notice at ¶ 46; *see, e.g., Guillot v. Credit Suisse Boston, LLC,* No. Civ. A. 03-0797, 2005 WL 2037372 at *5 (E.D. La. July 21, 2005). A joinder is improper where "there is absolutely no possibility that the plaintiff will be able to establish a cause of action…" *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). "When a court addresses fraudulent joinder and determines whether there is any possibility that a plaintiff will be able to establish a cause of action against the in-state defendant, it looks for a reasonable possibility – not merely a theoretical one – that the plaintiff can establish a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305,

328 (5th Cir. 2002); *see also Oxford v. Williams Cos., Inc.*, 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001) (a plaintiff "cannot avoid finding of improper joinder by asserting a mere hypothetical possibility of a cause of action" against non-diverse defendant).   In this case, there is no reasonable possibility that Intervenor will be able to establish a cause of action against Defendants.

As set forth in Defendants' Motion to Dismiss and Objection to Intervenor's Claims and Brief in Support, Intervenor cannot avoid dismissal of its claims.   Thus, they are fraudulently joined and Intervenor's citizenship is irrelevant for purposes of assessing diversity.

## III.   Defendants Were Not Required to Obtain Technify's Consent

Intervenor argues in the alternative that Defendants' removal was procedurally defective because Defendants did not obtain Intervenor's consent.  Brief at 12.  Intervenor is in error.

First, it is well settled that Defendants are not required to obtain the consent of nominal parties.  14A Federal Practice and Procedure section 3731, at 507-8 (1985).  As discussed above, Technify is at best a nominal party and thus under no circumstances was its consent required.

Second, even if Technify was a legitimate party in this action, its consent as an intervenor is not required under the clear terms of the controlling statute. 28 U.S.C. § 1446, which sets forth the procedures for removal, provides that "when a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  Defendants here did not remove the case "solely under section 1441(a)" but rather removed the case under 28 U.S.C. § 1441(a) and 28 U.S.C. §§ 1334 and 1452.  Thus, the consent requirement contained in section 1446 is not triggered.

Third, even if section 1446 applied, consent is only required from "all defendants who have been properly joined and served."  Technify intervened and is not a defendant; nor was it properly joined or served.  Thus, section 1446 does not require Technify's consent.  Indeed, even

if an intervenor could be a "defendant" under section 1441(a) under certain circumstances, Technify does not meet those circumstances here because it was not "properly joined" as required by section 1441(a)'s clear language.  Specifically, as set forth in Defendants' Motion to Dismiss and Objection to Intervenor's Claims and Brief in Support, Technify is not a properly joined intervenor in this case.  Thus, under no circumstances was its consent required.

Intervenor does not (and cannot) cite a single case to support its novel argument that an intervenor's consent is required if the court aligns the intervenor with the defendants.  Instead, Intervenor cites a New York District Court opinion, *York Hannover Holding A.G. v. American Arbitration Association*, 794 F.Supp. 118 (S.D.N.Y. 1992), where the plaintiff argued that the *intervenor*, who removed the case, failed to properly get the consent of the *named defendant* in the case.  The case in no way addresses Technify's unsupported argument that a *defendant* must get the consent of an aligned intervenor.  Nor did the court, as Technify states, "classify[] intervenor and defendants together for purposes of unanimity of consent requirement."  Thus, the *York* case provides no support for Technify's position.

## IV.    The Chinese Plaintiffs

As set forth in detail in Defendants' Notice of Removal and in their Response to Plaintiffs' Motion to Remand, the Chinese Plaintiffs are fraudulently misjoined and fraudulently joined and their claim is removable under 28 U.S.C. §§ 1334 and 1452.  Although Technify primarily refers to Plaintiffs' Motion to Remand with respect to the fraudulent misjoinder issue, it elects to "briefly" address its arguments in any event.  Defendants therefore respectfully refer the Court to their arguments in response to Plaintiffs' Motion to Remand and will briefly respond to Intervenor's arguments, which add nothing new, below.

