<u>**Certified Translation from German to English**</u>



**Notary**

**DR. JUR. JOACHIM PUELS**

with office at

01277 Dresden, Baerensteiner Strasse 7

Phone: 0351 - 655 755 - 0
Fax: 0351 - 655 755 – 67

info@notar-puels.de
www.notar-puels.de

**Copy**

**Deed Role no. 1991 P 2013**

Notarized in Dresden on 22 July 2013

Before me, Junior Notary Annika Schwenk, deputy Notary of Notary Dr. Joachim Puels with office at 01277 Dresden, Baerensteiner Strasse 7, appeared today in the office of KUEBLER, Nieritzstrasse 14, 01097 Dresden, where I came to upon request:

1.   Attorney at law **Dr. Bruno M. Kuebler,**

with business seat Nieritzstrasse 14, 01097 Dresden, Germany,

acting in his capacity as insolvency administrator over the estate of

**Thielert** Aircraft **Engines GmbH** with its with its registered seat at St. Egidien, Germany, and business seat at Platanenstrasse 14, 09356 St. Egidien, Germany, registered with the commercial register of the local court of Chemnitz under HRB 16998;

2.   Business graduate Ms. **Luca Botica,**

with business seat at Platanenstrasse 14, 09356 St. Egidien, Germany,

here not acting in her own name but in her capacity as management board member with sole power of representation of

**CENTURION Aircraft Engines AG** with its registered seat at Dresden, Germany, and business seat at Nieritzstrasse 14, 01097 Dresden, Germany, registered with the commercial register of the local court of Dresden under **HRB** 27506, which itself is acting in its capacity as sole general partner of

**CENTURION Aircraft Engines AG & Co. KG** with its registered seat at St. Egidien, Germany, and business seat at Platanenstrasse 14, 09356 St. Egidien, Germany, registered with the commercial register of the local court of Chemnitz under HRB 6542;

3.   Attorney at law Dr. Florian Becker,

with business seat: Brienner Strasse 28, 80333 Munich, Germany,

not acting in his own name but based on a power of attorney, the original of which was presented to the acting notary today and of which the deputy notary produced a certified copy in the name and on behalf of

**Technify Motors GmbH** with its registered seat at Berlin, Germany, and business seat c/o Noerr LLP, Brienner Strasse 28, 80333 Munich, Germany, registered with the commercial register of the local court of Charlottenburg under HRB 145698 B.

The person appearing under 1. is personally known to the acting notary. The persons appearing under 2. and 3. identified themselves with their official identity cards.

In case this deed makes reference to the acting notary this shall be deemed a reference to notary Dr. Joachim Puels.

The translation in the right column shall only be a convenience translation; solely the German version of this text in the left column shall be legally binding.

Upon request of the notary public/deputy notary, the persons appearing under 1. through 3. above confirmed that neither the notary public nor any of the persons working with him have acted or are acting in the same matter for the persons appearing under 1. through 3. above or the persons represented by them, apart from acting in their capacity as a notary public.

The business purchase and transfer agreement relating to the assets of Thielert Aircraft Engines GmbH and, respectively, CENTURION Aircraft Engines AG & Co. KG, concluded between the persons represented by the persons appearing under 1. through 3. above on 01/13/2013, deed role no. 76 P/2013 of the notary Dr. Joachim Puels, was displayed during the notarization of this closing protocol, the content of it is known to the persons appearing, their right to have the deed read aloud and attached to this deed is waived. It is made reference to the previous deed. The junior notary explained the meaning of this waiver.

With deed No. 1989 P / 2013 dated 07/22/2013 of notary Dr. Joachim Puels with offices in Dresden (**"Reference Deed"**) the exhibits below have been notarized in order to make reference to them. It is made reference to the Reference Deed, the original of which was available at this notarization. The content of it is known to the Parties. The Parties waive the requirement to read out loud the Reference Deed, the exhibits contained in it as well as the attachment of the exhibits to this deed. The deputy notary has instructed about the meaning of this waiver.

The following list again gives an overview of the Exhibits that are contained in the Reference Deed.

The persons appearing under 1. through 3. above — acting as stated above — then requested the notarization of all of their following declarations:

