IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPERIOR AIR PARTS, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:14-cv-3492-D |
| | § | |
| BRUNO KÜBLER, AS INSOLVENCY ADMINISTRATOR et al., | § | |
| | § | |
| Defendants, | § | |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS

COME NOW Superior Air Parts, Inc. ("*Superior*"), Weifang Freesky Aviation Technology Co., Ltd. ("*Freesky*"), and Superior Aviation Beijing Co., Ltd. ("*SAB*") and file this Reply Brief in Support of Plaintiffs' Motion to Dismiss ("*Motion to Dismiss*" Dkt. 8).

### I.   INTRODUCTION

Defendant Thielert Aircraft Engines GmbH ("*TAE*") machined aircraft engine replacement parts for Plaintiff Superior Air Parts, Inc. ("*Superior*") pursuant to a supplier relationship from 2001 to 2013. Pursuant to such relationship and various written agreements throughout the relationship, Superior entrusted TAE with Superior's technical data and information to be used solely to assist Superior. Unknown to the Plaintiffs, TAE and Kübler[1] improperly used Superior's technical data and information to create hundreds of 3D models, 2D drawings, and possibly machine instructions ("*Property At Issue*")[2] not only for parts that TAE manufactured for Superior, but also for hundreds of other parts designed and sold by Superior.

---

[1] TAE was placed into an insolvency proceeding in Germany in 2008, and Defendant Bruno Kübler was appointed TAE's insolvency administrator. TAE and Kübler are collectively referred to herein as "*Defendants*."

[2] In its Response, Technify attempted to create a new category of property at issue (*i.e.* the "Additional Related Property"), but Plaintiffs' claims include *any* property that incorporates, comprises, or was created using Superior's technical data and information, potentially including machining instructions and data carriers.

In 2013, while Superior was still doing business with TAE and Kübler, Kübler attempted to secretly sell the Property At Issue containing Superior's technical data and information to Technify Motors GmbH ("*Technify*"), a company in the Continental Motors Group, one of Superior's largest competitors. Apparently recognizing the impropriety of the attempted sale, Kübler and Technify purportedly carved out the Property At Issue from the rest of the sale, agreeing that if a court determines Kübler is not entitled to transfer Superior's property, Technify may assert any claims it may have against Kübler up to a maximum of EUR 3,500,000.

The Plaintiffs sued TAE and Kübler in Texas state court asserting nine causes of action. Technify attempted to intervene into this lawsuit. **Both** the Plaintiffs and Defendants moved to dismiss the intervention. As discussed below, Technify lacks a direct, substantial and legally protectable interest in the dispute between the Plaintiffs and Defendants required for intervention as a matter of right. Alternatively, if Technify possesses the requisite interest, TAE and Kübler will adequately represent such interest. Moreover, Technify has not demonstrated federal subject matter jurisdiction over the "claims" it attempts to interject through its putative intervention.

## II.   ARGUMENT AND AUTHORITIES

A.   **Technify is Not Entitled to Intervene as a Matter of Right.**

   i.   **Technify Bears the Burden of Proof.**

An applicant for intervention as a matter of right must show: (1) a timely application to intervene; (2) a legally protectable interest relating to the property or transaction which is the subject of the action; (3) protection of the interest may be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party.[3] As putative

---

[3] *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir. 1984).

intervenor, Technify bears the burden of establishing all four elements, including its alleged protectable interest in the proceeding.[4]

### ii.  Technify has not satisfied its burden of showing a direct, substantial, legally protectable interest in the property made the subject of this proceeding.

In order to intervene as a matter of right, a party must have a "direct, substantial, legally protectable interest in the proceedings."[5] The interest asserted must be one "belonging to or...owned by the applicant."[6] "By definition, an interest is not direct when it is **contingent** on the outcome of a subsequent lawsuit."[7] To determine whether a potential intervenor has a legally protectable interest in the proceedings, the courts look to substantive law.[8]

In its Response, Technify does not identify whose substantive law governs its alleged protectable interest in the proceeding.[9] Instead, Technify simply argues it satisfies Rule 24(a)'s "interest" requirement because "Technify purchased the Property At Issue from Kübler."[10] Technify's argument is incorrect, both factually and legally.

