Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
PASSMAN & JONES, P.C.
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
P: (214) 742-2121
F: (214) 748-7949

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **SUPERIOR AIR PARTS, INC., et al.,** | § § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 3:14-cv-3492-D |
| **BRUNO KÜBLER, IN HIS CAPACITY AS INSOLVENCY ADMINISTRATOR OF THIELERT AIRCRAFT ENGINES GMBH, et al.,** | § § § § § § | |
| Defendants, | § | |
| v. | § § | |
| **TECHNIFY MOTORS GMBH,** | § § | |
| Intervenor. | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT AND AUTHORITIES ............................................................................1

    A. The Investor Claims Were Not Fraudulently Misjoined................................1

        i. Joinder of the Investor Claims Complies with Tex. R. Civ. P. 40...................... 1

        ii. No Fifth Circuit Authority for Defendants' Egregiousness Argument. ............. 3

    B. Investor Claims Are Not Improperly Joined. ...............................................3

        i. Plaintiffs' Petition Alleges Misrepresentations Made to Investor Plaintiffs. ........................................................................... 4

        ii. Investor Claims Neither Barred by the Bid Procedures, Nor Released by Plan. ......................................................................... 5

        iii. Investor Claims Are Not Time Barred. ................................................................ 6

    C. No Bankruptcy Jurisdiction.............................................................................7

    D. The Court Should Exercise its Discretion to Abstain. .................................10

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abel v. Surgitek*, 975 S.W.2d 30, 38-39 (Tex. App.—San Antonio 1998) ..........................2

*Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, *available at* 2013 WL 2149589,
   at *1 (N.D. Tex. May 17, 2013) (Fitzwater, C.J.) ........................................................3, 4

*Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied)............2

*Citizens Bank & Trust Co. v. Case (Matter of Case)*, 937 F.2d 1014, (5th Cir. 1991) ........................9

*Crawford v. Cristus Health*, No. 3:02-CV-55, *available at* 2003 WL 1403208, at * 1-2
   (E.D. Tex. March 20, 2003) ................................................................................................10

*Davis v. Cassidy*, 2011 WL 6180054 ** 3-6  (E.D. La. 2011) .............................................3

*Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179 187, n. 5 (Tex.App. – Texarkana 2011) ..................7

*Fletcher v. Edwards*, 26 S.W.3d 66, 76 (Tex.App.-Waco 2000) ............................................6

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994) ...........................................6

*Foster Poultry Farms, Inc. v. Int'l Bus. Machines Corp.*, 2006 WL 2769944
   (E.D. Cal., Aug. 1, 2006) .......................................................................................................9

*Hair v. Pillsbury Co.*, No. 05-01-01354-CV, *available at* 2002 WL 1494922, at * 4
   (Tex.App. – Dallas July 15, 2002) .........................................................................................7

*In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005) ...............................................10

*In re Enron Corp.*, 2008 WL 3509840 (S.D. Tex., July 25, 2008) .......................................10

*In re Foxmeyer Corp.*, 230 B.R. 791, 795 (Bankr. N.D. Tex. 1998) .....................................9

*In re Kevco Inc.*, 113 Fed. Appx. 29, 31 (5th Cir. 2004) ......................................................9

*In re Kmart Corp.*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) ......................................10

*In re McIntyre Bldg. Co., Inc.*, 2011 WL 1434691 (Bankr. M.D. Ala., April 14, 2011).....................9

*In re Ramirez*, 413 B.R. 621, 631-32 (Bankr. S.D. Tex. 2009) ..........................................10

*In re Sunbrite Cleaners, Inc.*, 284 B.R. 336 (N.D. N.Y., 2002)..........................................10

*Low v. Henry*, 221 S.W.3d 609, 612 (Tex.2007) ..................................................................4

*Malesovas v. Sanders*, 2005 WL 1155073 *3, FN6 (S.D. Tex., May 16, 2005) ................................10

*Oesch v. Woman's Hosp. of Texas*, 2012 WL 950109 *4 (S.D. Tex. 2012) .........................................3

*Pitman v. Lightfoot*, 937 S.W.2d 496, 510-11 (Tex.App. – San Antonio 1996) ...................................7

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex.1995) ....................6

*Sanchez v. Southhampton Civic Club, Inc.*, 367 S.W.3d 429, 441 (Tex.App. –
    Houston [14th Dist.] 2012) ................................................................................................................6

