IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPERIOR AIR PARTS, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:14-CV-3492-D |
| VS. | § | |
| | § | |
| BRUNO KÜBLER, IN HIS CAPACITY | § | |
| AS INSOLVENCY ADMINISTRATOR | § | |
| OF THIELERT AIRCRAFT ENGINES | § | |
| GMBH, et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| VS. | § | |
| | § | |
| TECHNIFY MOTORS GMBH, | § | |
| | § | |
| Intervenor. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs' motion to remand or abstain presents the question whether the removing

defendants—citizens of Germany—have met their burden of establishing that the case was

removable based on fraudulent misjoinder or improper joinder, or was removable under 28

U.S.C. § 1452(a) based on jurisdiction conferred by 28 U.S.C. § 1334(b) (i.e., in a civil

proceeding arising under title 11, or arising in or related to a case under title 11).  Concluding

that they have failed to establish fraudulent misjoinder, improper joinder, or jurisdiction

under § 1334(b), the court grants plaintiffs' motion to remand, without reaching plaintiffs'

alternative motion to abstain, intervenor's motion to remand, defendants' motion to dismiss,

or plaintiffs' motion to dismiss.

I

This is a suit brought by plaintiffs Superior Air Parts, Inc. ("Superior"), Weifang

Freesky Aviation Technology Co., Ltd. ("FreeSky"), and Superior Aviation Beijing Co., Ltd.

("SAB") against defendants Bruno Kübler ("Dr. Kübler") and Thielert Aircraft Engines

GmbH ("TAE") in Texas state court and removed to this court based on diversity of

citizenship and 28 U.S.C. § 1334(b).   Technify Motors GmbH ("Technify") is the

intervenor.[1]   Superior is a Texas corporation with its principal place in business in Dallas

County, Texas. FreeSky is a business entity organized under the laws of the People's

Republic of China, with its principal place of business in China.  SAB, who is the successor-

in-interest to FreeSky with respect to Superior's stock, is a business entity organized under

the laws of the People's Republic of China, with its principal place of business in China.  Dr.

Kübler is a German citizen.  TAE is a corporation organized under the laws of the Republic

of Germany, with its principal place of business in Germany.  Superior, FreeSky, and SAB

allege claims against Dr. Kübler and TAE for misappropriation of trade secrets, breach of

contract, breach of fiduciary duty, conversion, unfair competition by misappropriation,

violation of Tex. Penal Code Ann. §§ 31.03 and 31.05 (West 2011), unjust enrichment,

promissory estoppel, and statutory fraud arising from defendants' alleged misuse and

retention of certain intellectual property related to aircraft parts.

Superior is the original equipment manufacturer and Federal Aviation Administration

---

[1]Technify also moves to remand the case.  Because the court is granting plaintiffs'
motion to remand, it does not reach Technify's remand motion.

("FAA") type certificate holder for an aviation gasoline ("AV Gas")-powered piston aircraft engine and related parts. Superior also holds Parts Manufacturing Approvals ("PMAs") issued by the FAA, which authorize Superior to manufacture various replacement aircraft parts for AV Gas-powered piston aircraft engines. Superior developed two experimental aircraft engines and holds a type certificate on what is known as the Vantage Engine. It maintains that the drawings, dimensions, specifications, notes, data, and information about these engines and the PMA parts designed, manufactured, and sold by Superior are protected confidential trade secrets. Superior also posits that the design drawings and test reports supporting its PMA applications are proprietary information and trade secrets.

The FAA permits a PMA or type certificate holder to contract with outside suppliers to machine or process aircraft engine parts for the holder of the PMA or type certificate. The supplier must process the products exactly according to the dimensions, tolerances, processes, and notes on the design drawings and supporting documents submitted to the FAA by the holder of the PMA or type certificate. Any variance prevents sales to the public. Accordingly, the holders of PMAs and type certificates routinely entrust copies of their design drawings and test materials to suppliers in confidence, with the understanding that suppliers will machine and process products exactly according to the approved designs and that such information will be held in confidence and returned to the holder of the PMA or type certificate.

In 2001 Superior entered into a supplier agreement ("Supplier Agreement") with TAE, under which TAE agreed to machine and sell to Superior various replacement aircraft parts

for which Superior holds PMAs.  Superior entrusted TAE with design drawings, engineering orders, casting/forging drawings, and test reports containing Superior's intellectual property so that TAE could fabricate parts for Superior and bid on such fabrication.  Under the Supplier Agreement, TAE agreed to maintain the confidentiality of Superior's drawings, data, and information, and to return them upon termination of the Agreement.  The parties also agreed that, absent Superior's written consent, TAE could only use the drawings, related data, and information to perform its obligations under the Supplier Agreement.

In 2008 TAE entered German insolvency proceedings, and Dr. Kübler was appointed as its insolvency administrator, assuming the rights and obligations of TAE.  In this capacity, Dr. Kübler continued to operate TAE and supply aircraft parts to Superior under the Supplier Agreement.

That same year, Superior filed for chapter 11 protection in the Northern District of Texas.  Under the bankruptcy court's bidding procedures order ("Bid Procedures Order") and its order confirming Superior's chapter 11 plan ("Confirmation Order"), FreeSky purchased Superior's stock for $7 million ("Stock Transaction").  TAE and Dr. Kübler received $500,000 as a result of the Stock Transaction.