With respect to fraudulent joinder, Technify does not respond to the Insolvency Administrator's arguments as set forth in the Notice of Removal, but broadly asserts that the

17

Chinese Plaintiffs' claim is part of the same "series of transactions or occurrences" because all the claims "arise out of Defendants' conduct in handling the property at issue and its disposition of that property as to Plaintiffs and Technify." Brief at 14. But the Chinese Plaintiffs' claim concerns alleged misrepresentations and does not seek to determine rights to the Property at Issue. Even if it did, that would not render joinder proper. In *Nsight Technologies, LLC v. Fed. Ins. Co.,* Civ. Action NO. 3:09-cv-6-WHB-LRA, 2009 WL 1106868 (S.D. Miss. Apr. 23, 2009)*,* defendant Dove (a local defendant) had embezzled money from her employer, Nsight. *Id.* at *1. Defendant Federal had issued policies to Nsight to cover employee theft but had refused to pay on some of those policies. *Id.* Nsight brought suit against its former employee Dove for conversion; it also included claims against Federal for breach of contract and bad faith. *Id.* Federal removed, arguing that Dove's claims were fraudulently misjoined. *Id.* at *1-2. The district court agreed, finding that tort claims against Dove were not sufficiently related to the contract claims against Federal. *Id.* at *4-5. The court noted that the claims arose "out of separate allegations of wrongdoing occurring at separate times." *Id.* at *4.

A subsequent case (*Pride Transp., Inc. v. Harbin,* Civ. Action No. 4:10-CV-458-Y, 2010 WL 4314920 (N.D. Tex. Oct. 26, 2010), relied on by Plaintiffs) that distinguished *Nsight* noted that in *Nsight,* "the sole unifying characteristic of the plaintiff's claims was the underlying embezzlement." *Id.* at *4. Thus, as the *Pride* court pointed out, even where the claims had a common underlying fact (in *Nsight*, the embezzlement, and here the Property at Issue), the finding of fraudulent misjoinder was proper because the facts necessary to prove the claims were separate and the legal theories were separate. The same is true here. It is undisputed that the Chinese Plaintiffs' fraud claim arises solely out of the stock purchase in 2009 and the facts and law relevant to that claim are necessarily limited to the representations, if any (and none have

18

even been actually alleged), made specifically in connection with that sale.  On the other hand, Superior's claims are largely based in contract and intellectual property law and will be based on facts related to the contracts and course of dealing between the parties beginning with the Supplier Agreement in 2001.  Simply because there may be some minimal overlap of facts regarding the Property at Issue does not, of course, mean there are *common questions* of fact.  As Defendants pointed out in their Notice of Removal, the questions of fact in the Chinese Plaintiffs' stock fraud claim – e.g., what misrepresentations were made to the Chinese Plaintiffs to induce them to buy the stock – are not common to those in Superior's underlying claims regarding the property at issue – e.g., who owns the property.  The claims do not arise out of the same transaction or occurrence.

## V.       Bankruptcy Jurisdiction

In its brief, Technify for the most part refers to Plaintiffs' Motion to Remand with respect to the removal of the Chinese Plaintiffs' claim under 28 U.S.C. §§ 1334 and 1452.  Because Defendants fully brief those issues in response to Plaintiffs' Motion to Remand, they respectfully refer the court to their Response to Plaintiffs' Motion to Remand.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Intervenor's Motion to Remand be denied and that Defendants have any further relief to which they may be entitled.

Dated:  November 14, 2014

Respectfully submitted,

 /s/ Craig F. Simon
Craig F. Simon, Esq.
State Bar No. 00784968
Daniel P. Winikka, Esq.
State Bar No. 00794873
Matthew W. Ray, Esq.
State Bar No. 00788248
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX  75201
Telephone:  (214) 871-2292
Facsimile:  (469) 759-1699

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of November, 2014, a true and correct copy of the foregoing document has been served on the parties listed below via the Court's ECF filing system, first class mail or other appropriate means.

Counsel for Plaintiffs:

Jerry Alexander
James Adams
Christopher Robison
PASSMAN & JONES
1201 Elm Street, Suite 2500
Dallas, TX 75270

Counsel for Intervenor:

Ross Cunningham
Rose Walker LLP
3500 Maple Ave., Ste. 900
Dallas, TX 75219

/s/ Craig F. Simon
Craig F. Simon

20