**Closing Protocol**

regarding the

**Business Purchase and Transfer Agreement**

relating to assets of

**Thielert Aircraft Engines GmbH**

and

**CENTURION Aircraft Engines AG & Co. KG**

dated 01/13/2013

of notary Dr. Puels with offices in Dresden

---

## Table of Exhibits

| Exhibit | Title |
|---------|-------|
| Exhibit D 1 | Superior Claim Notification |
| Exhibit D 2 | Superior Motion |
| Exhibit 1.2 | Notification of the Buyer relating to the required approvals |
| Exhibit 1.3 | Notification of the Seller 1 relating to the separation of the TAE-Military Business |
| Exhibit 1.4 | Clearance Certificate by the BMWi |
| Exhibit 1.5 | Declaration of Daimler AG |
| Exhibit 1.6 | Notification of the Seller 1 relating to the approval of the creditors' committee |
| Exhibit 1.7 | Confirmation of the acting notary public |
| Exhibit 1.9 | Prepayments Received |
| Exhibit 1.10 | Prepayments Made |
| Exhibit 1.12(i) | Acknowledgment of receipt by Ostsaechsische Sparkasse |
| Exhibit 1.12(ii) | Acknowledgement of receipt by Dresdner Volksbank Raiffeisenbank eG |
| Exhibit 2.1 | Schedule of keys handed over |
| Exhibit 2.2 | Reduced bank guarantee |
| Exhibit 3.1(i) | Floor plans |
| Exhibit 3.1(ii) | Fixed movable assets |
| Exhibit 3.1(iii) | Current assets |
| Exhibit 3.5 | Orders |
| Exhibit 3.6(ii) | Deposit money |
| Exhibit 3.6(iii) | Vouchers |
| Exhibit 3.7(i) | Contracts and continuing obligations |
| Exhibit 3.7(ii) | Email Daimler regarding modification conditions |
| Exhibit 3.7(iii) | Extend bank guarantee Commerzbank AG |
| Exhibit 3.8 | Business Permissions scheduled to transfer |

**Closing Protocol**

between

1.    Attorney at law **Dr. Bruno M. Kuebler,** acting in his capacity as insolvency administrator over the estate of Thielert Aircraft Engines GmbH with its registered seat at Lichtenstein, Germany, and business seat at Platanenstrasse 14, 09356 St. Egidien, Germany, registered with the commercial register of the local court of Chemnitz under **HRB** 16998,

**("Seller 1" or "TAE-Insolvency Administrator");**

and

2.    **CENTURION** Aircraft **Engines AG & Co. KG** with its registered seat in St. Egidien, Germany, and its business seat at Platanenstrasse 14, 09356 St. Egidien, Germany, registered with the commercial register of the local court of Chemnitz under, HRA 6542,

**("Seller 2");**

**and**

3.    **Technify Motors GmbH** with its registered seat at Berlin and its business seat c/o Noerr **LLP,** Brienner Strasse 28, 80333 Munich, Germany, registered with the commercial register of the local court of Charlottenburg under HRB 145698 B,

**("Buyer");**

Seller 1 and Seller 2 jointly the **"Sellers";** Sellers and Buyer jointly the **"Parties"** and individually each the **"Party".**

**Preamble**

(A)    Attorney at law Dr. Bruno M. Kuebler has been appointed by court order of the local court of Chemnitz dated 07/01/2008 (File no. 1503 IN 1353/08) insolvency administrator over the estate of Thielert Aircraft Engines GmbH, registered with the commercial register of the local court of Chemnitz under HRB 16998.

(B)    On 01/13/2013, the Parties entered into a business purchase and transfer agreement relating to assets of the Insolvency Debtor and, respectively, the Seller 2, deed role no. 76 P/2013 of the acting notary public **("TAE-Purchase Agreement").**

(C)    Except for the conveyance of the real estate owned by the Insolvency Debtor, regarding to which Section 3 of the TAE-Purchase Agreement applies conclusively, the effectiveness of all transfers *in rem* pursuant to the TAE-Purchase Agreement, particularly the transfer of ownership of the movable assets, the assignment of claims and other rights as well as the assumption of agreements and other legal relationships is subject to the complete fulfilment of the Closing Conditions.

(D)    Superior Air Parts, Inc., a U.S. corporation with official seat in Texas and business address 621 South Royal Lane, Suite 100, Coppell, TX 750193805 **("Superior")** has with letter dated 07/09/2013 addressed to Seller 1, a copy of which attached as Exhibit **D 1,** as well as with a court filing (motion) to United States bankruptcy court, Northern district of Texas, Dallas division dated 07/11/2013, a copy of which is attached as

**Exhibit D 2,** claimed the return of certain tangible and intangible assets against Seller 1 that are allegedly owned by Superior (the **"Superior Claims"**). With regard to the making of the Superior Claims, Sellers have completely separated within the business of TAE all tangible and intangible assets, in particular current assets, tooling, documents and data regarding production and development, as well as other documents and data carriers, that embody production knowledge and know-how (together the **"Superior Part"**) and will not transfer the Superior Part to the Buyer, until it has been legally finally and unappealable decided or agreed on, if and to what extent the Sellers shall be entitled to transfer the Superior Part to the Buyer (the period between today and the date of this legally final and unappealable decision or agreement the **"Superior Clarification Period"**).