First, Technify's argument is based solely upon a single paragraph of the "Closing Protocol" between Technify and the Defendants pertaining only to Defendants' *transfer of possession* of the Property at Issue, to wit:

> …With regard to the making of the Superior Claims, Sellers have completely separated within the business of TAE all tangible and intangible assets, in particular current assets, tooling, documents and data regarding production and development, as well as other documents and data carriers, that embody production knowledge and know-how (together the "**Superior Part**") **and will not transfer** the Superior Part to the Buyer, **until** it has been legally finally and

---

[4] *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir.2004) ("The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met.").
[5] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc).
[6] *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996).
[7] *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) (emphasis added).
[8] *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987).
[9] To the extent Technify contends German law applies to the determination of whether or not it has a direct interest in the property at issue in this litigation, Plaintiffs note that no such law is cited in Technify's Response.
[10] *See* Brief, Dkt. 18, p. 6.

> unappealable [sic] decided or agreed on, **if and to what extent** Sellers shall be entitled to transfer the Superior Part to the Buyer…[11]

In other words, the provision Technify relies upon to prove its direct interest in the property simply sets a time in the future at which the "Superior Part" *might* be transferred to Technify; *i.e.* the Superior Part will be transferred *if* it is "finally and unappealable [sic]" decided that the Defendants (*i.e.* Sellers) may transfer it. The paragraph cited by Technify is not sufficient to establish the requisite interest for intervention as a matter of right.[12]

Moreover, at least two provisions of the Closing Protocol specifically **carve out** the "Superior Part" from the conveyances made by the Defendants to Technify. For example:

> The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all IT-products, software source codes and internet domains as well as licenses to software programs pertaining to the business of the Insolvency Debtor and of CAE [sic], **except**, **however for** the separated pure military part of the businesses and **the Superior Part**.
>
> *****
>
> The Sellers herewith transfer and assign to the Buyer, who herewith accepts such transfer and assignment, all business documents relating to the assets, rights and legal relationships sold under the TAE-Purchase Agreement and available to the Sellers. These comprises [sic] of all development, manufacturing and production knowledge as well as all know-how of the Sellers regarding the products made or methods used in the business operations of the Insolvency Debtor or the Sellers, including a complete customer data base with all data existing in the respective business of the Sellers, **except, however, for** the separated pure military part of the businesses and **the Superior Part**.[13]

In short, the "Closing Protocol" (the only document upon which Technify relies to establish a protectable interest) (1) conditions the transfer of the Superior Part to Technify upon a final and unappealable court order or agreement; and (2) specifically excepts the Superior Part

---

[11] *See* Technify Appendix, Dkt. 20, p. 13 (emphasis added).
[12] *See, e.g., St. John's Univ., N.Y. v. Bolton*, 450 Fed. Appx. 81, 84 (2d Cir. 2011) (intervention denied when putative intervenor's alleged interest was contingent on plaintiff's success in underlying action and success in separate action).
[13] *See* Technify Appendix, Dkt. 20, pp. 25, 30 (emphasis added); *see also* Technify Appendix p. 14 ("The parties now wish to consummate the transactions contemplated in the TAE-Purchase Agreement. **For purpose of clarification, the position[] of the…Superior Part [is] not affected by this consummation and this Closing Protocol does not comprise the transfer and assignment of…the Superior Part**.") (emphasis added).

from the transfers and assignments made by the Defendants to Technify. Accordingly, Technify's argument that it "purchased" the Property At Issue is factually incorrect, and Technify has not met its burden of showing that it has a direct interest in the property at issue in this litigation.

Technify's argument that it has a protectable interest in the proceeding is also legally incorrect because Technify's alleged interest is not direct; rather, it is contingent and wholly derivative of the rights of the Defendants, if any, to the Property At Issue.[14] For example, the provision of the Closing Protocol cited in Technify's Brief expressly states the Defendants cannot transfer the "Superior Part" to Technify "**until** it has been legally finally and unappealable [sic] decided or agreed on, **if and to what extent** Sellers [*i.e.* the Defendants] shall be entitled to transfer the Superior Part to the Buyer."[15] This provision is entirely consistent with the conveyances in the Closing Protocol, above, which expressly carve out the "Superior Part."