*Skinner v. Cooper Tire & Rubber Co.*, No. 3:04-CV-0653-D, *available at*
    2004 WL 1171201, at * 2, n. 4 (N.D. Tex. May 26, 2004) (Fitzwater, J.) ......................................6

*Smith v. Estate of Branch*, No. 05-90-00941-CV, *available at* 1991 WL 219469,
    at * 7 (Tex.App. – Dallas 1991) .........................................................................................................7

*Southmark Corp. v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 931-932
    (5th Cir. 1999) ...................................................................................................................................8

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) .......................................3

*Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147
    (N.D. Tex. 2010) (Fish, J.) .........................................................................................................1, 2, 3

*Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985) ..........................................................................6

*Willingham v. State Farm Ins. Co.*, 2009 WL 2767679 at ** 2-5 (N.D. Miss. 2009) .........................3

*Winstar Holdings, LLC v. Blackstone Group, L.P.*, 2007 WL 4323003
    (S.D. N.Y., Dec. 10, 2007) ................................................................................................................8

*Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) .................................................7, 8

**Statutes**

28 U.S.C. § 1334(c)(2) .........................................................................................................................11

TEX. R. CIV. P. 40(a) .........................................................................................................................1, 2

TEX. R. CIV. P. 45(b) ............................................................................................................................4

## I.     INTRODUCTION

Plaintiffs' Petition asserts only state law claims, and complete diversity is lacking.[1] To support removal, Defendants rely on fraudulent misjoinder, improper joinder, and the bankruptcy removal statute. Each basis for removal is without merit; thus, the case should be remanded.

First, the Investor Claims are properly joined with the Superior Claims because they arise out of the same series of transactions or occurrences, and involve common questions of fact. Moreover, Defendants failed to meet their burden of showing any misjoinder (there was none) was egregious. Second, Defendants failed to meet their heavy burden of showing there is no possibility of recovery by the Investor Plaintiffs. Finally, the Investor Claims – state law claims exclusively between non-debtors – do not support "arising in" bankruptcy jurisdiction, as Defendants argue, merely because such claims involve a sale that occurred during a bankruptcy case.[2]

## II.    ARGUMENT AND AUTHORITIES

### A.    The Investor Claims Were Not Fraudulently Misjoined.

Assuming, *arguendo*, the doctrine of fraudulent misjoinder applies in the Fifth Circuit, it involves a two-step analysis: (1) does the joinder comply with the relevant joinder rules, and (2) is the misjoinder fraudulent.[3] Defendants failed to meet their burden of establishing both elements.

#### i.     Joinder of the Investor Claims Complies with TEX. R. CIV. P. 40.

Rule 40 of the Texas Rules of Civil Procedure allows joinder of claims by plaintiffs if:

[1] they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or **series of transactions or occurrences** and [2] if any question of law or fact common to all of them will arise in the action.[4]

Defendants argue the Investor Claims cannot meet the first requirement (the "transaction" requirement) because any representations made by Defendants in connection with their confidential supplier relationship with Superior cannot form the basis of the Investor Plaintiffs' stock fraud claim.[5]

---

[1] Capitalized terms in this Reply are intended to have the same definitions as in the Motion to Remand.
[2] Plaintiffs also maintain removal was procedurally defective due to Defendants' failure to obtain Technify's consent prior to removal and refer to their initial Brief (Dkt. 14) and Technify's Reply in support of that argument. Technify Reply, Dkt 32 at pp. 7-9.
[3] *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (Fish, J.).
[4] TEX. R. CIV. P. 40(a) (emphasis added); *Texas Instruments, Inc.* 266 F.R.D. at 147 ("Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action.").
[5] Defendants' Response [Doc. No. 25] at p. 7.

The only law Defendants cite for this proposition is *Burleson State Bank v. Plunkett*.[6] *Plunkett*, however, simply holds that TEX. BUS. & COM. CODE § 27.01 does not apply to a *loan transaction*, simply because the transaction is secured by real estate.