In 2013, invoking its rights under the Supplier Agreement, Superior requested that TAE and Dr. Kübler return Superior's drawings, data, and information.  Although TAE and Dr. Kübler initially denied possessing any of Superior's drawings, data, or information, they eventually returned 700 drawings created by Superior.  Superior later learned that TAE and Dr. Kübler possessed hundreds of three-dimensional ("3D") computer assisted design

("CAD") models created using Superior's drawings, data, and information for approximately 362 aircraft parts for which Superior holds the exclusive PMA or type certificate ("TAE-labeled 3D CAD models"). Superior also learned that TAE and Dr. Kübler possessed hundreds of two-dimensional ("2D") drawings that were also created using Superior's drawings, data, and information for those parts ("TAE-labeled 2D drawings"). Superior demanded that its data and information be removed from the TAE-labeled 3D CAD models and 2D drawings and that its drawings, data, and information be returned, but TAE and Dr. Kübler refused.

Superior then filed a show cause motion asking the bankruptcy court to hold TAE and Dr. Kübler in contempt. After the bankruptcy court dismissed the motion, Superior refiled its request as a motion to enforce the Confirmation Order. The bankruptcy court denied Superior's motion for lack of subject matter jurisdiction.

Superior, FreeSky, and SAB then filed this lawsuit in Texas state court against Dr. Kübler and TAE. Dr. Kübler and TAE removed the case to this court based on two grounds: first, diversity of citizenship, contending that FreeSky and SAB (the "Chinese Plaintiffs") had been improperly joined; and, second, based on 28 U.S.C. § 1452, which, *inter alia*, authorizes removal of claims where the federal court has jurisdiction conferred by 28 U.S.C. § 1334(b) (i.e., in a civil proceeding arising under title 11, or arising in or related to a case under title 11). Superior moves to remand on the grounds that the parties are not completely diverse (there are Chinese plaintiffs and German defendants), and that the court lacks jurisdiction under 28 U.S.C. § 1334(b). Alternatively, plaintiffs argue that the court should

abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(2).  Dr. Kübler and TAE

oppose plaintiffs' remand motion.

## II

The court considers first whether this case must be remanded based on the absence

of diversity jurisdiction.  This requires that the court address defendants' contentions that the

citizenship of the Chinese Plaintiffs must be disregarded on the grounds that they have been

fraudulently misjoined or improperly joined as plaintiffs.

## A

For a case to be removable based on diversity jurisdiction, "all persons on one side

of the controversy [must] be citizens of different states than all persons on the other side."

*Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citation omitted).

There is no diversity jurisdiction when citizens of a foreign state are parties on both sides of

the litigation.  *See Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014)

(per curiam); *see also Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir. 1985)

(per curiam) ("Diversity does not exist where aliens are on both sides of the litigation.").

Because the Chinese Plaintiffs are citizens of a foreign state and Dr. Kübler and TAE are

citizens of a foreign state, complete diversity of citizenship is absent.  Therefore, for the case

to be removable, Dr. Kübler and TAE must establish some legal basis for disregarding the

lack of diversity between the Chinese Plaintiffs, on the one hand, and Dr. Kübler and TAE,

on the other hand.

B

Dr. Kübler and TAE rely on the doctrine of fraudulent misjoinder to disregard the citizenship of the Chinese Plaintiffs.  This doctrine, which is rooted in the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000),[2] provides:

> in some circumstances, a plaintiff's failure to comply with joinder requirements is just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possible cause of action, and justifies removal on diversity grounds. Mere misjoinder, however, does not constitute *fraudulent* misjoinder under *Tapscott*.  Fraudulent misjoinder is established only by egregious instances of misjoinder involving wholly distinct claims so devoid of real connection with the controversy that their joinder borders on a sham.

*Salazar v. Lopez*, 2013 WL 1124302, at *1 (N.D. Tex. Mar. 18, 2013) (Lynn, J.) (citations, internal quotation marks, and brackets omitted).

---

[2]Although the Fifth Circuit has not adopted the fraudulent misjoinder theory, it has cited *Tapscott* with approval and has indicated that it would adopt the doctrine under the appropriate circumstances.  *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532-33 (5th Cir. 2006) (citing *Tapscott* with approval); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (assuming, without deciding, "that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *see also Palermo v. Letourneau Techs., Inc.*, 542 F.Supp.2d 499, 512-15 (S.D. Miss. 2008) (analyzing Fifth Circuit's treatment of *Tapscott*).  As have other judges of this court, the court assumes that "'fraudulent misjoinder is a . . . possible ground to support a finding of improper joinder.'"  *Salazar v. Lopez*, 2013 WL 1124302, at *1 (N.D. Tex. Mar. 18, 2013) (Lynn, J.) (quoting *Tex. Instruments Inc. v. Citigroup Global Mkts., Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (Fish, J.)); *see also Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F.Supp.2d 555, 562 (N.D. Tex. 2009) (Means, J.).

> Courts in this district and others in the Fifth Circuit ask two conjunctive questions in the fraudulent misjoinder analysis: (1) has one party been misjoined with another party in violation of the applicable state's joinder rules; and (2) is any misjoinder sufficiently "egregious" to rise to the level of a fraudulent misjoinder?

*Martinson v. Total Petrochemicals & Refining USA, Inc.*, 2014 WL 2169970, at *2 (S.D. Tex. May 23, 2014) (citations omitted).