(E)     Given that the Parties could not reach agreement on the value of the Superior Part, the determination of this value and, therefore, how high the damages of the Buyer, if any, is in case the Superior Part cannot be transferred, the Buyer shall retain all the rights and claims, in particular claims for damages within the meaning of §§ 249 et seq. German Civil Code, in order to allow for him to go against the Seller because of this, whereby this is not an acknowledgment of any such claims by the Sellers, and whereby any such claims shall be limited in amount at a maximum of EUR 3,500,000.00.

(F)     The Parties now wish to consummate the transactions contemplated in the TAE-Purchase Agreement. For the purpose of clarification, the positions of the TAE-Military Business, the non-US-military business and the Superior Part are not affected by this consummation and this Closing Protocol does not comprise the transfer and assignment of the TAE-Military Business, the non-US-military business and the Superior Part. It is further clarified that the transaction contemplated in the TAE-Purchase Agreement and this Closing Protocol solely relates to the general aviation part of the business of the Insolvency Debtor and Seller 2.

NOW, THEREFORE, the Parties agree to the following (**"Closing Protocol"**):

§1
**Occurrence of the
Closing Conditions**

(1)     The Parties agree and herewith unanimously declare that the Closing Conditions have completely occurred. For reasons of precaution, the Parties herewith mutually waive the requirement of the occurrence of any Closing Condition not yet occurred.

(2)     The Closing Condition pursuant to Section 5 para. 2 lit. a) of the TAE-Purchase Agreement has occurred. The Buyer has informed the other Parties and the acting notary public in accordance with Exhibit 5 / 2 / a to the TAE-Purchase Agreement in writing that the competent authorities in the People's Republic of China have approved the TAE-Purchase Agreement.

As evidence, a copy of such notification is attached as **Exhibit 1.2** to this Closing Protocol.

(3)     The Closing Condition pursuant to Section 5 para. 2 lit. b) of the TAE-Purchase Agreement has occurred. The Seller 1 has informed the other Parties and the acting notary public in accordance with Exhibit 5 / 2 / b to the TAE-Purchase Agreement in writing that the TAE-Military Business has been separated from the remaining business of the Sellers or that no such separation is required.

As evidence, a copy of such notification is attached as **Exhibit 1.3** to this Closing Protocol.

(4)    The Closing Condition pursuant to Section 5 para. 2 lit. c) of the TAE-Purchase Agreement has occurred. The Clearance Certificate pursuant to Section 53 para. 3 German Foreign Trade Regulation has been granted by making reference to the application of the Buyer dated 13 June 2013.

As evidence, a copy of such Clearance Certificate is attached as **Exhibit 1.4** to this Closing Protocol. For precautionary reasons Seller 1 hereby confirms in accordance with his declaration in the letter dated 13 June 2013 to the Federal Ministry of Economics and Technology that the measures described there for the separation of the general aviation from the military business have been taken.

(5)    The Closing Condition pursuant to Section 5 para. 2 lit. e) of the TAE-Purchase Agreement has occurred. The declaration of Daimler AG to the transfer of the license agreement with the Insolvency Debtor to the Buyer has — satisfactory to the Buyer — been received.

As evidence, a copy of such declaration of Daimler AG is attached as **Exhibit 1.5** to this Closing Protocol.

(6)    The Closing Condition pursuant to Section 5 para. 2 lit. f) of the TAE-Purchase Agreement has occurred. The Seller 1 has notified the Seller 2, the Buyer and the acting notary in writing that the creditor's committee in the insolvency proceeding over the estate of the Insolvency Debtor has approved the TAE-Purchase Agreement.

As evidence, a copy of such written notification of the Seller is attached as **Exhibit 1.6** to this Closing Protocol.

(7)    The acting notary public has confirmed to the Buyer — with a copy to the Seller 1 — the occurrence of the circumstances and events referred to in Section 6 para. 3 of the TAE-Purchase Agreement.

As evidence, a copy of such written confirmation of the acting notary public is attached as **Exhibit 1.7** to this Closing Protocol.

(8)    The TAE purchase price amounting to EUR 35,000,000 (in words: Euro thirty-five million) and to be paid for all assets, rights and legal relationships including real estate and intangible assets sold by the Sellers under the TAE-Purchase Agreement has been paid by the Buyer fully and irrevocably

    a)    in the partial amount of EUR 2,500,000 (in words: Euro two million five hundred thousand) to the following trust account of the acting notary public

        Dresdner Volksbank Raiffeisenbank eG
        Banking Code: 850 900 00
        Account no.: 3753021913
        BIC: GENODEF1DRS
        IBAN: DE 6485 0900 0037 5302 1913

and

    b)    in the partial amount of EUR 32,500,000 (in words: Euro thirty-two million five hundred thousand) to the following bank account of the TAE-Insolvency Administrator

        Ostsaechsische Sparkasse Dresden
        Banking Code: 85050300
        Account No.: 3100339133
        BIC: OSDD DE 81 XXX

IBAN: DE16850503003100339133

(9)    Attached to this Closing Protocol as **Exhibit 1.9** is a chart relating to the prepayments received by the Sellers as per the Transfer Date and relating to services to be delivered after the Transfer Date ("**Prepayments Received**").