In sum, Technify's alleged interest is contingent, derivative of the Defendants' interest (if any), and is wholly dependent on Defendants' success in this litigation. Under the Fifth Circuit's standard, a contingent interest is not a direct interest sufficient to support intervention as a matter of right.[16] Accordingly, Technify's Petition in Intervention should be dismissed.[17]

Finally, the Fifth Circuit has stated that "[i]ntervention is generally not appropriate where the applicant can protect its interests and/or recover on its claim through some other means."[18] Here, Technify not only has other means to recover on its claims, it has, according to Defendants,

---

[14] Moreover, as a stranger to the Superior/TAE/Kübler relationship, Technify will have nothing to contribute in resolving the merits of the dispute between Plaintiffs and Defendants.
[15] *See* Technify Appendix, Dkt. 20, p. 13 (emphasis added).
[16] *Ross*, 456 F.3d at 443.
[17] *See Langone v. Flint Ink North America Corp.*, 231 F.R.D. 114, 119 (D. Mass. 2005); *Restor-A-Dent*, 725 F.2d at 875 (proposed intervenor's interest not direct when it depended both on plaintiff's successful recovery in the action and resolution of a second litigation to determine the proposed intervenor's rights); *Katz v. Berisford Int'l PLC*, No. 96 Civ. 8695 (JGK), *available at* 2000 WL 1760965, at *5 (S.D.N.Y. Nov. 30, 2000) ("The possibility that a party will establish an interest in a judgment through a pending lawsuit in another court is a contingent interest.").
[18] *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir.1994).

contractually agreed to await the outcome of this case and then, if necessary, sue Defendants in Germany for liquidated damages. Intervention should also be denied on this basis alone.

### iii. Technify Failed to Meet Its Burden of Establishing Inadequate Representation.

Technify, as the putative intervenor, has the burden of establishing that its purported interest is not adequately represented by the existing parties to this suit.[19] In situations, like here, "when the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is *presumed* to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance."[20] In its Response, Technify did not cite **any** evidence or legal authority to support the proposition that Defendants do not adequately represent Technify's purported interest. Therefore, Technify plainly failed to meet its burden.

Technify argues its purported interest cannot possibly be adequately represented by Kübler because they do not share the same ultimate objective.[21] According to Technify, Kübler's objective is to avoid paying damages, whereas Technify's objective is broader in that Technify seeks to ensure the property it attempted to purchase may be used unencumbered.[22] Technify further argues this broader objective makes its interest adverse to Kübler's interest.[23] The Fifth Circuit has twice before rejected variations of these same arguments.

In *Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Commissioners of the Orleans Levee District*, a group of property owners sued the Levee Board seeking money damages for an alleged expropriation of their land without appropriate consideration.[24] After the plaintiffs obtained a money judgment against the Levee Board and began taking steps to execute

---

[19] *Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Commissioners of the Orleans Levee District*, 493 F.3d 570, 578 (5th Cir. 2007).
[20] *Id.* at 578-79 (emphasis added).
[21] Technify Response [Dist. Doc. No. 18] at p. 9.
[22] *Id.* at pp. 9-10.
[23] *Id.* at 10.
[24] *Haspel* 493 F.3d at 573.

on the judgment, the State of Louisiana sought to intervene in order to enforce a state law prohibiting the seizure and garnishment of public property and funds.[25] The State attempted to justify its intervention in the lawsuit by arguing that its interest was not adequately represented by the Levee Board insofar as the Levee Board's objective was simply to avoid a money judgment, whereas the State's objective was to prevent the seizure of public property and funds in satisfaction of *any* judgment, not just the judgment against the Levee Board.[26] The Fifth Circuit rejected the State's argument, holding:

> [E]ven assuming that the State's interest is broader than that of the Levee Board, the more narrow issue regarding the execution of the judgment against the Levee Board is the only matter currently before us. Thus, the Levee Board and the State have the same ultimate objective in this case.[27]

A similar conclusion was also reached in *Kneeland v. National Collegiate Athletic Ass'n*. There, various media plaintiffs, including the Dallas Morning News, filed suit pursuant to the Texas Open Records Act (TORA) to compel the NCAA and the Southwest Conference (SWC) to produce documents related to the NCAA's investigation of the recruiting practices of SWC members, specifically Southern Methodist University (SMU).[28] SMU and Rice University, both members of the NCAA and SWC, filed motions to intervene that were denied by the trial court on the basis that the NCAA and SWC adequately represented SMU's and Rice's interests.[29] On appeal, the Fifth Circuit upheld the trial court's rulings.[30]

The Fifth Circuit started its analysis by noting that because the NCAA and SWC shared the same ultimate objective as SMU and Rice—to prevent disclosure of the requested documents—intervention of right would only be proper if SMU and Rice showed an adversity of

---

[25] *Id.* at 574.
[26] *Id.* at 579.
[27] *Id.*
[28] *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1286 (5th Cir. 1987).
[29] *Id.* at 1286-87.
[30] *Id.* at 1288-89.

interest, collusion, or nonfeasance.[31]  SMU and Rice attempted to meet their burden by arguing their interests in the requested documents differed from and were greater than the NCAA and SWC's interests.[32]  The Fifth Circuit rejected this argument, holding that while SMU and Rice may have a "different" or "greater" interest in the litigation, they failed to show an "adversity of interest" with the NCAA and SWC.[33]

Pursuant to the foregoing precedent, Technify has failed to meet its burden.  First, both Defendants and Technify share the ultimate objective to obtain a ruling in this case that allows them to consummate their transaction regarding the Property At Issue.  Second, even assuming, *arguendo*, Technify's objective regarding the use of the Property At Issue is broader than Defendants' objective does not mean the Defendants cannot adequately represent Technify's limited interest presented in this lawsuit.  Assuming further, *arguendo*, that Technify's purported interest in the Property At Issue is different or even greater than Defendants' interest is of no legal consequence because Technify's and Defendants' interests are certainly not adverse.  For these reasons, Defendants and their counsel are able to adequately represent Technify's purported interest in the Property At Issue with respect to the issues presented in this lawsuit.

**B.    Permissive Intervention is Improper Because the Court Lacks Subject Matter Jurisdiction Over Technify's Claims.**

An intervenor seeking to permissively intervene pursuant to Rule 24(b) bears the burden of establishing the court's subject matter jurisdiction over each of its claims.[34]

Here, Technify putatively asserts two claims: (1) a request for declaratory judgment against Superior and the Defendants, which "asks the Court to determine the respective rights of

---

[31] *Id.*

[32] *Id.*  In particular, SMU and Rice argued that the requested documents pertained specifically to *their* recruiting practices and also that, as private universities, they were not subject to TORA.

[33] *Id.*

[34] *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 633 (7th Cir. 2003).

Superior, Kübler and Technify to the Property At Issue in the possession, custody and control of Kübler;" and (2) a breach of contract claim against Kübler.[35] As an intervenor, Technify bears the burden of establishing the Court's jurisdiction over both claims. Technify cannot meet its burden; therefore, its Petition in Intervention should be dismissed.

      **i.     Federal question jurisdiction not at issue.**

No federal question appears on the face of Technify's Petition, and Technify does not argue the existence of federal question jurisdiction in its Response. Therefore, Plaintiffs' Reply only addresses diversity jurisdiction.