Unlike *Plunkett*, the Investor Claims involve a stock sale, falling squarely within Section 27.01. Count 9 of the Complaint alleges Defendants falsely promised to both Superior and the Investor Plaintiffs that the Defendants would use Superior's Intellectual Property (which Defendants possessed by virtue of their confidential supplier relationship with Superior) only to benefit Superior and return such property in any form (which would include the Property At Issue) upon request. Defendants made such false promises to induce Freesky to acquire Superior's stock and Superior to continue doing business with them. Thus, the **series of occurrences and transactions** which form the basis of the Superior Claims and Investor Claims overlap and are logically related, and joinder passes the "transaction" requirement.[7]

With respect to the second requirement – *i.e.* the "common question" requirement – the Defendants concede there are "overlapping relevant facts" between the Investor Claims and the Superior Claims, but argue, without citation to any authority, that the existence of overlapping relevant facts does not mean there are common questions of fact between the Investor Claims and Superior Claims.[8] Setting aside the legitimacy of this technical "distinction," Defendants are still incorrect. Superior's rights to the Property At Issue containing Superior's Intellectual Property and the value of the Property At Issue are common questions that cut across both the Superior Claims (*e.g.* misappropriation and conversion) and Investor Claims (statutory fraud). Indeed, the proof establishing the confidential and proprietary nature of Superior's Intellectual Property also shows the value of the Property At Issue and why Freesky was injured by Defendants' failure to properly use and return it. This alone satisfies the "common question" requirement of the Texas joinder rule.[9]

---

[6] *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied).
[7] *See* TEX. R. CIV. P. 40(a); *Abel v. Surgitek*, 975 S.W.2d 30, 38-39 (Tex. App.—San Antonio 1998), *reversed on other grounds by* 997 S.W.2d 598.
[8] Defendants' Response [Doc. No. 25] at p. 8.
[9] *Texas Instrument, Inc.* 266 F.R.D. at 148 (stating the "common question" requirement is satisfied by the presence of a solitary common question of law or fact).

### ii. No Fifth Circuit Authority for Defendants' Egregiousness Argument.

Not every instance of mere misjoinder is also an instance of *fraudulent* misjoinder. "Only the most 'egregious' instances of misjoinder rise to the level of fraudulent misjoinder: those in which the 'wholly distinct' claims of, or against, the non-diverse parties are so lacking any 'real connection with the controversy' that their joinder 'border[s] on a sham.'"[10]

Fraudulent misjoinder is a disfavored basis for exercising removal jurisdiction among courts in the Fifth Circuit, and cases in which a misjoinder rises to the level of fraudulent misjoinder are scarce.[11] The only cases cited in the Response are two unreported opinions from the Northern District of Mississippi and the Eastern District of Louisiana.[12] Defendants' "authorities" are inapplicable given that they apply Mississippi and Louisiana joinder law, respectively, whereas the instant suit is governed by Texas joinder law.[13] This case is simply not one of the most extreme and egregious cases that rise to the level of fraudulent misjoinder.[14]

### B. Investor Claims Are Not Improperly Joined.

This Honorable Court recently described the doctrine of improper joinder as follows:

> [I]mproper joinder is a **narrow exception** to the rule of complete diversity…Because "the effect of removal is to deprive the state court of an action properly before it, removal raises **significant federalism concerns.**" Therefore, the removal statute is **strictly construed**, with "any doubt about the propriety of removal [being] resolved in favor of remand." Moreover, in determining whether a party was improperly joined, the court "resolve[s] all contested factual issues and ambiguities of state law in favor of the plaintiff." **The party seeking removal bears a heavy burden to prove improper joinder**.[15]

A defendant may establish improper joinder by showing "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable

---

[10] *Texas Instruments, Inc. v. Citigroup Global Markets, Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (Fish, J.) (quoting *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996)).
[11] *Id.* at 152.
[12] Defendants' Response [Doc. No. 25] at p. 11, n. 11 (citing *Willingham v. State Farm Ins. Co.*, 2009 WL 2767679 (N.D. Miss. 2009) and *Davis v. Cassidy*, 2011 WL 6180054 (E.D. La. 2011)).
[13] *Willingham v. State Farm Ins. Co.*, 2009 WL 2767679 at ** 2-5 (N.D. Miss. 2009); *Davis v. Cassidy*, 2011 WL 6180054 ** 3-6 (E.D. La. 2011)); *cf. Oesch v. Woman's Hosp. of Texas*, 2012 WL 950109 *4 (S.D. Tex. 2012) (applying the Texas Rules of Civil Procedure).
[14] Defendants argue that joinder of the Investor Claims is egregious because Superior and Kübler previously litigated against each other in Bankruptcy Court without the Investor Plaintiffs. This argument is hollow: it cannot be a badge of fraud to assert a claim against a party who participated in a related proceeding that ultimately was dismissed for lack of subject matter jurisdiction, especially when the Defendants' own positions in that prior proceeding induced the claim.
[15] *Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, *available at* 2013 WL 2149589, at *1 (N.D. Tex. May 17, 2013) (Fitzwater, C.J.) (emphasis added, internal citations omitted).

basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[16] In conducting improper joinder analyses, this Court has consistently rejected a *Twombly*-like pleading standard in favor of a Texas state law notice pleading standard.[17]

### i. Plaintiffs' Petition Alleges Misrepresentations Made to Investor Plaintiffs.

Defendants challenge the sufficiency of the Investor Plaintiffs' statutory fraud pleading on two bases: (1) Defendants contend Plaintiffs' Petition fails to identify "a single alleged misrepresentation made by the Defendants" to the Investor Plaintiffs; and (2) Defendants contend the statutory fraud claim is "based solely on Defendants' alleged failure to perform contractual obligations owed to Superior."[18] Both contentions are incorrect.

First, Plaintiffs' Petition adequately alleges misrepresentations made by the Defendants to FreeSky in order to induce FreeSky to purchase Superior's stock, especially when viewed in the context of the Texas notice pleading standard.[19] For example:

> **In connection with the transaction in September 2009 whereby FreeSky purchased Superior's stock**, the Defendants promised not to use Superior's drawings, related data, and information other than to perform the Supplier Agreement, and they affirmatively represented that they would return Superior's information to Superior. These promises and representations were material to FreeSky…
> …
> TAE and Kübler also made the promises and representations that they would return Superior's information **for purpose of inducing FreeSky** to purchase Superior's stock.[20]

Second, the Investor Plaintiffs' statutory fraud claim is not "based solely on Defendants' alleged failure to perform contractual obligations owed to Superior." Rather, the claim is based on misrepresentation made to induce FreeSky to enter into a stock transaction in September 2009,

---

[16] *Id*. *2.
[17] *Id*. at *4.
[18] *See* Dkt. 25, pp. 12-13.
[19] "Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex.2007). A pleading may contain legal conclusions as long as fair notice is given to the opponent by the allegations as a whole. *See* TEX. R. CIV. P. 45(b); *see also Arana*, 2013 WL 2149589, at *5, n.6.
[20] *See* Dkt. 1-3, p. 22 (Plaintiffs' Petition, p. 20) (emphasis added).

whereby Defendants stood to receive a substantial portion of sales proceeds.[21]  In sum, Plaintiffs' Petition is more than adequate to state a claim for statutory fraud. [22]

### ii.     Investor Claims Neither Barred by the Bid Procedures, Nor Released by Plan.

Recognizing that the operative terms of the Plan did not contain a release by the Investor Plaintiffs,[23] Defendants focus on one sentence in the Bid Procedures for the stock sale:

> Each Qualified Bidder (as defined below) shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Superior Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Superior Stock, or the completeness of any information provided in connection therewith, **except as expressly stated in these Bid Procedure [sic] or, as to any Successful Bidder, the terms of the Sale shall be set forth in the Confirmation Order**.[24]

Defendants' argument that this provision bars the Investor Claims fails for several reasons.

First, Defendants ignore the fact that the provision quoted above does not even apply to FreeSky since FreeSky was the "Successful Bidder" for Superior's Stock. According to Bid Procedures, "as to any Successful Bidder [*i.e.* FreeSky] **the terms of Sale shall be set forth in the Confirmation Order**." Accordingly, the Bid Procedures are inapplicable on their face; instead, the terms of the sale are set forth in the Confirmation Order.[25]  The Confirmation Order does not include the "no representations and warranties" language in the Bid Procedures.