## C

The first question under the bipartite analysis is whether the Chinese Plaintiffs have been misjoined with Superior, in violation of Texas' joinder rules.  Under Tex. R. Civ. P. 40(a),[3] more than one plaintiff may join in a single action if the plaintiffs assert "any right to relief jointly, severally, or in the alternative . . . arising out of the same transaction, occurrence, or series of transactions or occurrences" and involving at least one common "question of law or fact."  "Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action."  *Tex. Instruments Inc. v. Citigroup Global Mkts., Inc.*, 266 F.R.D. 143, 148-49 (N.D. Tex. 2010) (Fish, J.) (citing *In*

---

[3]The Fifth Circuit has not addressed whether federal or state joinder rules govern misjoinder analysis.  Nevertheless, district courts in Texas have applied the Texas rules, "in large part because the applicable Texas joinder rule is practically identical to Federal Rule 20(a) and because the claimant was required to follow the state's joinder rules when it initially brought suit."  *Oesch v. Woman's Hosp. of Tex.*, 2012 WL 950109, at *4 (S.D. Tex. Mar. 20, 2012) (citations and internal quotation marks omitted); *see also Tex. Instruments Inc.*, 266 F.R.D. at 148 n.3 ("For district courts in Texas, this question [whether to apply state or federal joinder rules in a *Tapscott* analysis] is largely academic.  Texas's joinder rule is identical to its federal counterpart . . . and Texas courts rely on federal case law interpreting Federal Rule 20 to guide their interpretation of Texas Rule 40.").

*re E.L.P.*, 636 S.W.2d 579, 581 (Tex. App. 1982, no writ)).

Superior's claims against Dr. Kübler and TAE arise from, and are based on, defendants' alleged misuse of, and refusal to return, Superior's intellectual property, in violation of the terms of the Supplier Agreement. The Chinese Plaintiffs' claim, under Tex. Bus. & Com. Code Ann. § 27.01 (West 2015), is based on the allegation that, in connection with FreeSky's purchase of Superior's stock, Dr. Kübler and TAE promised that they would not use Superior's drawings, related data, and information other than to perform the Supplier Agreement, and that they would return Superior's information.

In support of their motion to remand, plaintiffs argue that the Chinese Plaintiffs' statutory fraud claim is logically related to Superior's claims against Dr. Kübler and TAE in that it serves as an alternative theory of relief if defendants are found not to be liable to Superior (i.e., if Dr. Kübler and TAE are able to sell Superior's intellectual property, they plainly made false promises regarding their limited use, and obligation to return, Superior's intellectual property in order to induce FreeSky to purchase Superior's stock). Plaintiffs maintain that the common question requirement is satisfied because the facts regarding Superior's confidential supplier relationship with TAE, which are part of Superior's claims, are also important to the Chinese Plaintiffs' claim, and the facts establishing Superior's claims are likewise relevant to the materiality of defendants' misrepresentations and FreeSky's justifiable reliance.

The court concludes that Dr. Kübler and TAE cannot satisfy the first element of the misjoinder test because the Chinese Plaintiffs' claim was properly joined as plaintiffs

Superior and the Chinese Plaintiffs both allege injuries as a result of defendants' alleged misuse of, and refusal to return, Superior's intellectual property.  To decide Superior's misappropriation, breach of contract, and conversion claims, and to decide whether the representation to the Chinese Plaintiffs that Dr. Kübler and TAE would return Superior's intellectual property, as provided under the Supplier Agreement, was false, the trier of fact must decide whether the Supplier Agreement required the return of Superior's Intellectual property and whether Dr. Kübler and TAE failed to comply with the Supplier Agreement's terms.  Additionally, assessing damages in connection with the claims of Superior and of the Chinese Plaintiffs will involve the common fact question of the value of Superior's intellectual property.  Considered in light of Texas' policy of encouraging broad joinder of multiple parties in the same action, the court concludes that plaintiffs have satisfied the requirements for joinder of the Chinese Plaintiffs' claim under Tex. R. Civ. P. 40.  *See Tex. Instruments Inc.*, 266 F.R.D. 148-49 (citing *In re E.L.P.*, 636 S.W.2d at 581).

D

The second question under the misjoinder analysis is whether any misjoinder of the Chinese Plaintiffs and Superior is sufficiently "egregious" to rise to the level of a fraudulent misjoinder.  Dr. Kübler and TAE have not satisfied this element either.

Even if combining the Chinese Plaintiffs' statutory fraud claim with Superior's claims against Dr. Kübler and TAE was improper, the claims are not wholly distinct, nor are they so disconnected factually or legally as to make their joinder a sham.  *See Tex. Instruments*, 266 F.R.D. at 147 (citing *Tapscott*, 77 F.3d at 1360).  The joinder was therefore not so

egregious as to constitute fraudulent misjoinder.  *See Salazar*, 2013 WL 1124302, at *2 (holding that, even if combining claims against two different defendants was improper, the joinder was not so egregious as to constitute fraudulent misjoinder).

### E

Accordingly, the court holds that Dr. Kübler and TAE have failed to establish that the citizenship of the Chinese Plaintiffs can be disregarded based on the doctrine of fraudulent misjoinder.