The parties agree that according to **Exhibit 1.9** the Prepayments Received are amounting to EUR 850,953.78 (in words: Euro eight hundred fifty thousand nine hundred and fifty-three and seventy-eight Eurocents). The Parties agree that the amount of the Prepayments Received shall not be paid in cash by the Sellers to the Buyer, but that they should be set-off against the Prepayments Made.

(10)   Attached to this Closing Protocol as **Exhibit 1.10** is a chart relating to the prepayments made by the Sellers as per the Transfer Date and relating to services to be received after the Transfer Date ("**Prepayments Made**").

The Parties agree that according to **Exhibit 1.10** the Prepayments Made are amounting to EUR 637,648.18 (in words: Euro six hundred thirty-seven thousand six hundred and forty-eight and eighteen Eurocent).

(11)   The amount resulting from the set-off amounting to EUR 213,305.60 (in words: Euro two hundred thirteen thousand three hundred and five and sixty Eurocent) shall be paid by Seller 1 to the Buyer to the following account of the Buyer:

Bank: Deutsche Bank
Banking Code: 870 700 24
Account No.: 0744639600

(12)   As evidence for the receipt of payment pursuant to § 6 para. 4 lit. b) of the TAE-Purchase Agreement, a copy of the acknowledgement of receipt by Ostsaechsische Sparkasse is attached as **Exhibit 1.12(1)** to this Closing Protocol. As evidence for the receipt of payment pursuant to § 6 para. 4 lit. a) of the TAE-Purchase Agreement, a copy of the acknowledgement of receipt by Dresdner Volksbank Raiffeisenbank eG is attached as **Exhibit 1.12(ii)** to this Closing Protocol.

### §2
### Performance of the
### Closing Actions

(1)    The Sellers have granted the Buyer access to all premises and buildings, in particular to all office premises, warehouses and production facilities, of the Insolvency Debtor and of CAE, by handing over to the Buyer all keys to these buildings, in particular to all office premises, warehouses and production facilities of the Insolvency Debtor and of CAE. The Sellers will further accompany the Buyer through a joint visit to all premises and facilities where assets are located which have been purchased by the Buyer pursuant to the stipulations of the TAE-Purchase agreement when he takes possession. As evidence for the handing over of all keys, a schedule of all keys handed over is attached to this Closing Protocol as **Exhibit 2.1.**

(2)    In exchange for the bank guarantee handed over at the signing of the TAE-Purchase Agreement the Buyer has handed over to Seller 1 pursuant to § 6 para. 7 of the TAE-Purchase Agreement a bank guarantee in the amount of EUR 6,650,000, a copy of which is attached as **Exhibit 2.2** to this Closing Protocol. The Seller 1 and the Buyer hereby each confirm the receipt of the respective bank guarantee.

### §3
### Transfer and Assignment of Fixed and
### Current Assets, Rights and Agreements

(1)   The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all fixed movable assets of the Insolvency Debtor and of CAE, including office and business equipment and data carriers and assets being used by virtue of former leasing agreements, that are located on the business and warehouse premises, which are framed in yellow on the floor plans attached as **Exhibit 3.1 (i)** to this Closing Protocol.

In particular, the Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all fixed movable assets referred to in **Exhibit 3.1 (ii)** to this Closing Protocol.

To the extent that the fixed movable assets are assets which are located on premises or in buildings that are owned by the Sellers which are framed in yellow on the floor plans attached as **Exhibit 3.1 (i)** to this Closing Protocol, the transfer of possession is being undertaken by way of granting access to the respective premises or buildings to the Buyer. To the extent that the fixed movable assets are in the possession of third parties, the Sellers, to the extent the respective Seller is entitled to do so, transfer and assign to the Buyer their respective restitution claims against such third party. To the extent the Buyer as of the Transfer Date has no possession of some or several fixed movable assets, the Sellers herewith declare to keep these respective fixed movable assets in custody for the Buyer by way of a substitute of the transfer of possession. To the extent the Sellers only own expectancy rights with respect to the fixed movable assets, the Sellers herewith assign and transfer to the Buyer, who herewith accepts such transfer and assignment, such expectancy rights.

The Parties herewith confirm that the transfer and assignment of the fixed movable assets has been consummated in accordance with Section 2 para. 1 lit. a) of the TAE-Purchase Agreement.

(2)   The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all current assets of the Insolvency Debtor and of CAE that are located on the business and warehouse premises, which are framed in yellow on the floor plans attached as **Exhibit 3.1 (i)** to this Closing Protocol.

In particular, the Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all current assets of the Insolvency Debtor and of CAE referred to in **Exhibit 3.2** to this Closing Protocol.