      **ii.    Technify's claims lack complete diversity.**

"Diversity jurisdiction may not be invoked pursuant to section 1332(a)(2) in a suit between individual aliens and an alien corporation."[36] "[A]liens may not be on both sides of a dispute for purposes of diversity."[37]

Here, Technify alleges it is a corporation duly organized and existing under the laws of the Republic of Germany, having its principal place of business at St. Egidien, Germany.[38] Technify likewise alleges Defendant TAE is a corporation duly organized and existing under the laws of the Republic of Germany, and that Defendant Kübler, in his capacity as the insolvency administrator for Defendant TAE is an individual residing in the Republic of Germany.[39]

In short, it is apparent from the face of Technify's Petition in Intervention that aliens (German business entities and a German citizen) appear on both sides of each of Technify's claims. Accordingly, diversity jurisdiction is lacking and Technify cannot establish an

---

[35] *See* Petition in Intervention, Dkt. 1-4, pp. 6-7 (Counts 1 and 2, ¶¶ 19-26).
[36] *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1149 (5th Cir. 1985).
[37] *Id*. at 151, n. 1.
[38] *See* Petition in Intervention, Dkt. 1-4, p. 3 (¶ 7).
[39] *See id*. (¶¶ 5-6).

independent basis for subject matter jurisdiction as required by Rule 24(b). Therefore, its Petition in Intervention should be dismissed.[40]

### iii. Technify fails to state a claim for declaratory relief.

Technify's Response did not address Superior's arguments that Technify failed to state a claim for declaratory relief.[41]

Courts in the Fifth Circuit (including this Honorable Court) have routinely rejected declaratory judgment claims seeking resolution of issues that are the mirror image of and will be resolved as part of other claims in the lawsuit.[42]

Here, Technify's request for a declaration of "the respective rights of Superior, Kübler and Technify to the Property At Issue in the possession, custody and control of Kübler" is unnecessary and has no greater ramifications than the issues already joined by Superior's claims against the Defendants since Technify, as the contingent "purchaser" of the Property at Issue has no greater rights than its seller, the Defendants. Accordingly, Technify's declaratory judgment claim should be dismissed.[43]

---

[40] *See, e.g., Samuels v. Dr. Miracles, Inc.*, No. 12-0106, *available at* 2014 WL 50335309, at * 3 (M.D. La. October 8, 2014) (dismissing complaint in intervention because intervenor failed to satisfy its burden of establishing the existence of subject matter jurisdiction).

[41] Plaintiffs' Brief referenced the Texas Declaratory Judgment Act. *See* Brief, Dkt. 9, pp. 15-16. However, "[w]hen a declaratory judgment action filed in state court is [properly] removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *See, e.g., Preston v. Seterus, Inc.*, 931 F.Supp.2d 743, 750 n. 6 (N.D.Tex.2013) (quoting *Garrett v. HSBC Bank USA, N.A.*, No. 3:12–CV–0012–D, 2012 WL 1658796, at *2 n. 2 (N.D.Tex. May 11, 2012) (Fitzwater, C.J.). As noted herein, Plaintiffs' argument stands because neither law allows a party to assert a declaratory judgment claim that simply seeks resolution of issues that are the mirror image of and will be resolved as part of other claims in the lawsuit. Plaintiffs also contend this case was improperly removed and maintain that position.

[42] *See, e.g., Xtria, LLC v. Tracking Sys., Inc.*, No. 3:07–CV–0160, *available at* 2007 WL 1791252, at *3 (N.D.Tex. Jun.21, 2007) (Fitzwater, J.) (dismissing claim that sought "a declaratory judgment to the same effect as [the existing] breach of contract claim...."); *Kogul v. Xspediou Mgmt. Co.*, No. 3:04–CV–2518, 2005 WL 1421446, at *4 (N.D.Tex. June 1, 2005) (Fitzwater, J.) (dismissing "[s]eparate declaratory judgment actions [that] would be redundant")

[43] *See id.*

Respectfully submitted,

**PASSMAN & JONES,**
  **A Professional Corporation**

*/s/ Jerry C. Alexander*
Jerry C. Alexander
State Bar No. 00993500
Christopher A. Robison
State Bar No. 24035720
1201 Elm Street, Suite 2500
Dallas, TX  75270-2500
(214) 742-2121
(214) 748-7949 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 21, 2014, a true and correct copy of the foregoing was served on counsel for all other parties via ECF/PACER.

*/s/ Jerry C. Alexander*
Jerry C. Alexander