Second, the provision Defendants rely upon is immediately preceded by the following:

---

[21] *See id*.
[22] Defendants cite *Shakeri v. ADT Security Serv.* in support of their argument.  *See* No. 3-13-CV-2852-D, *available at* 2013 WL 6498268 (N.D. Tex. December 11, 2013) (Fitzwater, C.J.).  In *Shakeri*, the Court followed the general rule that a mere breach of contract does not amount to fraud and stated: "To the extent plaintiffs intend to base their fraud and DTPA claims on alleged misrepresentations contained in either the 1988 Contract or 1999 Contract, they must allege conduct that is fraudulent independent of these contracts."  Here, Plaintiffs' Petition alleges conduct independent of the contracts between Superior and the Defendants – *e.g.* conduct specifically designed to induce FreeSky to enter into the 2009 stock transaction, from which Defendants benefited.
[23] The release argument in Defendants' Notice of Removal was based entirely on language from the "Summary of the Plan."  However the actual release in the Plan (which, according to the Plan, control over the "Summary of the Plan") is expressly limited to claims of the Debtor and the estate, as is typical in the bankruptcy setting – it does not include the claims of FreeSky and SAB.  *See* Motion to Remand, Dkt. 14, pp. 14-15.
[24] *See* Dkt. 15-4, Appx. pp. 65-66 (emphasis added).
[25] Plaintiff SAB was not a "Qualified Bidder" thus the Bid Procedures provision did not apply to SAB either; SAB is a plaintiff merely as a possible successor-in-interest to Plaintiff Freesky.

> Any sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description **by the Debtor, its agents, or estate**, except as otherwise agreed in writing.[26]

When read together, it is apparent that the "representations" and "warranties" provision relied upon by the Defendants refers to any representations and warranties by the Debtor, its agents, or estate, not representations and warranties by third parties, such as the Defendants.[27]

Third, even if the Bid Procedures apply to the Investor Plaintiffs, Defendants' argument fails because a purchaser is not bound by an "as is" clause (including one disclaiming reliance) if the purchaser is induced by fraud.[28] Here, the Petition alleges FreeSky was induced to enter into the 2009 stock transaction by Defendants' fraudulent representations. Plaintiffs' fraud allegations are sufficient to prevent the Court from finding there is no possibility of recovery by the Investor Plaintiffs.

### iii.  Investor Claims Are Not Time Barred.

Defendants' argument that the Investor Claims are time-barred is incorrect because the Petition adequately pleaded the discovery rule and fraudulent concealment. For example, Plaintiffs' Petition alleges: (1) Defendants made a promise to return Superior's technical data with no intention of fulfilling it (Petition, p. 19); (2) Defendants made false promises to induce Superior into not demanding earlier return of its technical data (Petition, p. 19); (3) when asked to return Superior's property in April 2013 (upon conclusion of the TAE/Superior relationship[29] and within four years of

---

[26] *See* Dkt. 15-4, p. Appx_65 (emphasis added).

[27] *Sanchez v. Southhampton Civic Club, Inc.*, 367 S.W.3d 429, 441 (Tex.App. – Houston [14th Dist.] 2012) ("Another 'long-established' contract-construction rule is that ' "[n]o one phase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions.") (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994)).

[28] *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex.1995) (seller cannot assure buyer of property's condition to obtain buyer's agreement to purchase 'as is', and then disavow the assurance that procured the 'as is' agreement); *Fletcher v. Edwards*, 26 S.W.3d 66, 76 (Tex.App.-Waco 2000) (holding that if the buyers "were fraudulently induced to enter the real estate contract as they allege, that fraud vitiates all documents which the [buyers] executed as a part of the transaction."); *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985).

[29] Defendants argue Superior's failure to request return of its property until April 2013 is fatal to the Investor Claims. Defendants' argument is incorrect for two reasons: (1) Defendants' argument ignores the allegation in the Petition that Defendants made false promises in order to induce Plaintiffs into not demanding earlier return of the technical data; and (2) Defendants were still machining parts for Superior until Spring 2013, and when the relationship ceased, Superior promptly demanded return of its property. To the extent Plaintiffs' Petition does not specify the time at which Superior ceased doing business with the Defendants, the Court can consider the allegations in Plaintiffs' Motion to Remand. *See Skinner v. Cooper Tire & Rubber Co.*, No. 3:04-CV-0653-D, *available at* 2004 WL 1171201, at * 2, n. 4 (N.D. Tex. May 26, 2004) (Fitzwater, J.) ("The contentions that [the plaintiff] makes in his brief [in support of motion to remand] and the attached evidence serve to buttress and clarify pleaded claims, not to assert new causes of action, and the court may consider them.").