### III

The court now turns to defendants' contention that the Chinese Plaintiffs have been improperly joined.[4]

### A

The doctrine of improper joinder is a narrow exception to the rule of complete diversity.  Under this doctrine, a defendant can remove a case to federal forum when the party whose presence destroys complete diversity has not been "properly joined." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  Because "'the

---

[4]Because defendants cannot meet their heavy burden of establishing improper joinder, the court will assume, without deciding, that the improper joinder doctrine is available where all defendants maintain that the non-diverse plaintiffs have asserted no viable claims against them, leaving only claims by diverse plaintiffs. *Cf. Smallwood v. Ill. Cent. R.R. Co.*, 342 F.3d 400, 405 (5th Cir. 2003) ("[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court." (citation omitted)), *vacated*, 385 F.3d 568 (5th Cir. 2004) (en banc).

effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.'" *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citations omitted).  Therefore, the removal statute is strictly construed, with "any doubt about the propriety of removal [being] resolved in favor of remand." *Id*. at 281-82.  In determining whether a party has been improperly joined, the court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id*. at 281. The party seeking removal bears a heavy burden to prove improper joinder. *Smallwood*, 385 F.3d at 574.

Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court.  *Parsons v. Baylor Health Care Sys*., 2012 WL 5844188, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.) (citing *Smallwood*, 385 F.3d at 573).  Under the second alternative—the one at issue in this case[5]—the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant."  *Smallwood*, 385 F.3d at 573; *see also Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (explaining that terms "no possibility" of recovery

---

[5]Although defendants contend, in the context of their fraudulent misjoinder argument, that the joinder of FreeSky and SAB was "egregious," they do not contend that there was actual fraud in pleading the jurisdictional facts.

- 12 -

and "reasonable basis" for recovery have essentially identical meaning, and holding that pleadings must show more than "any mere theoretical possibility of recovery"). To assess "whether a plaintiff has a reasonable basis of recovery under state law,"

> [t]he court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the [non-diverse] defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (footnotes omitted). The summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant," and should not proceed into a resolution of the merits. *Id.* at 573-74.

### B

This court and others have applied the improper joinder doctrine to non-diverse plaintiffs. *See, e.g., Miller v. Giesecke & Devrient Am., Inc.*, 2007 WL 518557, at *2 (N.D. Tex. Feb. 20, 2007) (Fitzwater, J.) ("'The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff.'" (quoting *Miller v. Home Depot, U.S.A., Inc.*, 199 F.Supp.2d 502, 508 (W.D. La. 2001))); *see also Elk Corp. of Tex. v. Valmet Sandy-Hill, Inc.*, 2000 WL 303637, at *2 (N.D. Tex. Mar. 22, 2000) (Fish, J.) ("[T]he fraudulent joinder doctrine may be applied where a defendant claims that a plaintiff has been fraudulently

- 13 -

joined."); *Nelson v. St. Paul Fire & Marine Ins. Co.*, 897 F. Supp. 328, 331 (S.D. Tex. 1995)

("'[A] federal district court ought to inquire into improper or fraudulent joinder of plaintiffs

as well as improper or fraudulent joinder of defendants where the motive is to defeat federal

jurisdiction.'") (citation omitted).  "[I]n applying the fraudulent joinder analysis to a non-

diverse plaintiff, . . . the focus of the analysis is not whether there is any possibility of

recovery against one particular defendant, but whether [the allegedly improperly joined

plaintiff] has a reasonable possibility of recovering at all."  *Clear Channel Commc'ns, Inc.*

*v. Citigroup Global Mkts., Inc.*, 541 F.Supp.2d 874, 878 (W.D. Tex. 2008).  "If there is a

reasonable possibility of recovery under the cause of action alleged, [the allegedly

improperly joined plaintiff] has not been fraudulently joined as a party plaintiff."  *Id.*; *Elk*

*Corp. of Tex*, 2000 WL 303637, at *2 ("[I]f there is even a possibility that the state court

would find a cause of action stated against any one of the defendants, then the court must

find that [the allegedly improperly joined plaintiff] was properly joined and must remand the

case.").

## C

The court first applies a Rule 12(b)(6)-type analysis to the Chinese Plaintiffs' claim,

construing the factual allegations and drawing reasonable inferences in their favor.  Because

when drafting pleadings "'state court plaintiffs should not be required to anticipate removal

to federal court, the court assesses the sufficiency of the factual allegations of [the] complaint

under Texas' notice pleading standard.'"  *Arana v. Allstate Tex. Lloyds*, 2013 WL 2149589,

at *3 (N.D. Tex. May 17, 2013) (Fitzwater, C.J.) (quoting *Warren v. State Farm Mut. Auto.*

*Ins. Co.*, 2008 WL 4133377, at *4 (N.D. Tex. Aug. 29, 2008) (Fitzwater, C.J.)).[6]  Under the

Texas Rules of Civil Procedure, a petition must contain "a short statement of the cause of

action sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47(a).  "That an

allegation be . . . of legal conclusion shall not be grounds for objection when fair notice to

the opponent is given by the allegations as a whole." Tex. R. Civ. P. 45(b).  Texas' "fair

notice" pleading standard "looks to whether the opposing party can ascertain from the

pleading the nature and basic issues of the controversy and what testimony will be relevant"

at trial. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000) (citation

omitted); *see also Green Tree Acceptance, Inc. v. Pierce*, 768 S.W.2d 416, 421 (Tex. App.

1989, no writ) (describing "Texas' traditionally liberal pleading principles").