To the extent that the current assets are movable assets which are located on premises or in buildings that are owned by the Sellers which are framed in yellow on the floor plans attached as **Exhibit 3.1 (i)** to this Closing Protocol, the transfer of possession is being undertaken by way of granting access to the respective premises or buildings to the Buyer. To the extent that the current assets are in the possession of third parties, the Sellers, to the extent the respective Seller is entitled to do so, transfer and assign to the Buyer their respective restitution claims against such third party. To the extent the Buyer as of the Transfer Date has no possession of some or several current assets, the Sellers herewith declare to keep these respective current assets in custody for the Buyer by way of a substitute of the transfer of possession. To the extent the Sellers only own expectancy rights with respect to the current assets, the Sellers herewith assign and transfer to the Buyer, who herewith accepts such transfer and assignment, such expectancy rights.

The Parties herewith confirm that the transfer and assignment of the current assets has been consummated in accordance with Section 2 para. 1 lit. b) of the TAE-Purchase Agreement.

(3)   The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all rights from patents and patent applications, as well as from trademarks and trademark applications as well as all rights and obligations ARPX_010

connected therewith pertaining to the business of the Insolvency Debtor and of CAE.

The Parties herewith confirm that the transfer and assignment of all rights from patents and patent applications, as well as from trademarks and trademark applications as well as all rights and obligations connected therewith has been consummated in accordance with Section 2 para. 2 lit. a) of the TAE-Purchase Agreement.

(4)    The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all IT-products, software source codes and internet domains as well as licenses to software programs pertaining to the business of the Insolvency Debtor and of CAE, except, however for the separated pure military part of the businesses and the Superior Part.

The Parties herewith confirm that the transfer and assignment of all IT-products, software source codes and internet domains as well as licenses to software programs has been consummated in accordance with Section 2 para. 2 lit. b) of the TAE-Purchase Agreement.

(5)    To the extent legally permitted and subject to the granting of consent of the relevant contractual party, the Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all Orders referred to in **Exhibit 3.5** to this Closing Protocol. To the extent legally permitted and subject to the granting of consent of the relevant contractual party, the Buyer assumes any rights and obligations under the Orders.

The Parties herewith confirm that the transfer and assignment of Orders listed in **Exhibit 3.5** to this Closing Protocol has been consummated in accordance with Section 2 para. 3 of the TAE-Purchase Agreement.

(6)    The Buyer herewith assumes

(i)    all rights and obligations — including obligations resulting from the Service Bulletins that are listed in Exhibit 2/3/a (2) of the TAE-Purchase Agreement and the Service Bulletins to be issued by the Buyer after the Transfer Date — resulting from the Orders listed in **Exhibit 3.5,** as well as

(ii)    all existing obligations as per the Transfer Date regarding the repayment of deposits that have been paid by a customer to one of the Sellers in connection with a redemption agreement out of the Orders listed in **Exhibit 3.6 (ii),** as well as

(iii)    all existing obligations as per the Transfer Date arising from vouchers issued by any of the Sellers to customers existing as set out in **Exhibit 3.6 (iii),** as well as

(iv)    any obligations arising from agreements relating to the delivery of goods and services, the main obligations of which have already been fulfilled prior to the Transfer Date, in particular based on Service Bulletins, whereby the taking over of obligations and release regarding Service Bulletins shall however be limited to the Service Bulletins listed in Exhibit 2 / 3 / a (2) and the Service Bulletins to be issued by the Buyer after the Transfer Date,

and in each case taking into account the limitations for the taking over of liabilities in the TAE-Purchase Agreement. Obligations based on statutory product liability will, however, not be taken over by the Buyer, but remain with the Sellers.

The Parties herewith confirm that the assumption of the obligations regarding the Orders listed in Exhibit 2 / 3 / a (3) to the TAE-Purchase Agreement and, respectively, listed in **Exhibit 3.5** and **Exhibit 3.6** to this Closing Protocol has been consummated as of the Transfer Date.

(7)     To the extent legally permitted and subject to the granting of consent of the relevant contractual party, the Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all contracts and continuing obligations, particularly agreements with suppliers, referred to in **Exhibit 3.7 (i)** to this Closing Protocol. To the extent legally permitted and subject to the granting of consent of the relevant contractual party, the Buyer assumes any rights and obligations under such all contracts and continuing obligations.