the September 2009 stock transaction where Defendants made false promises), Defendants falsely represented that they did not have any of Superior's technical data (Petition, p. 21); and (4) Defendants subsequently misrepresented the extent and amount of Superior's technical data in their possession. Plaintiffs' allegations are more than adequate to plead the discovery rule and fraudulent concealment under Texas' pleading standards.[30]

### C. No Bankruptcy Jurisdiction.

Defendants argue "arising in" bankruptcy jurisdiction automatically exists for all claims that simply reference bankruptcy events. Their "context" argument is the product of an over-simplistic interpretation of the Fifth Circuit's *Matter of Wood* opinion[31] which did not involve "arising in" jurisdiction, removal, or remand. In *Wood*, a partner of the debtor filed an adversary proceeding claiming that during the bankruptcy case the debtor cheated the plaintiff by issuing additional shares in a co-owned medical clinic, thus diluting distributions to the plaintiff. The court found "related to" jurisdiction because the "complaint against the bankruptcy debtors could have a conceivable effect on their bankruptcy."[32] The court did not find "arising in" jurisdiction as Defendants imply. By contrast, the Investor Claims are *not* against the Debtor and will have *no* conceivable effect on the estate (which no longer exists) or the administration of the bankruptcy case (which is closed).

The "context" argument arises from the following language in *Wood*, which appears after the court had already found "related to" jurisdiction, and thus is possibly dicta:

---

[30] Defendants contend Plaintiffs did not plead the discovery rule and fraudulent concealment because those theories were not included in separate counts. Defendants also argue "Plaintiffs make no attempt to allege or prove that they exercised any diligence…" These arguments ignore the liberal pleading requirements set forth by the Texas Rules of Civil Procedure. *See, e.g., Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179 187, n. 5 (Tex.App. – Texarkana 2011) ("[The Plaintiff's] failure to plead each element of the discovery rule might have constituted the basis for an order compelling him to re-plead, but does not render fatal his reliance on the discovery rule…"); *Hair v. Pillsbury Co.*, No. 05-01-01354-CV, *available at* 2002 WL 1494922, at * 4 (Tex.App. – Dallas July 15, 2002) (Neither defense [discovery rule and fraudulent concealment] is given its own heading or paragraph; instead, each is placed in the middle of a paragraph concerning an affirmative claim. However, we are bound to construe the pleadings liberally, and so we conclude Hair has sufficiently pleaded the defensive theories of discovery rule and fraudulent concealment"); *Pitman v. Lightfoot*, 937 S.W.2d 496, 510-11 (Tex.App. – San Antonio 1996) (liberally construing plaintiffs' pleadings and finding no waiver of discovery rule and fraudulent concealment based on failure to adequately plead); *Smith v. Estate of Branch*, No. 05-90-00941-CV, *available at* 1991 WL 219469, at * 7 (Tex.App. – Dallas 1991) ("[The Plaintiff] pleaded that 'only after the filing of this lawsuit did [Bill] learn that certain stock certificates ... were forgeries....' We hold that this is sufficient to plead the discovery rule").
[31] *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).
[32] *Id.* at 93.

> The meaning of "arising in" proceedings is less clear, but *seems* to be a reference to those *"administrative" matters* that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.[33]

Subsequent opinions, including the *Winstar* opinion[34] heavily relied upon by Defendants, have construed the foregoing "context" language as *not* creating "arising in" jurisdiction simply because state law claims involve events in a bankruptcy case. For example, *Winstar* states that the *Wood* quote refers to "proceedings that by their nature cannot exist outside of bankruptcy, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy case."[35] "The mere fact that the cause of action would never have arisen absent this particular bankruptcy is not enough to confer ["arising in"] jurisdiction." In sum, the Defendants' own legal authority contradicts their "context" argument.[36]

The results in *Southmark*[37] and *Winstar* (both cited by Defendants) turn on the fact that such claims were against estate professionals and/or debtors, and thus could impact the administration of open bankruptcy cases, and thus are readily distinguishable from the Investor Claims. Claims against estate professionals hold a special place in bankruptcy jurisdiction which is absent here.[38]

Plaintiffs cited numerous opinions in their Motion to Remand for the proposition that bankruptcy-related defenses cannot support bankruptcy jurisdiction.[39] Defendants ignored those opinions, and instead cited two unpublished, out of circuit opinions that purportedly disagree solely