D

The Chinese Plaintiffs bring a claim against Dr. Kübler and TAE for statutory fraud

under Tex. Bus. & Com. Code Ann. § 27.01.  Under § 27.01(a)(2), a plaintiff may recover

for statutory fraud in a stock transaction by establishing: "(1) the defendant made a false,

material promise to do an act; (2) with the intention of not fulfilling it; (3) for the purpose of

inducing the plaintiff to enter into a contract; and (4) the plaintiff relied on the promise in

entering into the contract." *Harstan, Ltd. v. Si Kyu Kim*, 441 S.W.3d 791, 799 (Tex. App.

---

[6]Defendants note that courts are divided regarding whether the federal or state
pleading standard applies when determining whether a plaintiff has stated a claim for relief,
but they maintain that the court need not resolve this question because, under either standard,
the Chinese Plaintiffs have been improperly joined.  The court will decide this improper
joinder challenge under the Texas notice pleading standard for the reasons explained.

2014, no pet.) (citing Tex. Bus. & Com. Code Ann. § 27.01(a)(2)).

In their original petition, plaintiffs allege that

> [i]n connection with the transaction in September 2009 whereby
> FreeSky purchased Superior's stock, the Defendants promised
> to not use Superior's drawings, related data, and information
> other than to perform the Supplier Agreement, and they
> affirmatively represented that they would return Superior's
> information to Superior. These promises and representations
> were material to FreeSky and FreeSky relied on same because,
> as set forth herein, Superior's information is a valuable trade
> secret, and if the information was not kept secret and not
> returned by TAE and Kübler as promised, FreeSky would be
> deprived of the benefit of the $7,000,000 it paid for Superior's
> stock. FreeSky likewise relied on TAE's and Kübler's promises
> to limit the use of and return Superior's information by entering
> into the stock transaction and in paying $7,000,00 for Superior's
> stock. . . . TAE and Kübler also made the promises and
> representations that they would return Superior's information for
> the purpose of inducing FreeSky to purchase Superior's stock.
> . . . Finally, TAE and Kübler made their promises to return
> Superior's information with no intention of fulfilling such
> promises.

Pet. 20 (footnote omitted). Plaintiffs allege that, in September 2009, in connection with

FreeSky's purchase of Superior's stock, Dr. Kübler and TAE promised that they would not

use Superior's drawings, related data, and information other than to perform the Supplier

Agreement, and that they would return Superior's information.[7] They assert that Dr. Kübler

---

[7]Defendants contend that because the Chinese Plaintiffs have not identified a single misrepresentation made by Dr. Kübler or TAE *to them*—as opposed to a misrepresentation allegedly made *to Superior*—they have failed to state a fraud claim under § 27.01. The court disagrees. Plaintiffs allege:

> [i]n connection with the transaction in September 2009 whereby
> FreeSky purchased Superior's stock, the Defendants promised

- 16 -

and TAE made these promises with no intention of fulfilling them, that they made the promises for the purpose of inducing FreeSky to purchase Superior's stock, and that FreeSky purchased Superior's stock in reliance on Dr. Kübler and TAE's promises. These allegations are sufficient to plead a statutory fraud claim under Tex. Bus. & Com. Code Ann. § 27.01 against TAE and Dr. Kübler.

Considering plaintiffs' allegations as a whole, the court concludes that there is at least a reasonable basis for the court to predict that FreeSky[8] might be able to recover against defendants for statutory fraud under Texas law. Defendants have therefore failed to meet their heavy burden of establishing that there is no possibility of recovery by FreeSky against them, i.e., that there is no reasonable basis for the court to predict that at least one foreign plaintiff might be able to recover against one foreign defendant.

---

not to use Superior's drawings, related data, and information other than to perform the Supplier Agreement, and they affirmatively represented that they would return Superior's information to Superior. . . for the *purpose of inducing FreeSky to purchase Superior's stock*.

Pet. 20 (emphasis added) (footnote omitted). Under Texas' notice pleading standard, plaintiffs have sufficiently alleged that defendants made a misrepresentation *to FreeSky*. Morever, under Texas law, "[a] false representation made indirectly to a third party and later relied on by the defrauded party may constitute fraud under certain circumstances." *Hofstetter v. Loya Ins. Co.*, 2011 WL 1631938, at *4 (Tex. App. 2011, pet. denied) (citation omitted).

[8]Because there is a reasonable basis for the court to predict that FreeSky might be able to recover against defendants for statutory fraud under Texas law, the court need not consider whether SAB, as successor-in-interest to FreeSky with respect to Superior's stock, has been improperly joined.

E

Dr. Kübler and TAE contend that, even if plaintiffs had adequately pleaded a statutory fraud claim against them, it would still fail as a matter of law because the claim is premised on allegations that defendants violated contractual provisions in the Supplier Agreement, and it is settled Texas law that a mere breach of contract does not constitute fraud and cannot be used as evidence of fraud.

Under Texas law, the acts of the parties to a contract "may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). This is generally known as the economic loss rule. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). But the Supreme Court of Texas has held that, despite this general rule, economic losses can still be recovered for certain tort causes of action, including fraud. *See id.* at 418-19; *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) ("'As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud.'" (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992))). Additionally, "[r]epresentations made after contract formation may form the basis for a fraud claim." *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, 2011 WL 2193294,

- 18 -

at *4 (S.D. Tex. June 6, 2011) (citations omitted); *see also Regus Mgm't Grp., LLC v. Int'l Bus. Mach. Corp*., 2008 WL 1836360, at *7 (N.D. Tex. Apr. 24, 2008) (Boyle, J.) (holding that plaintiff's allegations that defendant fraudulently induced it to continue performance under contract stated claim for relief under Texas law even though "the only damages sought are identical to the economic loss recoverable under a breach of contract claim").