The Parties herewith confirm that the transfer and assignment of contracts and continuing obligations listed in **Exhibit 3.7 (i)** to this Closing Protocol has been consummated in accordance with Section 2 para. 4 of the TAE-Purchase Agreement. The Parties are in agreement that the aforementioned confirmation regarding the transfer and assignment of contracts and continuing obligations regarding the order at Daimler AG no. B 5122531 as listed in **Exhibit 3.7 (i)** relates to the order with the amended conditions pursuant to the email of Daimler AG to Seller 1 of 26 June 2013, a copy of which is attached as **Exhibit 3.7 (ii)** hereto, and that the obligation of Buyer for the release and hold harmless regarding the bank guarantee of Commerzbank AG (pursuant to § 2 para. 5 sentence 4 of the TAE-Purchase Agreement) relates to the bank guarantee of Commerzbank AG the term of which has been extended until 30 September 2013, a copy of which is attached as **Exhibit 3.7 (iii).**

(8)     The Parties are in agreement that — to the extent legally permitted — all permissions relating to assets or operations sold pursuant to the TAE-Purchase Agreement in connection with this Closing Protocol **("Business Permissions")**, in particular the Business Permissions, Type Certificates and Supplement Type Certificates pursuant to **Exhibit 3.8** shall transfer to the Buyer or shall be granted again to the benefit of the Buyer. In this regard, the Sellers shall be obliged to support the Buyer for a reasonable period of time after the Transfer Date — however, only to the extent legally permissible — and in particular issue all legally possible and reasonable declarations, particularly consent declarations, in order to promote the assignment of the Business Permissions or the re-granting for the Benefit of the Buyer. The Sellers shall not be obliged to take over any financial obligations, liabilities or warranties vis-à-vis third parties in this respect; the Sellers shall also not be liable for the assignment or the re-granting of the Business Permissions.

## §4
## Transfer of Know-how and customer base

(1)     The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all business documents relating to the assets, rights and legal relationships sold under the TAE-Purchase Agreement and available to the Sellers. These are comprised of all development, manufacturing and production knowledge as well as all know-how of the Sellers regarding the products made or methods used in the business operations of the Insolvency Debtor or the Sellers, including a complete customer data base with all data existing in the respective business of the Sellers, except, however, for the separated pure military part of the businesses and the Superior Part.

(2)     To the extent that such available business documents are located on premises or in buildings that are owned by the Sellers, the transfer of possession is being undertaken by way of granting access to the respective premises or buildings to the Buyer. To the extent such business documents are located with third parties, the Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, any restitution claims and access rights against such third parties.

## §5
## Confirmation of Closing

(1)     The Parties herewith, pursuant to Section 5 para. 6 of the TAE-Purchase Agreement,

confirm vis-à-vis each other the occurrence of all Closing Conditions and the performance of all closing actions.

(2)   To the extent assets, rights or legal relationships sold pursuant to the TAE-Purchase Agreement have not been validly transferred and assigned to the Buyer under or in connection with this Closing Protocol or in the agreements to which reference is made in this Closing Agreement or which are attached to this Closing Agreement, the Parties shall undertake to jointly effect the valid transfer of such assets, rights or legal relationships to the relevant Party entitled to such acquisition under the TAE-Purchase Agreement, whereby the Parties are in agreement that the TAE-Purchase Agreement solely relates to the general aviation part of the business of the Insolvency Debtor and Seller 2.

## §6
## Amendments to the TAE-Purchase Agreement

(1)   Given that the Superior Part shall be excluded from the closing pursuant to this Closing Protocol and taking into account the intention of the Parties as set out in lit. D) and E) of the Preamble, the Parties mutually agree to amend the TAE-Purchase Agreement as described in para. 2 below.

(2)   Deviating from the provisions and restrictions in Section 7 of the TAE-Purchase Agreement, the Parties hereby agree, that the Buyer shall have and retain any and all potential rights and claims, in particular claims for damages within the meaning of §§ 249 et seq. German Civil Code, that he might have, based on any legal reason whatsoever, against any of the Sellers, because the Superior Part is sold pursuant to the TAE-Purchase Agreement cannot be transferred to the Buyer today. Any such rights and claims of the Buyer within the meaning of this para. 2 shall be limited in amount to a total amount of EUR 3,500,000.00. Insofar, the Buyer retains all the rights and claims he may have, what is hereby acknowledged by the Sellers. The Seller shall be entitled to transfer at the end of the Superior Clarification Period all or some of the assets that form the Superior Part to the Buyer; a respective transfer has to be taken into account reducing when calculating any damages.

(3)   The Parties are in agreement that the limitation of the Clearance Certificate pursuant to Section 53 para. 3 German Foreign Trade Regulation of 27 June 2013 with regard to the general aviation part of the business only and the limitations resulting therefrom for the transfer pursuant to this Closing Protocol by taking out the entire military part of the business shall not affect the amount of the TAE- Purchase Price.

(4)   Deviating from the TAE-Purchase Agreement the Parties hereby agree that the sale and transfer of all assets, rights and legal relationships pursuant to the TAE-Purchase Agreement shall take place with economical effect as of 00.00 hours beginning of this day.

## §7
## Miscellaneous

(1)   The defined terms and definitions used in this Closing Protocol shall, to the extent that they are not expressly otherwise defined herein, have the same meaning defined in the TAE-Purchase Agreement.