---

[33] *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 96-97 (5th Cir. 1987).
[34] *Winstar Holdings, LLC v. Blackstone Group, L.P.*, 2007 WL 4323003 (S.D. N.Y., Dec. 10, 2007).
[35] *Id.*, at *3.
[36] *Id.*, at *4. Defendants' reliance on the *Winstar* opinion is mystifying. In *Winstar*, a purchaser sued the debtor's court-approved financial advisor (Blackstone) and restructuring adviser (Impala) for fraud claiming that such professional inflated the value of the purchased assets, thus increasing their court-approved fees. Impala also asserted an indemnification claim against the debtor. The court held that "arising in" jurisdiction did **not** exist merely because state law claims were based on events occurring during a bankruptcy sale, but instead found such jurisdiction based on claims against estate professionals and an indemnity crossclaim against a debtor, both of which could affect the administration of an ongoing bankruptcy case either through disgorgement or additional expenses.
[37] *Southmark Corp. v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 931-932 (5th Cir. 1999). In *Southmark*, during its bankruptcy a debtor sued the accountants for the debtor's court-appointed examiner for malpractice. Previously, the debtor obtained a bankruptcy order requiring the accountants to disgorge some of their fees for disclosure violations, thus creating potential issue preclusion as to causation in the subsequent malpractice action.
[38] "A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals … [;] the bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively." *Southmark*, at 931. The Investor Plaintiffs' claims in the instant case do to involve claims against professionals, and thus do not invoke such court power.
[39] See, *Motion to Remand*, [Dkt. #14], pp.20-21, FN 80-87.

with the well-pleaded complaint analysis in one opinion cited by Plaintiffs; neither opinion supports the Defendants' position that defenses can create bankruptcy jurisdiction.[40]

Defendants also assert that Judge Houser's prior decision is somehow consistent with bankruptcy jurisdiction over the Investor Plaintiffs' claims; such assertion is based on the Defendants' discredited and overly simplistic "context" argument addressed above.

Finally, Defendants cite *Matter of Case*[41] for the proposition that bankruptcy jurisdiction can exist even if the dispute will have no impact on a debtor's estate.  In *Case*, a creditor filed a state court lawsuit against a former debtor just a few months after confirmation of the debtor's plan of reorganization and closing of the bankruptcy case, claiming the debtor defaulted on a promissory note issued as part of the bankruptcy.  The creditor successfully moved to reopen the bankruptcy case and removed the state court lawsuit.  Affirming the reopening of the bankruptcy case, the Fifth Circuit held that such reopening was proper because the claims involved the administration of the estate under § 157(b)(2)(A) and because it was a proceeding affecting the adjustment of the debtor-creditor relationship under § 157(b)(2)(O).  However, the court warned that "[t]he longer the time between the closing of the estate and the motion to reopen,…the more compelling the reason for reopening the estate should be."[42]  Here, Defendants have not moved to reopen the bankruptcy case, and years have passed since confirmation of the Debtor's plan, as Judge Houser made painfully clear in her opinion. Moreover, the Investor Plaintiffs have *not* asserted claims as a creditor against the Debtor. Accordingly, *Case* is irrelevant.

---

[40] In one opinion, *Foster Poultry Farms, Inc. v. Int'l Bus. Machines Corp.*, 2006 WL 2769944 (E.D. Cal., Aug. 1, 2006), the court acknowledged "the near consensus of court cases that have expressly examined the issue is that the well-pleaded complaint rule applies to bankruptcy jurisdiction" citing cases from the Fifth Circuit previously cited in the Plaintiffs' Motion to Remand, plus *In re Kevco Inc.*, 113 Fed. Appx. 29, 31 (5th Cir. 2004) and *In re Foxmeyer Corp.*, 230 B.R. 791, 795 (Bankr. N.D. Tex. 1998), but disagreed with that consensus.  Nevertheless, the *Foster* court remanded the claims for lack of bankruptcy jurisdiction.  In the other opinion, *In re McIntyre Bldg. Co., Inc.*, 2011 WL 1434691 (Bankr. M.D. Ala., April 14, 2011), the court addressed a uniquely egregious situation where the debtor and his wife were attempting to fraudulently remove property from the debtor's active estate through state court litigation against various entities, including a debtor.  In possible dicta, the court held that the "well-pleaded complaint rule" did not apply in those egregious circumstances.  The court further held that "even if our inquiry here is limited to the four corners of the State Court complaint, this Court has subject matter jurisdiction" because the complaint named a debtor as a defendant and "necessarily implicates property of the estate" by trying to transfer ownership of such property.  *Id.*, at *9.  By contrast, the Investor Claims do not impact administration of an active estate.
[41] *Citizens Bank & Trust Co. v. Case (Matter of Case)*, 937 F.2d 1014, (5th Cir. 1991).
[42] *Matter of Case*, at 1018.