This case is not, as defendants contend, one in which the sole basis for liability is contractual in nature.  Rather, plaintiffs allege, that in addition to breaching their contractual obligations to Superior, Dr. Kübler and TAE made various misrepresentations to FreeSky in order to induce FreeSky to enter into the Stock Transaction, in violation of Tex. Bus. & Com. Code Ann. § 27.01.  As pleaded, the nature of FreeSky's injury is one stemming from acts of alleged fraud—specifically, the violation of § 27.01—not breach of the Supplier Agreement.  Accordingly, the court cannot conclude, based on the economic loss doctrine, that there is no reasonable basis to predict that FreeSky can recover from defendants under state law.

## F

Dr. Kübler and TAE also rely on affirmative defenses—release and limitations—to establish improper joinder.

## 1

If a defendant establishes an affirmative defense, "it necessarily follows that joinder was [improper]."  *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 753 (5th Cir. 1996).  "On the other hand, if there is any [reasonable] possibility that [a

plaintiff] might survive [an] affirmative defense[ ]," no improper joinder exists and the case must be remanded.  *Id*.

2

Dr. Kübler and TAE contend that the bankruptcy court's Bid Procedures Order bars the Chinese Plaintiffs' claim because it unambiguously states that each qualified bidder— which would include FreeSky—"shall be deemed to acknowledge and represent that it . . . has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Superior Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever." Ds. 11/14/14 Br. 14-15.  Plaintiffs offer a different interpretation of the Bid Procedures Order.  They contend that the quoted paragraph only applies "except as expressly stated in these Bid Procedure[s] or, as to any Successful Bidder, the terms of the Sale shall be set forth in the Confirmation Order," Ps. 10/24/14 App. 66; that FreeSky was a successful bidder; and that the Confirmation Order does not include the "no representations and warranties" language contained in the Bid Procedures.  Plaintiffs also maintain that, when read in context, the "As-Is, Where-As Sale" provision refers only to representations by the debtor (Superior), not representations and warranties by third parties, such as Dr. Kübler and TAE.  Plaintiffs also posit that a purchaser cannot be bound by an "as is" clause if the purchaser is induced by fraud.

Under *Smallwood* there ordinarily is no improper joinder where a plaintiff can survive

a Rule 12(b)(6) challenge.[9]

> Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.  In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint.

*TIB—The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F.Supp.3d 661, 666 (N.D. Tex. 2014) (Fitzwater, C.J.) (citations and internal quotation marks omitted). Applying the Texas notice pleading standard, the court holds that plaintiffs have stated a claim.  And the release defense certainly does not appear clearly on the face of the original petition because there are other facts that bear upon whether the defense is viable.[10]  And if there is any reasonable possibility that plaintiffs might survive this affirmative defense—and here, there is such a possibility—there is no improper joinder.  Accordingly, the court concludes that defendants have not met their heavy burden based on the affirmative defense of release.

---

[9]The "summary inquiry" procedure that *Smallwood* permits is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant." *Smallwood*, 385 F.3d at 573-74.  Defendants' release defense does not turn on the presence of discrete and undisputed facts that would preclude the Chinese Plaintiffs from recovering.

[10]The court does not suggest that a party can never prevail on the affirmative defense of release in the context of a Rule 12(b)(6) motion.  There will be instances in which the documents that a court can properly consider when deciding a Rule 12(b)(6) motion establish that the plaintiff's claim has been released.  The present case, however, is being decided under the improper joinder standard, and in the context of facts that exceed those that can be considered under Rule 12(b)(6).

3

Defendants argue that plaintiffs' statutory fraud claim, which is based on alleged misrepresentations that occurred in 2009, is barred by Texas' four-year statute of limitations.

It is undisputed that a claim for statutory fraud under Tex. Bus. & Com. Code Ann. § 27.01 is subject to a four-year statute of limitations, which begins to run when the plaintiff knows, or, in the exercise of reasonable diligence, should have known, of the defendants' alleged fraudulent conduct. *See, e.g., Val-Com Acquisitions Trust v. Bank of Am., N.A.*, 2011 WL 4591959, at *4 (E.D. Tex. Sept. 30, 2011); *see also Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007).  Because the alleged misrepresentations on which plaintiffs base their statutory fraud claim occurred in 2009, in connection with the Stock Transaction, and because plaintiffs did not file suit until August 21, 2014—outside the four-year limitations period—defendants maintain that plaintiffs' statutory fraud claim is time-barred. Plaintiffs contend that their statutory fraud claim did not accrue until the fraud should have been discovered by reasonable diligence, and that their original petition alleges that the Chinese Plaintiffs could not have discovered defendants' misrepresentation until April 2013, when Superior ceased doing business with defendants and defendants failed to live up to their promise to return Superior's intellectual property.

Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008).  It provides that the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of

the injury was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d

792, 793-94 (Tex. 1977) (per curiam).  The discovery rule tolls the statute of limitations only

if the injury is both inherently undiscoverable and objectively verifiable.  *K3C Inc. v. Bank*

*of Am., N.A.*, 204 Fed. Appx. 455, 462 (5th Cir. 2006) (per curiam) (citing *HECI Exploration*

*Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).  An injury is inherently undiscoverable if it

is of a type not generally discoverable by the exercise of reasonable diligence.  *See HECI*

*Exploration Co.*, 982 S.W.2d at 886.