(2)   This Closing Protocol, in combination with Section 3 (regarding the TAE-Real Estate) and Section 5 of the TAE-Purchase Agreement, confirms additionally all agreements of the Parties with respect to the consummation of the transaction regulated in the TAE-Purchase Agreement, except for TAE-Military Business and other positions not related to the general aviation business. In case of doubt, the provisions of the TAE-Purchase Agreement are decisive. In case not expressly regulated differently in this Closing Protocol, the provisions of the TAE-Purchase Agreement remain unaffected and applicable. No side agreements exist. Amendments and / or additions require the written

APPX_013

form, unless a stricter form is required by mandatory law. This also applies with respect to amendments and / or additions of this requirement of written form.

(3)     In case, some provisions of this Closing Protocol be or become completely or in part invalid or impracticable, or in case that this Closing Protocol contains gaps, this does not affect the validity of the remaining terms of this Closing Protocol. Instead of the invalid or impracticable provision or for the remedy of the gap an appropriate provision is to be agreed on which — if legally possible — comes closest to the purpose the Parties had originally intended to achieve if they had considered the issue.

(4)     This Closing Protocol is subject to the laws of the Federal Republic of Germany.

(5)     With regard to the content and for the construction of this Closing Protocol as well as in case of discrepancies between the German and the English version hereof, the German version prevails.

The notary costs associated with this notarization as well as the Reference Deed shall be borne by the Buyer. The costs for approving the Reference Deed are borne by the Seller 1. The costs associated with the advisors for the preparation of this deed as well as the costs associated with the fulfilment of the own obligations shall be borne by each of the Parties.

Of this deed:

        Certified copies shall:

        -     each of the Parties;

        Two (electronic) copies:

        -     each of the Parties

A single (electronic) copy:

Dr. Florian Becker, Noerr LLP, Brienner Strasse 28, 80333 Munich.

This deed was read out to the persons appearing by the acting deputy notary, approved by them and personally signed by the person appearing and the acting deputy notary as follows:

/4 signatures/

/notary seal/



Certified Copy
District Court
Chemnitz

File reference:
1503 IN 1353/08

Insolvency Court

Chemnitz, 07/01/2008

# Certification

In the insolvency proceedings regarding the assets of

Thielert Aircraft Engines GmbH, represented by the managing director, Frank Thielert,
Platanenstrasse 14, 09350 Lichtenstein
HRB 16998, District Court Chemnitz, Register Court

                                                    - Debtor -

Mr. Attorney at law Dr. Bruno M. Kuebler,

Kassbergstrasse 24, 09112 Chemnitz
        Phone:          (03 71) 31 33 73
        Fax:            (03 71) 31 33 75
        Internet:       chemnitz@kuebler-gbr.de


was appointed as insolvency administrator.


/seal/
Judge at the District Court     Free State of Saxony
                                District Court Chemnitz

I hereby certify that the above copy is a true copy of the original.

Dresden, 22nd July 2013

Junior Notary Annika Schwenk, deputy Notary of Notary Dr. Joachim Puels

Certified copy

## Power of Attorney

The undersigned, a limited liability company, registered with the commercial register of the local court of Berlin under HRB 145698 B, with business address Friedrichstrasse 13, c/o VRB Vor-ratsgesellschaften GmbH, 10117 Berlin, Germany,

(hereinafter **the "Company"**)

**hereby grants to**

**Dr. Florian Becker,**
**Martin Nigl,**
**Dr. Ralph Schilha,**
**Annette Weber**

each with business address
Noerr LLP, Brienner Strasse 28, 80333 Munich, Germany,

(herein after **the "Representatives"**),

each of them individually, the power to represent the Company at the purchase and acquisition of any kind of assets belonging to the business operations of Thielert Aircraft Engines GmbH or, respectively, of CENTURION Aircraft Engines AG & Co. KG from

1. **Attorney at law Dr. Bruno M. Kuebler,** acting in his capacity as insolvency administrator over the estate of Thielert Aircraft Engines GmbH with its registered seat at Lichtenstein, registered with the commercial register of the local court of Chemnitz under HRB 16998 (hereinafter "TAE"),

   (hereinafter the **"Seller 1"**)

2. **CENTURION Aircraft Engines AG & Co. KG**

   (hereinafter the **"Seller 2"**; Seller 1 and Seller 2 jointly the **"Sellers"**)

This power of attorney in particular relates to, but is not limited to,

– the negotiation, the conclusion and execution of a notarized business purchase and transfer agreement with the Sellers and relating to the purchase of all or some of the assets pertaining to the business operations of TAE, in particular tangible and in-tangible assets, real estate owned by TAE as well as legal relationships existing, including business relationships and new customer orders (hereinafter the **"TAE-Purchase Agreement"**),

– the negotiation and the agreement on purchase prices, securities for the purchase price, guarantees and exclusions from guarantees and liability, rights of withdrawal and preemption as well as the negotiation and execution of closing protocols and further annexes with respect to the TAE-Purchase Agreement,