In sum, bankruptcy jurisdiction does not exist. Even if it did exist, it would apply only to the Investor Claims; thus, the Superior Claims would be appropriate for remand.

### D. The Court Should Exercise its Discretion to Abstain.

Defendants cite no authority for the proposition that "[t]he decision to exercise discretionary abstention is best left to the Bankruptcy Court," and no such authority exists. In fact, district courts routinely exercise their discretion and remand cases pursuant to 28 U.S.C. § 1334(c)(1), without "leaving" that issue to the Bankruptcy Court.[43]

In addressing the merits of abstention, Defendants' only argument is that the Court should not abstain because the Investor Claims implicate the integrity of the bankruptcy process. Defendants' argument is incorrect. First, whether or not the claims "implicate[] the integrity" of the bankruptcy process" is not one of the factors courts consider in determining whether or not to abstain.[44] Second, a state court is fully capable of considering any relevant bankruptcy court orders Defendants contend give rise to an affirmative defense; a bankruptcy court's orders cannot serve as an independent basis for jurisdiction.[45]

Here, as set forth in Plaintiff's initial brief (Dkt. 14), 7 of the 12 factors courts consider weigh in favor of remand. The other five factors do not weigh in favor of either party. Accordingly, if the Court finds "arising in" jurisdiction, it should exercise its discretion to abstain and remand the case to state court.[46]

---

[43] *See, e.g. Crawford v. Cristus Health*, No. 3:02-CV-55, *available at* 2003 WL 1403208, at * 1-2 (E.D. Tex. March 20, 2003) (district court exercised its discretion to abstain and remanded case pursuant to state court).

[44] *See In re Ramirez*, 413 B.R. 621, 631-32 (Bankr. S.D. Tex. 2009) (setting forth factors).

[45] *In re Brooks Mays Music Co.*, 363 B.R. 801, 810-11 (Bankr. N.D. Tex. 2007) ("…a federal defense [premised on an alleged release in a DIP financing order] cannot itself create subject matter jurisdiction…"); *see also Malesovas v. Sanders*, 2005 WL 1155073 *3, FN6 (S.D. Tex., May 16, 2005) ("[T]he Court notes that 'bankruptcy plans of reorganization, no matter how complicated, are contracts which can be interpreted by other courts of competent jurisdiction. Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.'") (quoting *In re Kmart Corp.*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004)) (citations omitted); *In re Enron Corp.*, 2008 WL 3509840 (S.D. Tex., July 25, 2008) (same); *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336 (N.D. N.Y., 2002) (same); *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005) ("Congress granted state courts concurrent jurisdiction to consider bankruptcy issues arising from [closed] Chapter 11 proceedings").

[46] Defendants do not address mandatory abstention, presumably because it applies only in instances of "related to" bankruptcy jurisdiction. Here, Defendants do not allege "related to" jurisdiction," and none exists because there is no longer a bankruptcy estate. However, if the Court finds "related to" jurisdiction," Plaintiffs submit mandatory abstention is appropriate because Plaintiffs' Petition asserts only state law claims, and this case could not have been commenced in a federal court absent bankruptcy jurisdiction. *See* 28 U.S.C. § 1334(c)(2).

        Respectfully submitted,

        **PASSMAN & JONES,**
          **A Professional Corporation**

        */s/ Jerry C. Alexander*
        Jerry C. Alexander
        State Bar No. 00993500
        James F. Adams
        State Bar No. 00863450
        Christopher A. Robison
        State Bar No. 24035720
        1201 Elm Street, Suite 2500
        Dallas, TX  75270-2500
        (214) 742-2121
        (214) 748-7949 (Fax)

        **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 5, 2014, a true and correct copy of the foregoing was served on counsel for all other parties via ECF/PACER.

        */s/ Jerry C. Alexander*
        Jerry C. Alexander