Although not required under Texas procedure to plead the discovery rule until a

defendant pleads the affirmative defense of limitations,[11] plaintiffs contend that they have

adequately pleaded the discovery rule under Texas' notice pleading standard by alleging that

the Chinese Plaintiffs could not have discovered defendants' misrepresentation until April

2013, when Superior ceased doing business with defendants and defendants failed to live up

to their promise to return Superior's intellectual property.[12]  In other words, plaintiffs

_____

[11]Under Texas procedure, plaintiffs are not required to plead the discovery rule until a defendant pleads the affirmative defense of limitations.  "A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in response to defendant's assertion of the defense as a matter in avoidance."  *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  Once the discovery rule is pleaded, the defendant must negate the exception.  *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000) ("When, as here, the plaintiff pleads the discovery rule as an exception to limitations, the defendant has the burden of negating that exception as well.").  Because defendants have not yet filed an answer to plaintiffs' original petition, plaintiffs are not yet obligated to plead the discovery rule.

[12]Plaintiffs allege that, "when asked to return Superior's drawings, data and information in April of 2013, the Defendants first denied having any of Superior's drawings, data and information at all by letter dated June 3, 2013. . . .  The Defendants then stated they

maintain that the Chinese Plaintiffs could not have known that defendants did not intend to fulfill their promises regarding the use and return of Superior's intellectual property until they asked defendants to return the property in 2013, and defendants refused.

Under the Rule 12(b)(6) standard, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff[s] must normally plead [themselves] out of court." *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.) (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (holding that "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis")). Plaintiffs have not done so here.  In evaluating whether the Chinese Plaintiffs have been improperly joined,

> the court does not need to say for sure what the state court finally will decide on applicability of the discovery rule if the case is remanded; rather, the issue is whether this court has been persuaded at this point in time that it can predict that neither plaintiff might be able to recover against [defendants] on plaintiffs' pleaded cause[] of action.

*Meagher v. Goodfriend*, 2011 WL 1252874, at *5 (N.D. Tex. Apr. 4, 2011) (McBryde, J.). Because plaintiffs have alleged that defendants "first denied" having Superior's intellectual property on June 3, 2012, *see* Pet. 21, the court cannot predict that the discovery rule will not apply or that the Chinese Plaintiffs' statutory fraud claim will be deemed barred by

_____

only had the original Superior drawings for approximately 300 Superior parts, but nothing else." Pet. 21.

limitations in a Texas court.

## G

Accordingly, for the reasons explained, the court holds that defendants have failed to carry their heavy burden of establishing that both Chinese Plaintiffs were improperly joined.

## IV

The court now considers whether defendants have met their burden of demonstrating that this case was removable pursuant to 28 U.S.C. § 1452 based on jurisdiction over the Chinese Plaintiffs' statutory fraud claim under 28 U.S.C. § 1334.

## A

28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1334(b) provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." As units of the district courts, bankruptcy courts are authorized—with differing powers—to hear and/or determine these categories of cases or proceedings in bankruptcy: "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); *see Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 2603 (2011). Regarding the first two categories of proceedings:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. . . . The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*In re Wood*, 825 F.2d 90, 96-97 (5th Cir. 1997).  As for the third category, "[w]hether a proceeding is related to a bankruptcy case is determined by examining 'whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'"  *In re REPH Acquisition Co.*, 134 B.R. 194, 203 (N.D. Tex. 1991) (Fitzwater, J.) (quoting *In re Wood*, 825 F.2d at 93).  "[I]f the outcome of the proceeding could alter the debtor's rights, liabilities, options, or freedom of action, there is 'related to' jurisdiction." *Id.*

## B

Defendants only argue that the Chinese Plaintiffs' claim "arises in" the Superior bankruptcy case.  They do not contend that the claim "aris[es] under title 11" or that it "relat[es] to cases under title 11."  28 U.S.C. § 1334(b).

When, as here, "a bankruptcy plan has been confirmed by the bankruptcy court, the scope of a bankruptcy court's subject-matter jurisdiction is circumscribed." *Colvin v. Amegy Mortg. Co.*, 507 B.R. 169, 177 (W.D. Tex. 2014).

> Despite the fact that section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation, the Fifth Circuit adheres to a more exacting theory of post-confirmation bankruptcy jurisdiction: After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy

> jurisdiction, ceases to exist, other than for matters pertaining to
> the implementation or execution of the plan.

*Id.* (quoting *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001)) (internal quotation marks and alterations omitted).  This is because "expansive bankruptcy court jurisdiction" is no longer "required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize." *In re Craig's Stores*, 266 F.3d at 390.