APPX_017

– any modifications (also with respect to the purchase price and object of the TAE-Purchase Agreement), amendments and extensions to the TAE-Purchase Agreement as well as to closing protocols and further annexes with respect to the TAE-Purchase Agreement,

– the issuance and the receipt of any declarations relating to the TAE-Purchase Agreement, particularly, but not limited to, the declaration of withdrawal from the TAE-Purchase Agreement, as well as closing protocols and further annexes with respect to the TAE-Purchase Agreement,

– the issuance and the receipt of any further declarations relating to the conclusion and execution of the TAE-Purchase Agreement, in particular, but not limited to, of procedural declarations and public-law applications as well as the performance of any actions in connection herewith.

Each of the Representatives is individually authorized to take all steps and make all statements deemed necessary or desirable by the respective Representative in this context in their absolute discretion. Each of the Representatives is authorized to grant sub-powers of attorney to the same.

Each of the Representatives is exempt, to the extent permitted by law, from any personal liability.

This power of attorney shall be subject to the laws of the Federal Republic of Germany.

The German version of this power of attorney shall prevail in case of doubt; the English version is a convenience translation.

_____  _____

Berlin,            12.12.2012

Managing director with sole power of representation of **Brillant 1578. GmbH**

<u>Number R 835 of the Roll of Deeds for the year 2012</u>

I hereby certify that the signature signed before me on the previous page is the true personal signature of

Ms. Julia **Vieth,** born on 1 October 1969,

who identified herself by her valid identity card and with business address at

Friedrichstrasse 133, 10117 Berlin.

I have explained the prohibition of involvement pursuant to Sec. 3 para. 1 no. 7 Notarization Act (Beurkundungsgesetz). My question pertaining to prior involvement within the meaning of this provision was answered in the negative.

Berlin, 12 December 2012

(Rosch)
Notary

Bill pursuant to §§ 141,154 Schedule of Costs (KostO)
<u>Transaction value pursuant to § 41 KostO: over 310,000,00 EUR</u>

| | |
|---|---:|
| Notarization fee §§ 32, 45 (1) KostO | 130.00 EUR |
| Flat fee for documents §§ 136, 152 KostO | 2.50 EUR |
| Fees for postal service §§ 152 II no. 1 a and b KostO | <u>1.00 EUR</u> |
| | 133.50 EUR |
| 19 % VAT | <u>25.37 EUR</u> |
| | <u>158.87 EUR</u> |

Notary

1796653801

APPX_019

I hereby certify that the above copy is a
true copy of the original.

Dresden, 22nd July 2013



Junior Notary Annika Schwenk,
deputy Notary of Notary Dr. Joachim
Puels

## Notarial attestations of power of representation
## according to § 21 Abs. 1 Nr. 1 BNotO

1.  Upon inspection of the respective electronic Commercial Register on 22 July 2013
    I certify that the CENTURION Aircraft Engines AG & Co. KG is registered with the
    Local Court of Chemnitz — Commercial Register — under HRA 6542 and that Mrs.
    Luca Botica is entitled to act alone as a legal representative of CENTURION
    Aircraft Engines AG (Local Court of Dresden — Commercial Register — under
    HRB 27506). The latter is entitled to act alone as a legal representative of
    CENTURION Aircraft Engines AG & Co. KG.

2.  Upon inspection of the electronic Commercial Register on 22 July 2013 I certify
    that the Technify Motors GmbH is registered with the Local Court of Berlin
    (Charlottenburg) — Commercial Register — under HRB 145698 B and that Mr.
    Kenneth Robert Suda and Mrs. Shan Tian are entitled to act together as this
    company's legal representative.

    Further I certify that the shareholders' meeting on 12.12.2012 decided the change of
    name from Brillant 1578. GmbH to Technify Motors GmbH. On 12 December 2012
    Mrs. Julia Vieth was registered as Managing Director.

Dresden, 22nd July 2013

Junior Notary Annika Schwenk, deputy Notary of Notary Dr. Joachim Puels

# Kathi Stock

*- Certified Translator; Certified by the State of Saxony, Germany -*
*- Licensed Court Interpreter of the State of Texas, USA –*
*- Accredited Translator by the U.S. Department of State -*

**917 Golden Grove Drive**
**Lewisville, TX 75067**
**U.S.A.**

- Member of the American Translator's Association (ATA) and the National Association of
Judiciary Interpreters and Translators (NAJIT) -

Tel: 214-995-1164          Fax: 214-292-9707                   email: Kathi.Stock@gmail.com

# CERTIFICATE OF TRANSLATION

In my capacity as a public certified translator and licensed court interpreter for English/German,
I, Kathi Stock, hereby certify that the foregoing is a true and complete English translation of the
document submitted to me in German language.

Kathi Stock

Date: November 5, 2014