The court concludes that defendants have failed to demonstrate that the Chinese Plaintiffs' statutory fraud claim "arises in" Superior's bankruptcy.  Plaintiffs are suing Dr. Kübler and TAE for fraud under Tex. Bus. & Com. Code Ann. § 27.01.  A statutory fraud claim under Texas law is not a claim that "would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d at 97.  In fact, it is commonplace for plaintiffs to bring fraud and statutory fraud claims outside of bankruptcy. *See, e.g., In re Brooks Mays Music Co.*, 363 B.R. 801, 810 (Bankr. N.D. Tex. 2007) (holding that plaintiffs' claims, which sounded in tort and contract, "are not claims that concern the administration of the . . . bankruptcy estate; nor are they claims that would be incapable of existence absent the bankruptcy case.").  Additionally, the Chinese Plaintiffs allege only that defendants have violated Texas law—they neither allege a violation of any of the bankruptcy court's orders, including the Confirmation Order, nor assert a violation of any obligation created by the

bankruptcy plan.[13]  *See, e.g., In re The Heritage Org., L.L.C.*, 454 B.R. 353, 366 (Bankr. N.D. Tex. 2011) (holding that court had no jurisdiction under § 1334 over plaintiffs' Texas Uniform Fraudulent Transfer Act ("TUFTA") claim where, *inter alia*, "no bankruptcy law will be involved in the resolution of the TUFTA claim[, and n]o facts or law deriving from the reorganization will determine the dispute.").

Moreover, once Superior's plan was confirmed, the bankruptcy court's jurisdiction "cease[d] to exist, other than for matters pertaining to the implementation or execution of the plan."  *In re Craig's Stores*, 266 F.3d at 390.  There is no suggestion that the Chinese Plaintiffs are seeking to undo the Stock Transaction or reopen the bankruptcy proceedings as a result of the alleged fraud.  The court cannot conclude that the Chinese Plaintiffs' claim "pertain[s] to the implementation or execution of the plan," *id.*, such that post-confirmation bankruptcy jurisdiction would exist.  *Cf. In re Case*, 937 F.2d 1014 (5th Cir. 1991) (holding that suit alleging that debtor had defaulted on promissory note executed in settlement of creditor's claim as part of bankruptcy plan of reorganization, and where creditor sought to reopen bankruptcy estate, was "core" bankruptcy proceeding).  Finally, there is no suggestion that the debtor (i.e., Superior) made any misrepresentation in connection with the Stock Transaction, or that the Chinese Plaintiffs have any claim against Superior.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (stating that "bankruptcy courts have no

---

[13]Defendants contend that Superior's reorganization plan included express provisions relating to TAE's return of Superior-owned documents and information.  The Chinese Plaintiffs' statutory fraud claim, however, is based on alleged misrepresentations by Dr. Kübler and TAE prior to the Stock Transaction.

jurisdiction over proceedings that have no effect on the state of the debtor.").

In sum, the Chinese Plaintiffs' statutory fraud claim under § 27.01 is a state-law claim that would exist absent Superior's now-closed bankruptcy case, and the resolution of which will have no impact on the bankruptcy. The mere fact that the fraudulent misrepresentations were allegedly made in connection with a stock transaction that was "consummated as the centerpiece of the order confirming Superior's plan of reorganization," Ds. 11/14/14 Br. 18, is insufficient of itself to create "arising in" bankruptcy jurisdiction.[14] That the claim arose in this context is *factually* relevant—it explains the factual basis for the Chinese Plaintiffs' claim—but is not *legally* relevant—it does not matter to the claim's viability whether it arose in this context.

Defendants contend that "arising in" bankruptcy jurisdiction exists because the Chinese Plaintiffs' "claim is . . . directly barred by the release of TAE in the confirmed plan." Not. of Removal ¶ 47. The court disagrees. To paraphrase *In re Brooks Mays Music*,

---

[14]Defendants rely on *Winstar Holdings, LLC v. Blackstone Group, L.P.*, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007), to argue that the Chinese Plaintiffs' claim is inseparable from the Superior bankruptcy because the bankruptcy court has a vested interest in policing the sale and confirmation process, including any representations made by a major creditor (TAE) to induce a particular buyer (FreeSky) without disclosure to the court. This reliance is misplaced. First, *Winstar* is materially distinguishable on its facts. In *Winstar* the "plaintiffs' claims [went] directly to the proper performance of duties by professionals retained by the bankruptcy estate, with the approval of the Bankruptcy Court, to assist it in maximizing the assets of the estate." *Id.* at *5. The defendants in *Winstar* were (1) a financial advisor whom the debtor had retained with bankruptcy court approval, (2) a restructuring advisor whom the debtor had retained with bankruptcy court approval, and (3) the debtor's "largest creditor," who played a role in negotiating the terms of the contract between the debtor and the restructuring advisor. Second, even if *Winstar* were not distinguishable, it is not binding on this court.

- 29 -

> [i]t may very well be, at the end of the day, that the Defendants
> have a valid affirmative defense that the [Chinese] Plaintiffs'
> claims are barred by certain release language in the
> [Confirmation ] Order.  However, the court agrees . . . that the
> claim[] asserted [by the Chinese Plaintiffs is a] quintessentially
> state law claim[] sounding in tort[.]

*In re Brooks Mays Music*, 363 B.R. at 810.  Whether the Confirmation Order bars the

Chinese Plaintiffs' claim against TAE will have no impact on the bankruptcy estate.

The court concludes that defendants have failed to establish that this case was

removable under 28 U.S.C. § 1452 based on "arising in" bankruptcy jurisdiction under 28

U.S.C. § 1334(b).

\*     \*     \*

Plaintiffs' motion to remand is granted.  The court concludes that it lacks subject

matter jurisdiction, and, pursuant to 28 U.S.C. § 1447(c), remands this case to the 191st

Judicial District Court, Dallas County, Texas.  The clerk of court shall effect the remand in

accordance with the usual procedure.  Because the court is granting the motion to remand,

it need not address plaintiffs' alternative motion to abstain or the other pending motions.

**SO ORDERED**.

February 11, 2015.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 30 -